Federal Register / Vol. 69, No. 24 / Thursday, February 5, 2004 / Notices   5647

Federal Register (volume 68, number 200) by the Department of State pursuant to the authority vested in me by the Act of October 19, 1965 (79 Stat. 985; 22 U.S.C. 2459), Executive Order 12047 of March 27, 1978, the Foreign Affairs Reform and Restructuring Act of 1998 (112 Stat. 2681, et seq.; 22 U.S.C. 6501 note, et seq.), Delegation of Authority No. 234 of October 1, 1999, and Delegation of Authority No. 236 of October 19, 1999, as amended, and Delegation of Authority No. 257 of April 15, 2003 (68 FR 19875). The referenced notice is corrected to include an additional object in the exhibition "Verrocchio's David Restored: A Renaissance Bronze from the National Museum of Bargello, Florence," imported from abroad for temporary exhibition within the United States, which I determine is of cultural significance. The additional object is imported pursuant to a loan agreement with the foreign owner. I also determine that the exhibition or display of the exhibit object at the National Gallery of Art, Washington, DC from on or about February 13, 2004, to on or about March 21, 2004, and at possible additional venues yet to be determined, is in the national interest. Public notice of these Determinations is ordered to be published in the Federal Register.

FOR FURTHER INFORMATION CONTACT: For further information, including a list of the exhibit object, contact Carol B. Epstein, Attorney-Adviser, Office of the Legal Adviser, Department of State (telephone: (202) 619-6981). The address is Department of State, SA-44, 301 4th Street, SW., Room 700, Washington, DC 20547-0001.

Dated: January 30, 2004.

C. Miller Crouch,
*Principal Deputy Assistant Secretary for Educational and Cultural Affairs, Department of State.*

[FR Doc. 04-2490 Filed 2-4-04; 8:45 am]
BILLING CODE 4710-08-P

---

**DEPARTMENT OF STATE**

[Public Notice 4614]

**Office of Ocean Affairs; Protection of Sunken Warships, Military Aircraft and Other Sunken Government Property**

1. On January 19, 2001, the President stated United States policy on sunken government vessels, aircraft and spacecraft ("State craft") of the United States and foreign nations. *See* Weekly Compilation of Presidential Documents, vol. 37, no. 3, pages 195-196. The President advised, *inter alia*, "[t]hose who would engage in unauthorized activities directed at sunken State craft * * * that disturbance or recovery of such craft should not occur without the express permission of the sovereign * * *." (The full text is set out at the end of this notice.)

2. The Governments of France, Germany, Japan, Russian Federation, Spain and the United Kingdom have advised the State Department of their policies, as follows:

*France:* "In accordance with the 1982 United Nations Convention on the Law of the Sea (among others art. 32 & 236) and Customary Law, every State craft (e.g. warship, naval auxiliary and other vessel, aircraft or spacecraft owned or operated by a State) enjoys sovereign immunities, regardless of its location and the period elapsed since it was reduced to wreckage (general principle of non limitation of rights of States).

The primacy of the title of ownership is intangible and inalienable: no intrusive action may be taken regarding a French sunken State craft, without the express consent of the French Republic, unless it has been captured by another State prior to sinking.

But this primacy does not forbid the State to freely renounce, whenever it wants to and in a formal way, to use some of its right on the wreck (except its ownership).

These principles have been applied in the Agreement between the Government of the USA and the Government of the French Republic regarding the wreck of "La Belle", signed at Washington, DC, March 31st, 2003, and the Agreement between the Government of the USA and the Government of the French Republic concerning the wreck of the CSS Alabama, signed at Paris, October 4th, 1989. Source: Communication from the French Foreign Ministry, November 28, 2003.

*Germany:* "Under international law, warships and other vessels or aircraft owned or operated by a State and used only on government non-commercial service ("State vessels and aircraft") continue to enjoy sovereign immunity after sinking, wherever they are located. The Federal Republic of Germany also retains ownership of any German State vessel or aircraft owned by it or the German Reich at the time of its sinking. Further, many sunken warships and aircraft are maritime graves, which have to be respected. No intrusive action may be taken in relation to German State vessels or aircraft without the express consent of the German Government." Source: Communication from the German Foreign Ministry, October 30, 2003.

*Japan:* "According to international law, sunken State vessels, such as warships and vessels on government service, regardless of location or of the time elapsed remain the property of the State owning them at the time of their sinking unless it explicitly and formally relinquishes its ownership. Such sunken vessels should be respected as maritime graves. They should not be salvaged without the express consent of the Japanese Government." Source: Communication from the Government of Japan, September 13, 2003.

*Russian Federation:* "Under international law of the sea all the sunken warships and government aircraft remain the property of their flag State. The Government of the Russian Federation retains ownership of any Russian sunken warship, including the warships of the Russian Empire and the Soviet Union, regardless the time they sank. These craft are considered places of special governmental protection and cannot be salvaged without special permission of the Government of the Russian Federation." Source: Communication from the Government of the Russian Federation, October 3, 2003.

*Spain:* "The Embassy of Spain presents its compliments to the Department of State and has the honor to address the matter of Spanish laws and policy regarding the remains of sunken vessels that were lost while in the service of the Kingdom of Spain and/or were transporting property of the Kingdom of Spain. In accordance with Spanish and international law, Spain has not abandoned or otherwise relinquished its ownership or other interests with respect to such vessels and/or its contents, except by specific action pertaining to particular vessels or property taken by Royal Decree or Act of Parliament in accordance with Spanish law. Many such vessels also are the resting place of military and/or civilian casualties.

"The Embassy of Spain accordingly wishes to give notice that salvage or other disturbance of sunken vessels or their contents in which Spain has such interests is not authorized and may not be conducted without express consent by an authorized representative of the Kingdom of Spain." Source: Embassy of Spain, Washington, DC, Note No. 128, December 19, 2002.

*United Kingdom:* "Under international law, warships, naval auxiliaries, and other vessels or aircraft owned or operated by a State and used only on government non-commercial service ("State vessels and aircraft") enjoy sovereign immunity. State vessels and aircraft continue to enjoy sovereign immunity after sinking, unless they were captured by another State prior to sinking or the flag State has expressly

Odyssey Marine Exploration, Inc. v. The Unidentified Shipwrecked Vessel   Doc. 13 Att. 1

Attachment to Verified Claim of Spain

5648    Federal Register / Vol. 69, No. 24 / Thursday, February 5, 2004 / Notices

relinquished its rights. The flag State's rights are not lost merely by the passage of time. Further, many sunken State vessels and aircraft are maritime graves, which should be respected. No intrusive action may be taken in relation to the United Kingdom's sovereign immune State vessels or aircraft without the express consent of the United Kingdom." Source: Communication from the UK Foreign and Commonwealth Office, July 4, 2003.

3. Anyone believing to have located or wishing to salvage a sunken State craft are advised to contact the government office noted below:

*France:* Ministère des Affaires étrangères, Direction des Affaires juridiques, Sous-direction du droit de la mer, des pêches et de l'Antarctique, 75351 Paris Cedex 7, France, Tel (011) 33 1 43 17 53 25; fax (011) 33 1 43 17 55 05.

*Germany:* Auswärtiges Amt, Referat 504, 11013 Berlin, Germany, Tel (011) 49 1888 17 3832; fax (011) 49 1888 17 53832; e-mail: _@diplo.de.

*Japan:* Embassy of Japan, 2520 Massachusetts Avenue, NW., Washington, DC 20008, Tel (202) 238-6700; fax (202) 328-2187.

*Russian Federation:* Legal Department, Ministry of Foreign Affairs, Russian Federation, Moscow, Fax (011) 7-095-241-11-66; e-mail: DP@mid.ru.

*Spain:* Minister for Cultural Affairs, Embassy of Spain, 2375 Pennsylvania Avenue, NW., Washington, DC 20037, Tel (202) 728-2334; fax (202) 496-0328; e-mail: ocultura@erols.com.

*United Kingdom:* NP Sec (P + P) 2, Room 125 Victory Building, HMNB Portsmouth, England UK, PO1 3LS, Tel: (011) 44 23 92 720548 or 727326; fax: (011) 44 23 92 727304, e-mail: npsec-moduk@dial.pipex.com.

*United States:* Naval Historical Center (NHC), Office of the Underwater Archaeologist, 805 Kidder Breeze Street NE., Washington Navy Yard, DC 20374-5060, Tel (202) 433-2210; fax (202) 433-2729, http://www.history.navy.mil.

*Any other nation not listed above:* Office of Ocean Affairs (OES/OA), U.S. Department of State, 2201 C. Street, NW., Washington, DC 20520, Tel (202) 647-3880; fax (202) 647-9099.

4. The Presidential Statement on United States Policy for the Protection of Sunken State Craft reads in full as follows:

Thousands of United States government vessels, aircraft and spacecraft ("State craft"), as well as similar State craft of foreign nations, lie within, and in waters beyond, the territorial sea and contiguous zone. Because of recent advances in science and technology, many of these sunken government vessels, aircraft and spacecraft have become accessible to salvors, treasure hunters and others. The unauthorized disturbance or recovery of these sunken State craft and any remains of their crews and passengers, is a growing concern both within the United States and internationally. In addition to deserving treatment as gravesites, these sunken State craft may contain objects of a sensitive national security, archaeological or historical nature. They often also contain unexploded ordnance that could pose a danger to human health and the marine environment if disturbed, or other substances, including fuel oil and other hazardous liquids, that likewise pose a serious threat to human health and the marine environment if released.

I believe that United States policy should be clearly stated to meet this growing concern. Pursuant to the property clause of Article IV of the Constitution, the United States retains title indefinitely to its sunken State craft unless title has been abandoned or transferred in the manner Congress authorized or directed. The United States recognizes the rule of international law that title to foreign sunken State craft may be transferred or abandoned only in accordance with the law of the foreign flag State.

Further, the United States recognizes that title to a United States or foreign sunken State craft, wherever located, is not extinguished by passage of time, regardless of when such sunken State craft was lost at sea.

International law encourages nations to preserve objects of maritime heritage wherever located for the benefit of the public.

Those who would engage in unauthorized activities directed at sunken State craft are advised that such disturbance or recovery should not occur without the express permission of the sovereign, and should only be conducted in accordance with professional scientific standards and with the utmost respect for any human remains.

The United States will use its authority to protect and preserve sunken State craft of the United States and other nations, whether located in the waters of the United States, a foreign nation, or in international waters.

Public Papers of the Presidents: William J. Clinton, vol. III, page 2956, Jan. 19, 2001, available through http://www.gpo.gov/nara/pubpaps/srchpaps.html; Weekly Compilation of Presidential Documents, vol. 37, no. 3, pages 195-196, available through http://www.access.gpo.gov/nara/nara003.html.

5. The failure to mention other sunken Government property of any nation should not be construed as abandonment or waiver of that nation's right.

Dated: January 12, 2004.

Margaret F. Hayes,

*Director, OES/OA, Department of State.*

[FR Doc. 04-2488 Filed 2-4-04; 8:45 am]

BILLING CODE 4710-09-P

---

## DEPARTMENT OF TRANSPORTATION

### Federal Aviation Administration

**Advisory Circular 20-147, Turbojet, Turboprop, and Turbofan Engine Induction System Icing and Ice Ingestion**

**AGENCY:** Federal Aviation Administration (FAA), DOT.

**ACTION:** Notice of issuance of advisory circular.

---

**SUMMARY:** This notice announces the issuance of advisory circular (AC) 20-147, Turbojet, Turboprop, and Turbofan Engine Induction System Icing and Ice Ingestion. This AC describes acceptable means, but not the only means, for demonstrating compliance with the applicable regulations, helping to reduce inconsistencies and eventual surprises to both engine manufacturers and engine installers, when installing a part 33 certified engine in a part 23 or 25 aircraft. This AC is intended for engine manufacturers, modifiers, foreign regulatory authorities, FAA engine type certification engineers and their designees. This AC is neither mandatory nor regulatory in nature and does not constitute a regulation.

**DATES:** The Manager, Aircraft Engineering Division, issued AC 20-147 on 2/02/04.

**FOR FURTHER INFORMATION CONTACT:** John Fisher, Engine and Propeller Standards Staff, ANE-110, 12 New England Executive Park, Burlington, Massachusetts 01803; telephone: (781) 238-7149; fax: (781) 238-7199; e-mail: john.fisher@faa.gov. The subject AC is available on the Internet at the following address: www.airweb.faa.gov/rgl.

**SUPPLEMENTARY INFORMATION:** The FAA published a notice in the Federal Register on January 24, 2000 (65 FR 3752), and again on August 8, 2002 (67 FR 54011) to announce the availability of the proposed AC and invite interested parties to comment.

(Authority: 49 U.S.C. 106(g), 40113, 44701-44702, 44704.)