IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

    Plaintiff,

vs.

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
center point coordinates:
(to be provided to the Court under seal)

in rem,

    Defendant(s).
_____/

CIVIL ACTION

Case No. 8:07-CV-00614-SCB-MAP

**Opposed Motion of Claimant Kingdom of Spain
for a More Definite Statement and Other Disclosure
or, in the Alternative, to Dismiss**

Claimant the Kingdom of Spain ("Spain"), by its undersigned counsel, hereby moves,

pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims C(2)(b) and E(2)(a)

and to Federal Rule of Civil Procedure 12(e), and without waiving any objections it may have to

the jurisdiction of this Court,[1] for an Order (1) directing Plaintiff Odyssey Marine Exploration,

Inc. ("Odyssey") to file a more definite statement and to provide other information, described

below, identifying the vessel and the vessel's contents that are claimed in this case before Spain

---

[1] As noted in Spain's Verified Claim filed May 31, 2007, Spain participates in this <u>in rem</u> proceeding without waiving, and with full reservation of, its rights of sovereign immunity. Spain also does not waive any other potential jurisdictional issue.

interposes a Supplemental Rule C(6)(a)(iv) responsive pleading to Odyssey's Complaint, or, in the alternative, (2) dismissing the Complaint, vacating the Arrest, terminating Odyssey's appointment as substitute custodian of the vessel, and placing all materials taken from Defendant vessel in the direct custody of the U.S. Marshal pending determination of the property's rightful owner(s).

Movant Spain, through counsel, certifies that it has conferred with Odyssey's counsel concerning this motion and has been advised that the motion is opposed.

## MEMORANDUM OF LAW IN SUPPORT OF SPAIN'S MOTION

### I.   Background Facts and Law

This claim to an allegedly unidentified shipwrecked vessel and its contents or cargo was filed on April 9, 2007. According to the Verified Complaint, the vessel was discovered in March, 2007 and had been extensively examined by Odyssey as of April 9, 2007, including "an archaeological pre-disturbance survey" that included making a "photomosaic image of the site." Odyssey Complaint ¶ 5. In its Complaint and published Notice of Arrest, Odyssey provided no coordinates for the site where the res was found, and stated in its Complaint only that the site is "approximately 100 miles west of the Straits of Gibraltar." Id. ¶ 2.

Despite the extensive examination of the site Odyssey alleges it has conducted, the Complaint provides no information as to the known or believed origin or nationality of the vessel, as to the characteristics of the remains Odyssey has located and photographed, or as to the objects from the vessel which Odyssey alleges it has "documented." Id. ¶ 10. Odyssey's cryptic pleadings also fail to disclose even whether the res is a military ship or other sovereign property of a foreign nation, with respect to which the Court may have no authority under long-established rules of international and U.S. law, see below. In the Complaint, Odyssey also alleges it "has seen what may be valuable cargo on the site," id. ¶ 7, but, again, provides no

information that would enable a potential owner of the cargo to evaluate whether the owner's property is being claimed in this case.

Other pleadings filed in this case demonstrate that Odyssey possesses far more information than it has disclosed. In its April 11, 2007 motion to arrest the res, for example, Odyssey states that it and unidentified "associates" have "invested substantial[] money and effort in locating, surveying, photographing and researching the history of the Defendant Shipwrecked Vessel(s) . . . ." Odyssey's Motion for Order Directing Clerk to Issue Warrant of Arrest in Rem at 3 (Apr. 11, 2007) (Document 3). And, notably, Odyssey's General Counsel states in an affidavit that the vessel is a "nineteenth century wreck." Affidavit of Melinda J. MacConnel in Support of Motion for Appointment as Substitute Custodian ¶ 3 (Apr. 13, 2007) (Document 7-2) [hereinafter MacConnel Affidavit].

Odyssey's Complaint makes in rem admiralty claims of abandonment and salvage against the vessel and its contents, alleging that "there is no extant owner of the Defendant Shipwrecked Vessel or its artifacts." Odyssey Complaint ¶ 18. Odyssey further claims that it is entitled to recover the res "without the interference of any other salvor, claimant, agency or instrumentality of any government, domestic or foreign." Id. The area given in the Complaint as the general location of the res, "100 miles west of the straits of Gibraltar," id. ¶ 2, includes approaches to Cádiz, Spain's principal Atlantic Ocean port and naval base, which were used by countless Spanish vessels over the centuries.

Under long-standing international and U.S. law, the vessels and other property of a foreign nation are immune from arrest by U.S. courts, and this immunity goes directly to whether U.S. courts have subject matter jurisdiction. See, e.g., Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812); Berizzi Bros. Co. v. S.S. Pesaro, 271 U.S. 562 (1926).

These principles are codified in part in the Foreign Sovereign Immunities Act ("FSIA"), Section 1609 of which provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution . . . ." 28 U.S.C. § 1609. Accordingly, the FSIA relieves U.S. courts of subject matter jurisdiction over foreign government property, except in limited circumstances.[2] See Beg v. Islamic Republic of Pakistan, 353 F.3d 1323, 1328 (11th Cir. 2003) (holding that FSIA, where applicable, divests a court from subject matter jurisdiction).

Once a question of potential sovereign immunity arises, the "district court must make the 'critical preliminary determination' of its own as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 38 (D.C. Cir. 2000). As the Eleventh Circuit has stated in the context of the FSIA, a "court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." Guevara v. Republic of Peru, 468 F.3d 1289, 1305 (11th Cir. 2006) (internal citation omitted); see also Moran v. Kingdom of Saudi Arabia, 27 F.3d 169 (5th Cir. 1994); Cargill, Inc. v. M/T Pavel Dyvenko, 991 F.2d 1012, 1016 (5th Cir. 1993).

Additionally, under long-settled law of salvage, the owner of sunken property, and especially a governmental owner, has the right to refuse salvage, and no award of salvage may be made against a vessel or other sunken property for which salvage has not been authorized. See, e.g., Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft, 218 F.3d

---

[2] Exceptions to sovereign immunity defined in FSIA Sections 1610 and 1611 pertain to: property that is "used for a commercial activity in the United States" (§ 1610(a) and (b)); property as to which the foreign sovereign has "explicitly waived its immunity from attachment" (§ 1610(d)); "foreclosure of preferred mortgage" on a vessel (§ 1610(e)); property with respect to which certain financial transactions are prohibited by U.S. laws (§ 1610(f); and defined types of Cuban property (§ 1611(e)). Although it need not be decided at this stage, none of these exceptions appears to apply in this case.

1255, 1260-62 (11th Cir. 2000); Sea Hunt v. Kingdom of Spain, 221 F.3d 634, 647 fn.2 (4th Cir. 2000). The Eleventh Circuit has thus stated, for example, that "[o]nly in a rare case where the government owner gives express or implied consent to salvage, should an award be given because the government has full power to reject or prohibit the services." Int'l Aircraft Recovery, 218 F.3d at 1262 fn.16 (quoting Thomas J. Schoenbaum, Admiralty and Maritime Law § 16-7 (2d ed. 1994)); see also Thomas J. Schoenbaum, Admiralty and Maritime Law 188 (4th ed. 2004). Indeed, any owner, whether sovereign or not, has the right to reject salvage. See Thomas J. Schoenbaum, Admiralty and Maritime Law 167 (4th ed. 2004) ("Salvage cannot be forced upon an owner . . . of the vessel; a salvor who acts without the express or implied consent of the owner is a 'gratuitous intermeddler,' who is not entitled to any salvage award.") (internal citations omitted).

Consistent with long-standing international and U.S. law, and recent case law specifically affirming the application of these principles to sunken Spanish property, see generally Sea Hunt v. Kingdom of Spain, 221 F.3d 634 (4th Cir. 2000), Spain has given notice to potential claimants or salvors such as Odyssey affirming that Spain's sunken vessels and property have not been abandoned and may not be salvaged without express authorization. As summarized by Spain in a February 5, 2004 Federal Register notice published by the U.S. Department of State on "the matter of Spanish laws and policy regarding the remains of sunken vessels that were lost while in the service of the Kingdom of Spain and/or were transporting property of the Kingdom of Spain":

> In accordance with Spanish and international law, Spain has not abandoned or otherwise relinquished its ownership or other interests with respect to such vessels and/or its contents, except by specific action pertaining to particular vessels or property taken by Royal Decree or Act of Parliament in accordance with Spanish

> law. Many such vessels also are the resting place of military
> and/or civilian casualties.

Protection of Sunken Warships, Military Aircraft and Other Sunken Government Property, 60 Fed. Reg. 5647 (Feb. 5, 2004). Spain also gave "notice that salvage or other disturbance of sunken vessels or their contents in which Spain has such interests is not authorized and may not be conducted without express consent by an authorized representative of the Kingdom of Spain." Id.

On May 18, 2007, counsel for Spain requested information from Odyssey's counsel as to the source and identity of large quantities of material reportedly obtained by Odyssey. See Letter of James A. Goold to Allen von Spiegelfeld, Exhibit A. This request was made immediately after media reports announced that Odyssey had recovered and transported to the United States tons of silver and gold from an unidentified sunken vessel. See, e.g., Terry Aguayo, A Bountiful Undersea Find, Sure to Invite Debate, N.Y. Times, May 18, 2007. Odyssey did not supply the information requested. Spain accordingly submitted its Verified Claim dated May 29, 2007 and entered on June 1, 2007.

Spain's Verified Claim in this case was timely filed on May 31, 2007. Spain's Verified Claim states, inter alia, that Spain:

> affirms and restates its sovereign and other rights in its vessels and
> cargo, the non-abandonment of such property and its refusal of
> salvage as to any and all such vessels and property by Claimant
> Odyssey Marine Exploration that are or may be the subject to this
> proceeding and in which the Kingdom of Spain has an interest.
> The Kingdom of Spain further affirms and restates that arrest,
> recovery or other unauthorized disturbance or recovery by Odyssey
> Marine Exploration of property of the Kingdom of Spain is not
> authorized and the Kingdom of Spain reserves all rights and
> remedies arising from such activities.

## II. Odyssey's Complaint Fails to Meet the "Reasonable Particularity" Requirements of the Supplemental Rules

Under Supplemental Rule C(2)(b) an in rem complaint in admiralty is required to "describe with reasonable particularity the property that is the subject of the action." Supplemental Rule C(2)(b). This requirement is reinforced and heightened by Supplemental Rule E(2), which expressly requires the plaintiff to provide the information it possesses "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule E(2)(a).

As the Eleventh Circuit has recognized, this in rem pleading requirement is "more stringent than [] that of the Federal Rules," United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1547 fn.20 (11th Cir. 1987); see also Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1222 (S.D. Ala. 2005). An in rem Complaint must provide "a meaningful level of detail in describing the property at issue" so that potential owners of the property can determine whether their property is at stake and can intervene to protect their interests. See United States v. One Parcel of Real Property, 964 F.2d 1244, 1248 (1st. Cir. 1992). The logical purpose of this requirement is to "guard against the improper use of the admiralty arrest and seizure powers" to deprive others of their ownership interests over property at sea. United States v. Mondragon, 313 F.2d 862, 864-65 (4th Cir. 2002); Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 1:04-CV-375, 2006 WL 3370878, at *3 (W.D. Mich. Nov. 20, 2006).

The information Odyssey has disclosed falls far short of the Supplemental Rules' requirements. As shown above, Odyssey's Complaint provides no meaningful identification of

the vessel or the contents Odyssey has examined and/or recovered at all, particularly as to nationality, characteristics, the nature of the contents or anything else that a claimant may need to frame the responsive answer required by Supplemental Rule C(6)(a)(iv) following the filing of a claim of interest. If there is one thing that the Verified Complaint makes clear, it is that Odyssey has substantial information from its examination of the site and its research, including, for example, enough information to state in the April 11, 2007 Affidavit of Melinda McConnell (but not in the Complaint or in the Notice of Arrest) that the vessel dates from the nineteenth century. MacConnel Affidavit ¶ 3.

The less than bare-bones information that Odyssey has put in its Complaint is plainly insufficient for Spain to frame a responsive answer or other pleading "without moving for a more definite statement." Supplemental Rule E(2). More detailed disclosure should be required. The need for such disclosure is particularly acute, and needed as early as possible, so that Spain can determine whether to invoke sovereign immunity of the res from arrest, with its implications for the jurisdiction of the court.

### III. The Relief Requested by Spain

For the reasons stated above and in accordance with Supplemental Rules C(b)(2) and E(2), Spain respectfully requests that the Court direct Odyssey to file an amended complaint containing the information apparently already in its possession concerning the physical characteristics of the vessel and/or its contents, such information as Odyssey possesses based on its examination of the vessel and/or its contents, the research it has conducted to identify the nationality of the vessel and its contents, and the name or other identification of the vessel or its

contents as may be known and/or believed by Odyssey, and that Odyssey do so before Spain is required to submit its Supplemental Rule C(6)(a)(iv) responsive pleading.[3]

The appropriateness of such an order under the Supplemental Rules was demonstrated most recently by Great Lakes Exploration Group LLC v. Unidentified, Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 1:04-CV-375, 2006 WL 3370878, at *3 (W.D. Mich. Nov. 20, 2006). In Great Lakes, a plaintiff claiming rights to a shipwreck was ordered to provide detailed information concerning the res, so that a claimant could investigate whether it had an ownership interest in the res and frame a responsive pleading. Id. at * 1. Even though plaintiff had provided a description of the vessel's observed characteristics and, unlike Odyssey, identified, on information and belief, the name of the vessel and the year it sank, the court directed plaintiff to provide the specific location of the vessel to claimant. Id. at **1-3. When plaintiff failed to provide all the important identifying information it knew, the court dismissed plaintiff's complaint. Id. at *8.

Similarly, in Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, plaintiff's complaint in rem against a sunken vessel was held to be insufficiently detailed to meet Supplemental Rules C(2)(b) and E(2)(a). 352 F. Supp. 2d at 1231. The complaint in Fathom provided the vessel's general coordinates, declared that the ship had no owner, and described some "artifacts" recovered from the site. Id. at 1120. The court agreed with claimant United States that an amended complaint disclosing the information held by plaintiffs was required. Id. at 1231. Accordingly, the court ordered plaintiff to "file an Amended Complaint setting forth

---

[3] Spain also requests that it be provided access to copies of all documents concerning the res which have been filed under seal, including any document identifying the location of the res which may be under seal pursuant to Odyssey's Motion for Leave to File Information Under Seal and Memorandum of Law in Support (Apr. 11, 2007) (Document 2). Odyssey has acknowledged that claimants "are entitled to see the location under the supervision of the Court." Id. at 3.

such additional reasonable details as it may have concerning the identity, nature, precise location, and embedded status of the Shipwreck . . . ." Id.

Given the circumstances of this case,[4] Odyssey should also be required to provide Spain with access to photographs or other documentation Odyssey has taken at the site, for examination by counsel and such consultants or experts as Spain may deem necessary, to assist in framing Spain's responsive pleading. Such examination may materially assist in identifying, for example, whether the vessel or contents are subject to sovereign immunity, and therefore not subject to arrest or the jurisdiction of the court. For the same reasons, Odyssey should be directed to make available for inspection by Spain all objects it has raised from the sea and which are within its actual or constructive control. Inspection of artifacts by experts can be expected to materially assist in vessel identification and the framing of a responsive answer. Following compliance with such orders, Spain respectfully suggests that the Court at that time determine when Spain's responsive Rule C(6)(a)(iv) pleading is due.

Alternatively, Spain respectfully submits that, due to the deficiencies of Plaintiff's Complaint, Odyssey's Complaint may be dismissed and the arrest of defendant res may be vacated. See Great Lakes Exploration Group LLC v. The Unidentified, Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 1:04-CV-375, 2006 WL 3370878, at *8 (W.D. Mich. Nov. 20, 2006). If the Court were to so rule, Spain notes that such an order should also terminate Odyssey's appointment as substitute custodian and direct that all artifacts

---

[4] As noted earlier, on or about May 18, 2007, Odyssey announced that it had brought a large quantity of coins taken from a sunken vessel to the United States. See Press Release, Odyssey, Odyssey's Latest Shipwreck Find Yields Over 500,000 Silver and Gold Coins (May 18, 2007), available at http://shipwreck.net/pr134.html. Spain is unaware of any report to the Court or other disclosure by Odyssey to date regarding whether these coins are part of the res in this case.

or objects recovered by Odyssey be returned to the custody of a U.S. Marshal pending a determination of the rightful owner(s) of the res.

Respectfully submitted, on 19 June 2007 by

*[signature]*

James A. Goold, Esq.
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com


David C. Banker, Esq.
Florida Bar ID #: 352977
Bush Ross, PA
220 S. Franklin St.
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
Fax: (813) 223-9620
E-mail: dbanker@bushross.com

- 12 -

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the attached Motion to be served up on the attorney of record for Plaintiff, Allen von Spiegelfeld, by facsimile and by Federal Express delivery to:

      Allen von Spiegelfeld
      Fowler, White, Boggs, Banker, P.A.
      501 E. Kennedy Blvd. - Ste. 1700
      P.O. Box 1438
      Tampa, FL 33601-1438
      Fax: (813) 229-8313

Dated: 19 June 2007

                                      _____
                                      James A. Goold, Esq.
                                      Covington & Burling LLP
                                      1201 Pennsylvania Ave., NW
                                      Washington, DC 20004
                                      Telephone: (202) 662-5507
                                      Fax: (202) 662-6291
                                      E-mail: jgoold@cov.com

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

JAMES A. GOOLD
TEL 202.662.5507
FAX 202.778.5507
JGOOLD@COV.COM

May 18, 2007

**By Email and Mail**
Allen von Speigelfeld, Esq.
Fowler White Boggs Banker P.A.
P.O. Box 1438
Tampa, Florida 33601
avonsp@fowlerwhite.com

Re: Odyssey Marine Exploration v. Unidentified Shipwrecked
Vessel or Vessels: No. 8: 06-cv-1685-T23-TBM

Dear Mr. Speigelfeld:

I am writing on behalf of the Kingdom of Spain with respect to the above-captioned matter and recent reports that Odyssey Marine Exploration has brought to the United States a large quantity of materials recovered from a shipwreck the identity of which has not been disclosed.

The publicly available pleadings and other papers filed in the above-captioned matter do not identify the nationality or owner of the vessel(s) that are the subject of the claims asserted or the cargo or other contents Odyssey Marine Exploration has obtained. Information identifying the vessel(s) and the cargo or other contents is also not contained in the Notice of Admiralty Arrest published in connection with the case. As stated in the enclosed copy of a February 5, 2004 <u>Federal Register</u> notice, the Kingdom of Spain has not abandoned, or consented to salvage of, vessels that were lost while in the service of the Kingdom of Spain and/or Kingdom of Spain property that is cargo or contents of sunken vessels. As stated in the <u>Federal Register</u> notice, salvage or other activities with respect to such vessels and/or contents or cargo may not be conducted without express consent by an authorized representative of the Kingdom of Spain.

COVINGTON & BURLING LLP

Allen von Speigelfeld, Esq.
May 18, 2007
Page 2

    I request that you or your client provide information identifying the vessel(s) and/or cargo or contents involved, so that a determination can be made as to whether action to protect Spain's interests may be necessary.

                                Sincerely,

                                James A. Goold

Enclosure