*ENGLISH TRANSLATION*

Don Julián Martínez García
Director General de Bellas Artes y Bienes Culturales
Ministerio de Cultura
Plaza del Rey 1, Planta baja
28071  Madrid                                              July 6, 2007

Dear Mr. Director General,

During the last nine years Odyssey Marine Exploration, Inc. (OME) has carried out every type of effort available to resolve with the Spanish and Andalusian authorities, of course, the foreseeable differences that could arise in relation to its HMS Sussex Project (Alboran Sea) within the best spirit of cooperation.  Aside from this OME has offered its best collaboration with these authorities on the understanding that it could offer important help in the study, location and defence of Spanish underwater cultural heritage in various seas, within its best archaeological know-how.  You are an exceptional witness to the position of OME in which my colleague Marie Rogers as well as myself, as the lawyers designated by OME, have placed our hopes and efforts, along with the representatives of the US and the UK Embassies in Madrid.

Due to the latest developments in the "Black Swan Project" in waters of the Atlantic and beyond any Spanish waters whatsoever, and in that the Spanish government lacks at this time any indication of a legal basis to lay claim to the cargo found, some Spanish authorities at a very high level have maintained difficult to explain suspicions of illegal conduct on the part of OME.  They have described the most transparent conduct of this entity, from a legal point of view as well as an archaeological (that is otherwise evident), in very serious terms of illegality and even crime, making formal accusations before the Spanish courts when it is evident to us, I repeat, that they do not possess even a minimum confirmation or proof in  respect to the identity of the vessel carrying the cargo, given that even OME who is investigating this in detail lacks sufficient indications of this.  Such an official stance and the violent and unjust echo that has been produced in the national and international press, demonstrating in many instances total irresponsibility, have damaged the image and doubtless prestige of OME.

OME on the other hand has not had the opportunity to defend itself given that the criminal proceedings have been declared secret and the Court of La Linea has rejected our offer of evidence, clarifications and most transparent collaboration, returning to us the pleadings to appear in the proceedings and the proposal of evidence without even making that rejection the subject of a written ruling.

This offering is comprised of documentation, the statement of Mr. Greg Stemm and other relevant OME personnel and the offering of inspection of the boats Odyssey Explorer and Odyssey Alert.

Dockets.Justia.com

*ENGLISH TRANSLATION*

Page Two

For this reason, I have tried by all means available to me with the maximum discretion possible, following the instructions of my client, to avoid the false official position on this matter, which in my view is dangerous for the very interests of Spain, via letters to various authorities and interviews with the Ministry of Culture, the Junta de Andalusia, the Public Prosecutor and the Court of La Linea de la Concepcion, etc. and reports and statements in the press without the least result.

I attach to this letter the sworn statement of Mr. Greg Stemm.

I trust, Sir, that these lines will make clear my loyal conduct on behalf of OME and regretting both as a professional and as a Spanish citizen, not having been able, as would have been our desire, to avoid the complicated foreseeable situation for the Spanish administration that will arise as a result of OME exercising its legitimate rights to defend its interests, as well as the Spanish position in relation to underwater cultural heritage in all international legal forums.

It is OME's constant desire and policy to give advance notice of its conduct to the Spanish authorities implicated.  That is what it has done to date in relation to the movements of its vessels in waters near the Spanish coast.  At this time, however and regrettably, we are deprived of any adequate line of communication.

Sincerely,


Jose Luis Goñi

A COPY OF THIS LETTER AND DOCUMENTS TO:

Don José María Pons Irazazábal
Director General de Política Exterior para Europa y América del Norte
Ministerio de Asuntos Exteriores y Cooperación
Edificio Torres Ágora C/ Serrano Galvache 26
28006  Madrid

Almirante Don Teodoro de Leste Contrera
Director del Museo Naval de Madrid
Museo Naval de Madrid
calle Montalban 2
28014  Madrid

Page Three


Fiscal Don Angel Nuñez
Fiscalía de la Audiencia Provincial de Cádiz
Cuesta de las Calesas  s/n
11071  Cádiz

Comandante Cortés
Unidad Central Operativa de la Guardia Civil
Departamento de Delitos contra el Patrimonio
Calle Salinas del Rosio  32 – 35
28042  Madrid

D. Jesus Romero Benitez
Director General de Bienes Culturales
Consejeria de Cultura
Junta de Andalucia
Palacio de Altamira
Santa Maria la Blanca, 1
41004 SEVILLA

Doña Maria Teresa Fernandez de la Vega
Vice Presidenta Primera, Ministra de la Presidencia y Portavoz del Gobierno
Ministerio de la Presidencia
Complejo de la Moncloa,
Avenida Puerta de Hierro
28071 Madrid

GOÑI
& CO.
ABOGADOS

Don Julián Martínez García
Director General de Bellas Artes y Bienes Culturales
Ministerio de Cultura
Plaza del Rey 1, Planta baja
28071 Madrid

C O P I A

MINISTERIO DE CULTURA
ENTRADA
- 6 JUL. 2007
REGISTRO

6 de julio de 2007

Distinguido Sr. Director General:

Durante nueve años Odyssey Marine Exploration Inc. (OME) ha realizado todos los esfuerzos en su mano para solventar con las autoridades españolas y las andaluzas cualesquiera diferencias, por supuesto previsibles que se pudieran originar en relación con su proyecto HMS Sussex (Mar de Alborán) dentro del mejor espíritu de colaboración. Al margen de ello ha ofrecido su mejor colaboración con estas autoridades no para lograr privilegio alguno sino por entender que podía ofrecer una importante ayuda en el estudio, la localización y la defensa del patrimonio cultural subacuático español en diversos mares, dentro de su mejor quehacer arqueológico. Usted es un testigo excepcional de esta posición de OME en la que tanto mi colaboradora Sra. Marie Rogers como yo, como abogados designados por la empresa, hemos puesto nuestras mejores ilusiones y empeños, así como los representantes de las Embajadas de Estados Unidos y del Reino Unido en Madrid.

Con motivo de los últimos resultados en el "Proyecto Black Swan" en aguas del Atlántico y fuera de cualesquiera aguas jurisdiccionales españolas, y en el que el Estado español carece de momento de cualquier indicio significativo de una base jurídica para la reclamación por su parte del cargamento encontrado, algunas autoridades españolas a muy alto nivel han suscitado unas difícilmente explicables sospechas de actuación ilegal de OME. Han calificado una limpísima actuación de esta entidad, tanto desde el punto de vista legal como arqueológico (que por lo demás les consta), en gravísimos términos de ilegalidad y aun de delito, formulando acusaciones formales ante los Juzgados españoles cuando nos consta, repito, que carecen de confirmación o prueba acerca de, por ejemplo y básicamente, la identidad del barco transportador del cargamento, puesto que incluso OME que lo investiga en profundidad carece de indicios adecuados para confirmar la identidad del pecio. Tal posición oficial y el desmesurado e injusto eco que ha producido en la prensa nacional e internacional, en un ejercicio en muchos casos de una total irresponsabilidad, han podido dañar la imagen e indudable prestigio de OME

VELÁZQUEZ 24 - 3° • 28001 MADRID • TEL (34) 91 563 47 40 • FAX (34) 91 563 11 43
joseluis.goni@goni-abogados.com
ROSELLÓN 229 – 2°, 1°B • 08008 BARCELONA • TEL (34) 93 415 90 68 • FAX (34) 93 415 70 13

OME no ha tenido por otra parte la más mínima posibilidad de defenderse puesto que las diligencias judiciales se han declarado secretas y el Juzgado de La Línea ha rechazado nuestros ofrecimientos formales de pruebas, aclaraciones y la colaboración más transparente, devolviéndonos los escritos de personación y de proposición de esas pruebas sin ni siquiera hacerlos objeto de una providencia de rechazo.

El ofrecimiento comprendía documentación, la declaración del Sr. Greg Stemm y otro personal relevante de OME y el ofrecimiento de inspección de los barcos Odyssey Explorer y Odyssey Alert.

Con este motivo he intentado por los medios a mi alcance, con la máxima discreción posible, siguiendo las instrucciones de mi cliente, evitar la falsa posición oficial sobre este tema, a mi juicio peligrosa para los propios intereses españoles, mediante cartas a diversas autoridades y entrevistas con el Ministerio de Cultura, la Junta de Andalucía, la Fiscalía, el Juzgado de La Línea de la Concepción, etc. e informes y declaraciones en la prensa, sin el más mínimo resultado.

Acompaño a esta carta una declaración la declaración jurada del Sr. Greg Stemm.

Valgan estas líneas, Sr. Director General, para dejar una clara constancia de la más leal actuación por parte de OME y de quien esto suscribe, lamentando por mi parte en función de mi cometido profesional y aun como español, no poder evitar, como hubiera sido nuestro deseo, las situaciones previsiblemente comprometidas para la Administración española que se deriven del ejercicio por parte de OME de sus legítimos derechos en defensa de sus intereses, así como de la posición española en relación con el patrimonio subacuático en los foros judiciales internacionales.

Es deseo y política permanente de OME poner anticipadamente su actuación en conocimiento de las autoridades implicadas. Así lo ha hecho en todo momento en relación con los movimientos de sus barcos en aguas próximas a las costas españolas. En estos momentos sin embargo y lamentablemente, se nos niega cualquier línea de interlocución adecuada.

Con este motivo, le saluda muy atentamente,

José Luis Goñi

SE REMITE COPIA DE ESTA CARTA y DOCUMENTOS A:


Don José María Pons Irazazábal
Director General de Política Exterior para Europa y América del Norte
Ministerio de Asuntos Exteriores y Cooperación
Edificio Torres Ágora C/ Serrano Galvache 26
28006  Madrid


Almirante Don Teodoro de Leste Contrera
Director del Museo Naval do Madrid
Museo Naval de Madrid
calle Montalban 2
28014  Madrid

Fiscal Don Angel Nuñez
Fiscalía de la Audiencia Provincial de Cádiz
Cuesta de las Calesas  s/n
11071  Cádiz

Comandante Cortés
Unidad Central Operativa de la Guardia Civil
Departamento de Delitos contra el Patrimonio
Calle Salinas del Rosio  32   35
28042  Madrid

D. Jesus Romero Benitez
Director General de Bienes Culturales
Consejeria de Cultura
Junta de Andalucia
Palacio de Altamira
Santa Maria la Blanca, 1
41004 SEVILLA

Doña Maria Teresa Fernandez de la Vega
Vice Presidenta Primera, Ministra de la Presidencia y Portavoz del Gobierno
Ministerio de la Presidencia
Complejo de la Moncloa,
Avenida Puerta de Hierro
28071 Madrid



# SWORN STATEMENT

## OF

# GREGORY STEMM

# DATED JULY 5, 2007

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*



### SWORN STATEMENT

July 5, 2007

1.      My full name is Gregory Stemm. My legal address {*personal home address deleted*}. I am competent to testify as to the matters covered in this statement.

2.      I swear or affirm that the facts herein are true to the best of my knowledge.

3.      I am the Co-founder and Co-chairman of Odyssey Marine Exploration, Inc., ("Odyssey") an American company incorporated under the laws of the state of Nevada with its principal place of business located in Tampa, Florida.

4.      I am authorized to speak on behalf of Odyssey.

5.      Odyssey has recovered coins and artifacts from the Atlantic Ocean from a site which Odyssey has code-named the "Black Swan." For security reasons, Odyssey has not disclosed the date of recovery or the exact location of the site.

6.      Odyssey has not recovered sufficient evidence to establish the identity of the ship from which the "Black Swan" coins and artifacts originated.

7.      Odyssey has properly filed a Warrant of Arrest in the United States Federal Court sitting in admiralty jurisdiction.  The Court has granted Odyssey finder and/or salvor in possession status and has appointed Odyssey as Substitute Custodian for the U.S. Marshall for all artifacts recovered from the site.

8.      Following stringent archaeological protocols, Odyssey recovered coins and artifacts from the site after a detailed pre-disturbance survey and transported them back to the United States to be conserved using appropriate curatorial methods.  All aspects of the survey were conducted under the direct supervision of qualified archaeologists.

9.      The first shipment of "Black Swan" site artifacts transported from Gibraltar was shipped on April 10, 2007 from Gibraltar to Tampa, Florida via a private G5 aircraft. This

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

shipment consisted of clumps of silver coins, and small miscellaneous artifacts. The second shipment of coins and artifacts took place on May 16, 2007 from Gibraltar to Tampa, Florida via a North American Airlines Boeing 757.  The shipment consisted of miscellaneous artifacts as well as 552 containers of silver coins. In each case, Odyssey submitted all appropriate paperwork as required by the Government of Gibraltar for legal exportation of all materials exported. All appropriate laws and customs regulations were also followed upon arrival of the materials into the United States.

      10.     Contrary to some media reports, the United Kingdom's Ministry of Defence had no involvement whatsoever in the storage, conservation or any other aspect of the recovery or transportation of the coins and artifacts from the "Black Swan" site.

      11.     Odyssey has retained custody of the coins and artifacts pursuant to the U.S. Federal Court's order. Odyssey's archaeological plan includes the possibility of returning to the site to begin the second phase of archaeological investigation in order to attempt to confirm the identity of the ship from which the cargo may have originated so that any and all parties that may have a potential claim to the coins and artifacts may be notified. Odyssey is finalizing its initial archaeological report relative to the site, the coins, and the artifacts recovered, and is now in the process of preparing a detailed statement for the U.S. Federal Court which has assumed jurisdiction over the site.

      12.     The statement to be filed with the U.S. Federal Court is expected to include the following:

          a.   the initial archaeological report prepared by Odyssey on the Black Swan  site and the coins and artifacts;

          b.  a statement of conservators regarding the status of the coins and artifacts recovered and the efforts and expenses of Odyssey to date associated with conservation as well as an estimate of expenses going forward;

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

c.   affidavits from various Odyssey personnel regarding facts alleged in the pleadings; and

d.   other information which may be useful to the Court in determining the rights of Odyssey and any potential third parties.

13.     Recovery of the coins and artifacts from the "Black Swan" site has been the subject of intense international media attention and speculation, especially in Spain. Many of the Spanish media reports have been filled with inaccuracies, including false claims that the "Black Swan" coins and artifacts and/or artifacts from other shipwrecks were recovered illegally from Spanish territorial waters.

14.     Spain has filed claims in three pending court cases in which Odyssey has filed Warrants of Arrest. None of those sites, however, including the "Black Swan" site, are located in or near Spanish waters. Additionally, since the public announcement of the discovery of the "Black Swan" site, Odyssey has been very clear that the cargo recovered was in no way related to Odyssey's "Alboran Sea Project" nor the wreck site of what is believed to be HMS Sussex.

15.     At various times after January 2007, Odyssey's two ships, the *Odyssey Explorer* and the *Ocean Alert*, were engaged in survey activities off the Mediterranean coast of Spain pursuant to the survey plan envisioned and described in the "Alboran Sea Project" which was submitted to, and approved by Spanish authorities including representatives of the Junta of Andalucia. These activities consisted principally of conducting side scan sonar surveys in the Alboran Sea with the purposes of locating anomalies in order to map shipwreck sites in the area. These activities took place while awaiting the appointment of archaeologists by the Junta of Andalucia, prior to beginning the archaeological investigation of the site believed to be HMS Sussex. It was intended that data from these surveys would be furnished to the Junta of Andalucia pursuant to the "Alboran Sea Project" plan.

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

16.    Odyssey's vessel, the *Ocean Alert* does not have an ROV or recovery system of any kind aboard, and it was dedicated entirely to acoustic survey operations. Thus, it would have been impossible for this ship to have been involved in any recovery of artifacts off the coast of Spain or anywhere else. Reports that the AIS monitoring system showed the ship moving from offshore to closer inshore were simply a reflection of the survey lines that were being run, pursuant to the specific notice which had been provided to the Guardia Civil relative to these activities prior to leaving Port on each occasion.

17.    The *Odyssey Explorer* was involved in acoustic survey only beyond Spanish territorial waters, as well as inspection of anomalies using the ZEUS ROV system, also only beyond Spanish territorial waters. Some shipwrecks were discovered during this period, and their locations as well as archeological profiles were recorded.  Odyssey is prepared to present data describing the location and information relating to shipwreck sites located during the course of the surveys to the Spanish authorities as originally established within the "Alboran Sea Project" plan which was submitted to, and approved by the Spanish Government and the Junta of Andalucia.

18.    The "Black Swan" site is located in the Atlantic Ocean beyond the territorial waters or contiguous zone of any sovereign state, and in particular, outside any waters which have been claimed by Spain. As stated above, the exact location of the site cannot be given at this time for security reasons. Odyssey believes that valuable artifacts may still lie on the site, and because there are salvage companies with the capacity to undertake excavations that would violate Odyssey's exclusive status as salvor/finder in possession, there is a clear and present danger to the unprotected site.

19.    Odyssey issued a press release regarding the "Black Swan" recovery on May 18, 2007 and a subsequent clarifying statement on May 21, 2007.  (Those are attached hereto as Composite Exhibit A).

Page 4 of 10

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

20.    On May 29, 2007, Odyssey's attorneys attended a meeting at the Spanish Ministry of Culture in Madrid and explained Odyssey's activities to the Director General of Fine Arts and Cultural Assets, Mr. Julian Martinez Garcia. Odyssey's explanations were rejected out of hand by this gentleman and he stated that he was only interested in the location and identity of the wreck irrespective of the risk this could create for the wreck site. Odyssey's attorneys were informed that no additional meetings would be possible until Odyssey agreed to provide the location and identity of the "Black Swan" site, in spite of the assertion of Odyssey's attorneys that there was not sufficient evidence to confirm the identity of any ship related to the "Black Swan" site and that revealing the location of the site would endanger the site and should only be authorized through the U.S. Federal Court Judge who had jurisdiction over the site.

21.    On or about June 5, 2007, Odyssey became aware through the Spanish press that an order for a criminal investigation had allegedly been issued by a Spanish court which would allow Spanish officials to intercept and inspect Odyssey's vessels if they attempted to depart Gibraltar, where they were and currently are docked. Media reports indicated that the order was based on a claim that Odyssey had illegally recovered coins and artifacts in Spanish territorial waters.

22.    On June 11, 2007, Odyssey, through its attorneys, presented themselves before the court to request a copy of the alleged Order which had been referenced in the Spanish media from the judge in the Court of La Linea de La Concepcion N°3, the Honorable Mr. Juan Jose Navas Blanquez. Odyssey's attorney, however, was told by that Judge that the proceedings were "secret" at this time and that Odyssey could not be provided with any information on the subject or scope of the investigation or confirmation that an order for the arrest of any vessels even existed. Nevertheless, Odyssey's attorney offered the possibility of an inspection of Odyssey's ships as well as the possibility of an interview with a legal representative of Odyssey. Odyssey's attorney was encouraged by the judge to file an appearance in the proceedings and to offer any

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

information Odyssey would like the judge to consider. Later that day, Odyssey's attorney filed an appearance pleading (including the power of attorney) at court in which Odyssey confirmed that no shipwreck related to the "Black Swan" site had been identified, and that the site was not located in Spanish jurisdictional waters. The pleading also made an offer to assist the judge in his investigations.

23.      In addition, on June 14, 2007 Odyssey's attorney appeared before the Office of the Public Prosecutor in Cadiz to attempt to learn more about the proceedings and to again offer to cooperate on Odyssey's behalf. The attorney was told the same thing that he had been told on June 11 by the Judge, that the order was secret, and again he was encouraged to offer any available information to the Judge.

24.      On June 21, 2007, and contrary to the indications made to Odyssey's attorney by both the Judge and the Office of the Public Prosecutor, the Judge called Odyssey's court representative (procurator) to ask him to collect the original pleading and power of attorney which had been filed with the court, thereby rejecting any attempt by Odyssey to appear or offer evidence in the on-going investigation allegedly being conducted against the company. The original pleading, duly sealed by the court on June 14, 2007, was returned to Odyssey's attorneys via the procurator.

25.      While Odyssey's attorneys were attempting to be heard by the Spanish Court, Odyssey prepared a pleading for the Court of Instruction of La Linea de la Concepcion in its defense and in response to the reports of the alleged secret order for the inspection and possible arrests of its vessels. Odyssey intended to file that pleading with the Spanish Court had the Court allowed Odyssey to appear in its own defense.

26.      In that pleading, Odyssey explained that:

    a.      Odyssey had not confirmed the identity of the vessel in which the cargo recovered from the "Black Swan" site was carried. Consequently, the

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

Spanish State could not have any proof that any of the artifacts recovered belong to Spain.

b.  the U.S. Court has taken jurisdiction over the arrest and that Spain has made an appearance before the U.S. Court to pursue its rights and claims in that forum.

c.  on November 13, 2006, Odyssey announced to the Directorate General of Fine Arts of the Ministry of Culture in Madrid, in a meeting attended by Greg Stemm representing Odyssey and Odyssey's legal counsel, Mr. Jose Luis Goni, the possibility of shipwreck finds which could have cultural or historical interest to Spain. Odyssey offered to Spain the opportunity to collaborate in the projects discussed, and made clear that some of the wrecks were in danger from other salvors and that the company was prepared to collaborate with Spain to identify and protect these sites. This offer had also been made on various occasions to Spanish and Andalucian authorities.

d.  No recovery of any artifacts or cultural heritage materials has taken place in undisputed Spanish territorial waters from Odyssey's vessels.

e.  All operations in the Alboran Sea, since the arrival of both Odyssey's ships to the area in 2007, were reported in advance and closely monitored by the Guardia Civil. (Copies of the Notices to the Guardia Civil are attached hereto as Exhibit B).

f.  No artifacts from any shipwrecks or underwater sites are aboard either of Odyssey's vessels at this time, and it is not intended that any will be aboard either ship when they depart Gibraltar.

g.  A legal representative of Odyssey was available to give testimony regarding alleged activities in Spanish waters before a Judge upon issuance of a

Page 7 of 10

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

subpoena and reasonable notice with a translator and assurance that he/she would not be detained.

h.    Odyssey would allow inspection of its vessels on mutually agreed terms by a court  appointed inspector.

27.    Also in response to allegations in the Spanish media regarding Odyssey's presence near Spanish waters in March 2007, Odyssey, on June 22, 2007, issued a statement that it had been hired by Volvo Cars of North America, LLC to sink a modern treasure chest in a location outside Spanish territorial waters as part of a Volvo contest organized in cooperation with the Walt Disney Company to promote *Disney's Pirates of the Caribbean: At World's End.* Odyssey was working under non-disclosure agreements with Volvo and Disney which restricted it from explaining its activities during this period or prior to June 22, 2007 without violating the terms of this non-disclosure agreement. (A copy of Volvo's press release is attached hereto as Exhibit C).

28.    Volvo's confirmation of Odyssey's activities is attached as Exhibit D, a letter prepared by Volvo in support of Odyssey on June 7, 2007 and submitted to Spanish authorities.

29.    Despite Odyssey's attempts to explain its activities to the Spanish court, Odyssey's vessels have been forced to remain in Gibraltar under threat of Spanish interference with their departure, which has been communicated to Odyssey through diplomatic channels without any clear accusations, charges or possibility for Odyssey to present evidence.

30.    Odyssey has not been officially informed of any charges against it.  However, in addition to the pleadings which it has attempted to file and the public statements it has made, and in an attempt to address the "secret" allegations, Odyssey files herewith a chronological summary of its communications with the Kingdom of Spain and the autonomous region of Andalucia since July of 1998. (Exhibit E)

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

31.    Odyssey remains willing to cooperate with court-ordered investigations including the inspection of its ships in compliance with international law. Odyssey has suffered and continues to suffer financial damages as a result of the threats in Spain based on unfounded allegations against the company, its vessels, and crew.

32.    Odyssey intends to move its vessels, the *Ocean Alert*, a Panamanian flagged vessel, and the *Odyssey Explorer*, a Bahamian flagged vessel, from Gibraltar to locations beyond any waters claimed by Spain.

33.    Prior to sailing, Odyssey may remove from the vessels certain survey, video and inspection equipment unnecessary to the voyage in order to ship them to another location to begin operations elsewhere. Odyssey will maintain a list of any equipment which has been removed and will produce that list along with customs documentation confidentially upon written request from the Spanish Government. Odyssey warrants that none of the equipment removed represents any evidence which could in any way contain information or be used to demonstrate that any illegal activities within Spanish territorial waters have taken place.

34.    Odyssey intends to inform the Guardia Civil and Spanish authorities of its departure plans prior to departure of its ships so that an inspection of Odyssey's vessels may be coordinated on mutually-agreed terms.

35.    Because false and misleading information has been distributed through the Spanish media, and because Odyssey's responses to the alleged criminal order to which it has been denied access have gone unheard, I have prepared this Sworn Statement to clarify misinformation which has appeared in the press relating to Odyssey's activities.

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

I CERTIFY THAT THE ABOVE IS TRUE AND CORRECT TO THE BEST OF MY
KNOWLEDGE

_____

Gregory Stemm
Co founder and Co-Chairman. Odyssey Marine Exploration Inc

STATE OF FLORIDA                          )
COUNTY OF HILLSBOROUGH                     )

The foregoing instrument was acknowledged before me this 5th day of July, 2007, by
GREGORY STEMM                              . He is personally known by me.

_____
Notary Public

BETSY W MARRERO
Comm DD374815
Expires 11/26/2008
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

_____

Allen von Spiegelfeld, Esq.
Counsel for Odyssey Marine Exploration, Inc.

STATE OF FLORIDA                          )
COUNTY OF HILLSBOROUGH                     )

The foregoing instrument was acknowledged before me this 5th day of July, 2007, by
Allen von Spiegelfeld.  He is personally known by me.

NOTARY PUBLIC-STATE OF FLORIDA
Gayla M. Arnold
Commission #DD598439
Expires:  SEP 24, 2010
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Notary Public

Page 10 of 10

*This document is a confidential and intended only for the use of the recipient. It should not be distributed to
any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*



# DECLARACION JURADA

"*Esta es una traducción de la carta en inglés.  A la medida que haya discrepancia entre las dos versiones, la versión inglesa siempre prevalece*"

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*

*Traducción*

*Esta es una traducción de la carta en inglés. A la medida que haya discrepancia entre las dos versiones, la versión inglesa siempre prevalece*

## DECLARACION JURADA
### 5 de julio de 2007

1. Mi nombre completo es Gregory Stemm. Mi dirección a efectos legales es {*direccion particular suprimida*}. Tengo capacidad suficiente para realizar esta declaración en relación con los temas tratados a continuación.

2. Juro o afirmo que los hechos relatados aquí son exactos según mi saber y entender.

3. Soy el Co-fundador de Odyssey Marine Exploration Inc. (en adelante Odyssey), empresa americana constituida según las leyes del Estado de Nevada que posee sus oficinas centrales en Tampa, Florida.

4. Estoy autorizada por Odyssey para realizar esta declaración.

5. Odyssey ha recuperado monedas y artefactos del océano Atlántico de un yacimiento a que Odyssey ha dado el nombre codificado de "Black Swan". Por razones de seguridad, Odyssey no ha publicado la fecha del descubrimiento ni la localización exacta del yacimiento.

6. Odyssey no ha obtenido suficientes pruebas para poder identificar el buque del cual proceden las monedas y los artefactos recuperados del "Black Swan".

7. Odyssey ha debidamente presentado una orden de embargo ante la Jurisdicción Marítima del Juzgado Federal de los Estados Unidos. El Juzgado americano ha concedido a Odyssey el estatus de descubridor y/o salvador en posesión y ha nombrado a Odyssey como depositario de todos los artefactos recuperados del yacimiento en sustitución del U.S. Marshall.

8. Siguiendo rigurosos protocolos arqueológicos, Odyssey ha recuperado monedas y artefactos del yacimiento después de una inspección pre-remoción (*predisturbance survey*) pormenorizada y los ha transportado a los EE.UU para ser conservados de acuerdo con métodos de cuidado correspondientes. Toda la inspección se realizó bajo la supervisión directo de arqueólogos certificados.

9. El primer embarque de artefactos del yacimiento del "Black Swan" salió el 10 de abril 2007 desde Gibraltar a Tampa, Florida en un avión privado G5. Este embarque consistía en grupos de monedas de plata, y pequeños artefactos misceláneos. El segundo embarque de monedas y artefactos salieron el 16 de mayo desde Gibraltar a Tampa, Florida en un avión de North American Airlines

1

*Este documento es confidencial y solo para el uso del recipiente designado. No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

Boeing 757. El embarque consistía de artefactos misceláneos así como 552 envases de monedas de plata. En cada caso, Odyssey cumplió con todos los trámites y requisitos aduaneros del Gobierno de Gibraltar para la legítima exportación de los materiales. Asimismo, todos los requisitos legales e aduaneros apropiados fueron cumplidos en cuanto llegaron estos bienes a los Estados Unidos.

10. Contrariamente a la información publicada por algunos medios de comunicaciones, el Ministerio de Defensa del Reino Unido no participó en absoluto en el almacenaje, conservación o en cualquier otra operación relativa a la recuperación o transportación de las monedas y artefactos del yacimiento del "Black Swan".

11. Odyssey ha mantenido la custodia de las monedas y de los artefactos de acuerdo con la orden del Juzgado Federal americano. El plan arqueológico de Odyssey incluye la posibilidad de volver al yacimiento para empezar la segunda fase de la investigación arqueológica con el fin de intentar confirmar la identificación del yacimiento de donde podía haber procedido la carga para que todas y cada uno de las partes que potencialmente posean algún derecho sobre las monedas y los artefactos pueden ser notificadas. Odyssey está finalizando su informe arqueológico preliminar relativo al yacimiento, las monedas y los artefactos recuperados, y está actualmente elaborando una declaración pormenorizada para el Juzgado Federal del EE.UU. que ha asumido la jurisdicción sobre el yacimiento.

12. La declaración que va a ser presentada ante el Juzgado Federal del EE.UU. se espera que incluya la siguiente información:

    a.    el informe arqueológico preliminar de Odyssey sobre el yacimiento del "Black Swan" y las monedas y artefactos;

    b.    una declaración realizada por expertos en conservación en relación con el estado de las monedas y los artefactos recuperados y las operaciones de conservación y gastos incurridos por Odyssey hasta la fecha así como un presupuesto de los gastos futuros

    c.    declaraciones juradas de varios empleados de Odyssey en relación con los hechos descritos en los escritos; y

    d.    otra información que pudiera ser de utilidad al Juzgado americano (para determinar los derechos de Odyssey y de cualquier otros terceros potenciales;

13. La recuperación de las monedas y de los artefactos procedentes del "Black Swan" ha sido objeto de una intensa atención y especulación mediática internacional, particularmente en España. Muchos de los reportajes mediáticas españolas se encuentran llenas de equivocaciones, incluyendo falsas

2

afirmaciones sobre la recuperación ilegal de las monedas y artefactos del "Black Swan" y/o artefactos de otros pecios de aguas territoriales españolas.

14. España ha presentado reclamaciones judiciales en tres de los casos pendientes ante el Juzgado americano en los cuales Odyssey ha solicitado una orden de embargo. Sin embargo, ninguno de estos yacimientos, incluyendo el yacimiento del "Black Swan", están ni cerca ni en aguas españolas. Asimismo, desde el anuncio publico del descubrimiento del yacimiento del "Black Swan", Odyssey ha declarado contundentemente que la carga recuperada de ninguna manera está relacionada con el Proyecto Mar de Alborán de Odyssey, ni con el yacimiento de lo que se piensa ser el HMS Sussex.

15. En varias ocasiones después de enero 2007, los dos buques de Odyssey, el *Odyssey Explorer* y el *Ocean Alert*, realizaron operaciones de inspección cerca de la costa mediterránea española de conformidad con lo previsto y descrito en el plan de inspección del Proyecto Mar de Alborán que fue presentado y aprobado por las Autoridades españoles incluyendo los representantes de la Junta de Andalucía. Estas operaciones consistían principalmente en realizar sondeos de barrido laterales en el Mar del Alborán con el propósito de localizar anomalías para poder catalogar pecios en la zona. Estas operaciones se realizaron mientras Odyssey esperaba el nombramiento por parte de la Junta de Andalucía de los arqueólogos, antes de comenzar la investigación arqueológica del yacimiento que se cree ser el HMS Sussex. Era la intención de Odyssey entregar la información de estas investigaciones a la Junta de Andalucía de acuerdo con el Proyecto Mar de Alborán.

16. El buque de Odyssey *Ocean Alert* carece de sistema de control remota (ROV) u otro sistema cualquiera de recuperación abordo, y se dedicó enteramente a realizar operaciones de sondeo acústico (*acoustic survey*). Por lo tanto, sería imposible que este buque realizara la recuperación de cualquier artefacto fuera de las costas de España o en cualquier otro lugar. Las informaciones del sistema de vigilancia AIS que muestran los movimientos del buque desde el exterior hacia zonas mas cercanas a la costa son simplemente reflejos de las líneas de sondeo que se trazaban, de conformidad con la específica notificación que en cada ocasión se realizaba a la Guardia Civil antes de salir del Puerto en relación con estas operaciones.

17. El buque *Odyssey Explorer* realizó sondeos acústicas más allá de las aguas territoriales españolas únicamente, así como inspecciones de anomalías utilizando el sistema de ROV ZEUS también únicamente más allá de aguas territoriales españolas. Se descubrieron algunos pecios durante este periodo, y su localización así como sus perfiles arqueológicos fueron catalogados. Odyssey esta dispuesto facilitar datos en relación con la localización e información relevante a los yacimientos encontrados durante estos sondeos a las autoridades españolas tal como se estableció originalmente en el Proyecto Mar del Alborán que fue presentado a, y aprobado por el Gobierno español y la Junta de Andalucía.

3

*Este documento es confidencial y solo para el uso del recipiente designado. No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

18. El yacimiento del "Black Swan" está localizado en el océano Atlántico mas allá de aguas territoriales o zonas contiguas de cualquier estado soberano, y en particular, lejos de aguas jurisdiccionales reclamadas por España. Como se dice anteriormente, la localización exacta del yacimiento no puede ser revelada en este momento para salvaguardar la seguridad del yacimiento. Odyssey cree que pueden existir aún más artefactos valiosos en la zona del yacimiento y dado que existen empresas de salvamento con capacidad de realizar excavaciones que pueden violar el estatus exclusivo de Odyssey como salvador/descubridor en posesión, existe una claro y real peligro para el yacimiento desprotegido.

19. El 18 de mayo de 2007, Odyssey publicó una nota de prensa relativa a la recuperación del "Black Swan" y posteriormente una declaración aclaratoria el 21 de mayo de 2007. (Ambos notas de prensa se adjunta como **Doc.A**).

20. El 29 de mayo de 2007, los letrados de Odyssey acudieron a una reunión con el Ministerio de Cultura español en Madrid donde explicaron las actividades de Odyssey al Director General de Bellas Artes y Bienes Culturales, D. Julián Martínez Garcia. Las explicaciones ofrecidas por Odyssey fueron rechazadas sin más por el Director quien insistió que sólo le interesaba la localización e identidad del pecio a pesar del riesgo que esto supondría para el yacimiento. Los letrados de Odyssey fueron informados por el Director General que no habría mas reuniones hasta que Odyssey entregase la localización y la identidad del yacimiento del "Black Swan", sin tener en cuenta que, por parte de los letrados de Odyssey, se afirmase que no había prueba suficiente para confirmar la identidad del yacimiento del "Black Swan" y de que la revelación de la localización pondría en peligro al yacimiento y que sólo se podría autorizar a través del Juez del Juzgado Federal americano con jurisdicción sobre el yacimiento.

21. Alrededor del 5 de junio de 2007, Odyssey se enteró por la prensa española que alegadamente un Juzgado español había emitido una orden dentro de un procedimiento penal por la que se autorizaba a las autoridades españolas a interceptar e investigar a los buques pertenecientes a Odyssey en la medida que abandonen Gibraltar, donde siguen atracados en la actualidad. La información de la prensa indicaba que la orden se fundamentaba en alegaciones de que Odyssey había recuperado monedas y artefactos ilegalmente de aguas territoriales españolas.

22. El 11 de junio de 2007, con el fin de obtener una copia de la mencionada orden, Odyssey, a través de su letrado español, se presentó ante el Juzgado al que hacia referencia la prensa (Juzgado de la Línea de la Concepción nº 3, siendo el Juez el Sr. Juan José Navas Blánquez). El Juez informó al letrado de Odyssey que las investigaciones tenían el carácter de "secreto" en ese momento y que por tanto Odyssey no podía ser facilitado información alguna sobre el ámbito o la materia objeto de la investigación ni siquiera podía confirmar si existía o no la citada orden de detención. No obstante el letrado ofreció a dicho juez la posibilidad de una inspección de los buques de Odyssey así como ofrecer una entrevista con un representante legal de Odyssey. El Juez sugirió al letrado de Odyssey que

4

*Este documento es confidencial y solo para el uso del recipiente designado. No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

Odyssey se personara y que le ofreciera por escrito cualquier información que Odyssey quisiera que el Juez tuviera en cuenta. Posteriormente ese mismo día el letrado de Odyssey presentó el escrito de personación (acompañado de un poder para pleitos) ante el Juzgado reiterando que no había sido identificado ningún pecio relacionado con el yacimiento del "Black Swan" y que dicho yacimiento no se encontraba en aguas jurisdiccionales españolas. En el mismo escrito se realizaba una oferta de colaboración para asistir al Juez en su investigación.

23. Así mismo, el 14 de junio de 2007, el letrado de Odyssey acudió a la oficina del Fiscal en Cádiz con el propósito de averiguar toda la información posible sobre la investigación penal y para reiterar la buena voluntad de Odyssey en cooperar con las investigaciones. El letrado recibió la misma información que le había facilitado el Juez el 11 de junio de 2007 (que el procedimiento era secreto) y fue alentado de nuevo para facilitar cualquier información disponible al Juez.

24. El 21 de junio de 2007, y contrariamente a las indicaciones realizadas al letrado de Odyssey tanto por el Juez como por el Fiscal, el Juez llamó el procurador de Odyssey para que recogiera el escrito original de personación y el poder para plietos que habían sido presentados ante el Juzgado, rechazando así cualquier intento por parte de Odyssey de comparecer u ofrecer información para ayudar en la investigación que supuestamente se está llevando a cabo contra Odyssey. El escrito original con sello de entrada el 14 de junio de 2007 fue devuelto al letrado de Odyssey a través de su procurador.

25. Mientras el letrado de Odyssey intentó comparecer ante el Juzgado de Instrucción, Odyssey preparó un escrito de defensa para el Juzgado de Instrucción de La Línea de la Concepción y en respuesta a las informaciones relativas al secreto de la orden de inspección y posible detención de sus buques. Odyssey pretendió presentar dicho escrito frente al Juzgado español en el caso de que ese Juzgado le hubiera permitido defenderse.

26. En dicho escrito Odyssey explicaba lo siguiente:

   a.   Que Odyssey no había confirmado la identidad del barco en el que había sido transportado el cargamento. Por consiguiente el Estado español no puede disponer de prueba alguna de que los artefactos recuperados pudieran pertenecerle.

   b.   Que el Juzgado americano tiene jurisdicción sobre el embargo y que España ha comparecido ante dicho Juzgado para hacer valer y reclamar sus derechos en dicho foro.

   c.   Que el día 13 de noviembre de 2006, Odyssey anunció a la Dirección General de Bellas Artes del Ministerio de Cultura, en Madrid, en una reunión mantenida entre yo mismo en representación de Odyssey, acompañado del letrado de Odyssey, D. José Luis Goñi y Doña Elisa de Cabo del Ministerio de Cultura, la posibilidad del hallazgo de pecios que podrían tener interés cultural o histórico para España.

5

*Este documento es confidencial y solo para el uso del recipiente designado.  No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

Odyssey ofreció a España la oportunidad de colaborar en los proyectos comentados, y Odyssey dejó muy claro que algunos de estos pecios estaban en peligro de caer en manos de otros salvadores y que Odyssey estaba dispuesta a colaborar con España para identificar y proteger tales yacimientos.   Esta oferta ya se había reiterado en diversas ocasiones a las autoridades españolas e andaluzas.

d.      Que los buques de Odyssey no han llevado a cabo ninguna recuperación de artefactos o patrimonio cultural de ningún tipo en aguas territoriales españolas indiscutibles

e.      Que todas las operaciones en el Mar del Alborán desde la llegada de ambos buques de Odyssey a la zona en 2007, fueron notificadas con antelación a la Guardia Civil y vigiladas por ésta muy de cerca (copias de las notificaciones realizadas a la Guardia Civil se adjuntan a este informe como **Doc.B**).

f.      Que ningún artefacto de cualquier pecio ni yacimiento subacuatico se encuentran a bordo de los buques de Odyssey en este momento y la intención es de que no haya ningún artefacto a bordo de los buques cuando salgan de Gibraltar.

g.      Que un representante legal de Odyssey esta disponible para declarar ante el Juzgado español en relación con alegadas actividades en aguas españolas tras requerimiento formal y con antelación razonable con traductor bajo el compromiso de que no fuera encarcelado.

h.      Odyssey permitirá una inspección de sus buques en relación con sus allegadas actividades en aguas españolas por un experto nombrado por el Juzgado.

27. Así mismo, en contestación a las alegaciones realizadas por la prensa española en relación con la presencia de Odyssey cerca de aguas españolas en marzo de 2007, Odyssey, el 22 de junio de 2007, publicó una declaración en la que se afirmaba que fue contratado por Volvo Cars of North America, LLC para hundir un cofre moderno de tesoro en una zona fuera de aguas territoriales españolas como parte del concurso organizado por Volvo en colaboración con Walt Disney World Company para promocionar el estreno de la película *Disney Piratas del Caribe: el Fin de Mundo*. Odyssey operaba bajo un acuerdo de confidencialidad con Volvo y Disney que le impedía explicar sus actividades durante este periodo o anterior al 22 de junio de 2007 sin violar los términos de esta cláusula de confidencialidad del citado acuerdo. (Se adjunta una copia de la nota de prensa publicada por Odyssey como **Doc.C**).

28. Se adjunta como **Doc.D**, una carta de 7 de junio de 2007 escrita por Volvo confirmando las actividades de Odyssey y entregado a las autoridades españolas.

6

*Este documento es confidencial y solo para el uso del recipiente designado.  No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

29. A pesar de los intentos de Odyssey de explicar sus operaciones al Juzgado español, los buques de Odyssey se han visto obligados a refugiarse en Gibraltar bajo amenazas por parte de España de intervenir tras su salida; una información que ha sido comunicada a Odyssey a través de canales diplomáticos sin detallar las acusaciones, alegaciones y sin ofrecer a Odyssey posibilidad alguna de defenderse.

30. Odyssey carece de notificación oficial de cualquier cargo contra ella.  A pesar de ello y además de los escritos que ha intentado presentar al Juzgado español y de las declaraciones publicas, y en un intento de responder a las alegaciones "secretas" contra Odyssey, Odyssey adjunta a lo presente un resumen cronológico de sus comunicaciones con el Reino de España y la Comunidad Autónoma de Andalucía desde julio de 1998. (**Doc.D**).

31. Odyssey mantiene su intención de colaborar con cualquier orden judicial, incluyendo la inspección de sus buques de acuerdo con las leyes internacionales. Odyssey ha sufrido y continúa sufriendo daños y perjuicios económicos como consecuencia de las amenazas de España basadas en alegaciones infundadas contra su empresa, sus buques y su tripulación.

32. Odyssey tiene la intención de llevar a sus buques, el *Ocean Alert* de bandera panameña y el *Odyssey Explorer* con bandera de Bahamas, desde Gibraltar a un lugar fuera de las aguas reclamadas por España.

33. Antes de salir, Odyssey puede sacar de los buques cierto equipo de investigación, video e inspección innecesario para el viaje y de llevarlos a otro lugar donde pueden ser utilizados en sus operaciones. Odyssey mantendrá un listado del cualquier equipo que se ha sacado y lo entregará junto con la documentación de aduanas confidenciales siempre que el Estado español lo solicite por escrito. Odyssey garantiza que nada de este equipo supone prueba alguna que pudiese contener información o que pudiese ser utilizado para demostrar que se han llevado a cabo actividades ilegales dentro de las aguas territoriales españolas.

34. Odyssey pretende informar a la Guardia Civil y las autoridades españolas de su plan de salida con anterioridad a ésta con el fin de coordinar con seguridad una inspección de los buques de Odyssey.

35. En repuesta a las informaciones falsas y confusas de la prensa española y dado que se le ha negado ser oído a Odyssey contra la alegada orden judicial penal decretado en su contra, he preparado esta Declaración Jurada con el fin de aclarar la información incierta que ha aparecido en la prensa española en torno a las actividades de Odyssey.

CERTIFICO QUE LO ANTERIOR ES VERDADERO Y CORRECTO SEGÚN MI SABER Y ENTENDER

*Este documento es confidencial y solo para el uso del recipiente designado.  No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

Gregory Stemm
Co-Fundador de Odyssey Marine Exploration Inc

ESTADO DE FLORIDA                          )
CONDADO DE HILLSBOROUGH                     )

El citado documento fue atestado por mi el 5. Julio de 2007.    Conozco
personalmente al firmante.

_____
Notario Publico

_____
Betsy W. Marrero
No. De Comision DD0374815
Expira: Nov 28, 2008
Fiador por Florida Notary Assn., Inc.

Allen von Spiegelfeld
Letrado de Odyssey Marine Exploration Inc

ESTADO DE FLORIDA                          )
CONDADO DE HILLSBOROUGH                     )

El citado documento fue atestado por mi el 5 Julio de 2007.    Conozco
personalmente al firmante.

_____
Notario Publico

_____
Gayla M. Arnold
No. De Comision DD598439
Expira: Sep 24, 2010
Fiador por Atlantic Bonding Co. Inc.

8

*Este documento es confidencial y solo para el uso del recipiente designado.  No debe
ser distribuido a cualquier parte sin autorización de un oficial o representante legal de
Odyssey Marine Exploration Inc.*



# EXHIBIT A (COMPOSITE)

## TO THE

## SWORN STATEMENT

### Black Swan Press Release on May 18

### and

### Clarify Statements on May 21, 2007

---

## ANEXO A (COMPUESTO)

## AL

## DECLARACION JURADA

### Nota da Prense del Black Swan de 18 de mayo

### y

### Clarifique las Declaraciones de 21 de mayo de 2007

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*
*Este documento es confidencial y sola para el uso de recipiente designado. No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

Press Release                                        Source: Odyssey Marine Exploration

# Odyssey's Latest Shipwreck Find Yields over 500,000 Silver and Gold Coins
Friday May 18, 9:15 am ET

## World's Largest Historical Shipwreck Coin Recovery Produces Record 17 Tons of Silver Currency

TAMPA, Fla.--(BUSINESS WIRE)--Odyssey Marine Exploration (AMEX:OMR - News), the world's leader in the field of deep-ocean shipwreck exploration announced today that it has completed the pre-disturbance archaeological survey and preliminary excavation of a Colonial period shipwreck site code-named "Black Swan" in an undisclosed location in the Atlantic Ocean.

The artifacts recovered from the site include over 500,000 silver coins weighing more than 17 tons, hundreds of gold coins, worked gold, and other artifacts. All recovered items have been legally imported into the Unites States and placed in a secure, undisclosed location where they are undergoing conservation and documentation.

It is believed that this recovery constitutes the largest collection of coins ever excavated from a historical shipwreck site. They were recovered in conformity with Salvage Law and the Law of the Sea Convention, beyond the territorial waters or legal jurisdiction of any country. The Company does not believe that the recovery is subject to sovereign immunity by any nation pursuant to the Law of the Sea Convention.

The work accomplished to date on this site has diligently followed archaeological protocols using advanced robotic technology, and the artifacts are now undergoing a meticulous conservation process by some of the world's most experienced coin conservators.

The Company is not prepared to disclose the possible identity of the shipwreck at this time, and may only do so after thoroughly examining the artifacts, analyzing the research and proving the identity, if possible, of the shipwreck.

"Our research suggests that there were a number of Colonial period shipwrecks that were lost in the area where this site is located, so we are being very cautious about speculating as to the possible identity of the shipwreck," said John Morris, Odyssey Co-founder and CEO. "Nevertheless, we have treated this site with kid gloves and the archaeological work done by our team out there is unsurpassed. We are thoroughly documenting and recording the site, which we believe will have immense historical significance."

"The remarkable condition of most of the first 6,000 silver coins conserved has been a pleasant surprise, and the gold coins are almost all dazzling mint state specimens," said Greg Stemm, Odyssey's Co-founder. "We are excited by the wide range of dates, origins and varieties of the coins, and we believe that the collecting community will be thrilled when they see the quality and diversity of the collection."

The excavation of this site follows Odyssey's successful excavation of the SS Republic®, a shipwreck lost in 1865 off the US coast. The deep ocean robotic archaeological excavation of that site produced approximately 65,000 artifacts, including over 50,000 coins with a retail value of over $75 million.

The company is continuing operations on several other projects with its ships and ROV systems, and is currently awaiting the appointment of Spanish archaeologists following an arrangement with the

Spanish Government and the Junta of Andalucia prior to resuming operations on the Sussex project pursuant to an agreement with the UK Government.

For security reasons, as with the "Black Swan" project, the company may only announce the results of the other current projects after completion of the excavations or delivery of the artifacts to a safe location.

About Odyssey Marine Exploration

Odyssey Marine Exploration is a Publicly Traded US Company with several shipwreck projects in various stages of development throughout the world. Additional information about Odyssey, the "Black Swan" project, and the Company's other activities is available at www.shipwreck.net.

For additional information, please contact Natja Igney, Odyssey's Manager of Corporate Communications, at 813-876-1776 ext 2553.

Odyssey Marine Exploration believes the information set forth in this Press Release may include "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995, Section 27A of the Securities Act of 1933 and Section 21E of the Securities Act of 1934. Certain factors that could cause results to differ materially from those projected in the forward-looking statements are set forth in "Risk Factors" in the Part I, Item 1A of the Company's Annual Report on Form 10-K for the year ended December 31, 2006, which has been filed with the Securities and Exchange Commission.

*Contact:*
```
Odyssey Marine Exploration, Tampa
Natja Igney, 813-876-1776 x 2553
nigney@shipwreck.net
```
------------------------------------
Source: Odyssey Marine Exploration

# Odyssey Provides "*Black Swan*" Shipwreck Information Update

Tampa, FL – May 21, 2007- Since the announcement by Odyssey Marine Exploration, Inc. (AMEX:OMR) of the recovery of over 500,000 coins from the shipwreck code-named "*Black Swan*", intense international media coverage has led to many questions that the Company would like to address.

In addition to the following questions and answers, additional information on the shipwreck can be accessed in the "*Black Swan* Question and Answer" section of Odyssey's website at shipwreck.net, or a copy may be obtained by contacting the Company.

**1. It has been widely reported that this shipwreck could be worth up to $500 million. What is the Company's position on this?**

The Company has not estimated the total potential value of the shipwreck, other than to estimate on a preliminary basis a wide range of potential retail prices based on the coins that have been conserved to date.

What we know is that we have recovered over 500,000 silver coins weighing over 17 tons, along with some gold coins and other artifacts. After conservation of the first 6,000 coins, we requested that a numismatist and one of the world's most experienced coin marketers, Nick Bruyer, inspect the coins and provide an opinion of the retail pricing that we could expect from the collection.

Based on Mr. Bruyer's opinion, Odyssey reported that we expected the retail pricing of the silver coins to range from several hundred to four thousand dollars per coin. This wide range of prices would depend on the condition, origin and date of the individual coins. We understand that in a separate interview with a reporter, Mr. Bruyer provided his opinion that the mean retail price of the coins could be approximately $1,000 based on the small sample of coins that he inspected. This was reported as a potential $500 million retail value for the coins, which explains where that figure originated.

Odyssey's position is that until all the coins are conserved, documented and graded, it is impossible to know what the entire collection would bring at retail. Based on the coins that have been conserved to date and that he has been able to inspect, we are comfortable with Mr. Bruyer's opinion that coins from the "*Black Swan*" will bring from several hundred to four thousand dollars per coin retail. These are estimates that could change significantly when the rest of the coins are conserved and do not include the cost of marketing and sales, so actual revenue to Odyssey would be much lower than retail sales prices.

For more information on the marketing and pricing of coins, see questions 2, 8 and 12 in the "*Black Swan* Q and A".

**2. There have been reports that the "*Black Swan*" is a number of different shipwrecks, including HMS *Sussex* and the *Merchant Royal*. Are any of these reports correct?**

We can confirm that the "*Black Swan*" is not HMS *Sussex*, and that the "*Black Swan*" was not found in waters anywhere near the shipwreck believed to be HMS *Sussex*. Beyond that, we cannot confirm the identity of the shipwreck because we are not certain ourselves. The site is in an area in which a number of Colonial-era Shipwrecks were believed to be lost. The "*Black Swan*" bears characteristics of one shipwreck in particular, but some of the evidence gathered to date is inconsistent with our research, so we want to be sure of the identity before we announce it.

**3. It has been reported that the Spanish Government is engaging in a "probe" of Odyssey because it is "suspicious" that we have not publicized more information about the shipwreck. Is this true?**

We have no knowledge of any such inquiry, and would expect that we would have been the first

ones contacted if there was one. In our experience with the Spanish Government, with whom we have had a very cordial relationship for many years, we would have been informed directly or through the US or UK embassy of any outstanding issues relating to Odyssey's operations.

During the past few days, we have also seen many fanciful media reports from Spain with absolutely no substance in reality. Unfortunately, some of these wild allegations would logically cause concern to the Spanish Government. We anticipate presenting the Spanish Government with an official account of our activities in order to assure them that many of these media reports relative to the "*Black Swan*" are pure fiction.

We have stated clearly that the recovery was conducted in conformity with Salvage Law and the Law of the Sea Convention, beyond the territorial waters or legal jurisdiction of any country. We do not believe that the recovery is subject to sovereign immunity by any nation pursuant to the Law of the Sea Convention.

The coins were brought into the United States with a valid export license granted by the country from which they were exported, and imported legally pursuant to US Law.

There was no point at which any aspect of the "*Black Swan*" operation was within the jurisdiction of Spanish authorities, and we will be pleased to provide proof of that fact to the Spanish Government if requested officially.

### 4. What about the claim that the Spanish Government has now asked the "Guardia Civil" marine patrol to monitor Odyssey's activities?

The Spanish Guardia Civil has always monitored Odyssey's ships in Spanish Territorial waters. When operating in or near Spanish Territorial waters, we report our operational plans and movements to the Guardia Civil marine patrol before we send our ships to sea. They are able to monitor all our activities visibly with their patrol boats and through radar, so it is illogical to suggest that we have conducted any illicit operations in Spanish territorial waters.

### 5. What happens, if you finally determine the identity of the "*Black Swan*" and establish that the UK, Spain, any other country or even individuals may have rights to the shipwreck?

If we are able to confirm that some other entity has a legitimate legal claim to this shipwreck when - and if - the identity is confirmed, we intend to provide legal notice to any and all potential claimants. Even if another entity is able to prove that it has an ownership interest in the shipwreck and/or cargo and that they had not legally abandoned the shipwreck, Odyssey would apply for a salvage award from the Admiralty Court. In cases such as this, salvors are typically awarded up to 90% of the recovery.

We do believe that most shipwrecks that we recover, including the "*Black Swan*", will likely result in claims by other parties. Many will be spurious claims, but we anticipate that there might be some legitimate ones as well. In the case of the "*Black Swan*", it is the opinion of our legal counsel that even if a claim is deemed to be legitimate by the courts, Odyssey should still receive title to a significant majority of the recovered goods.

### 6. Why is Odyssey being so "secretive" about the "*Black Swan*?"

Based on past experience with other shipwrecks, we have found that putting out information about the identity of shipwrecks into the public before we are certain of the identity results in wild speculation about values, ownership rights and scores of other issues. We also believe that it would be an added risk factor to disclose the location of the site because we have publicly stated that we have left a large number of artifacts on the site, and the security risk is obvious.

### 7. Why haven't you determined the identity of the shipwreck yet? When will you announce the identity?

Determining the identity of a shipwreck is complicated. For example, it would be possible to find a French-built ship, with English cannons, Dutch pottery, Chinese porcelain, Turkish pipes, and Venetian trading beads that had been captured by pirates before it sank. Proving the shipwreck's identity in that case might prove very difficult, if not impossible depending on the research available.

In the best interest of all concerned, we will follow our often-stated policy of announcing what we know about the identity of a shipwreck, only after it's confirmed by research.

### 8. There have been reports of a partnership between Odyssey Marine Exploration and the Disney organization. Are these true?

We can confirm that Odyssey and the Disney organization have recently entered into a relationship on a number of projects, and that the two companies are in discussions relative to some new partnership opportunities.

We have immense respect for Disney and believe that a combination of Odyssey's authentic deep-ocean adventures coupled with Disney's story-telling, film-making, television and marketing capabilities will reap benefits for both companies, while providing the public with an unprecedented opportunity to enjoy the thrill of deep-ocean exploration.

**About Odyssey Marine Exploration** Odyssey Marine Exploration is a Publicly Traded US Company with several shipwreck projects in various stages of development throughout the world. Additional information about Odyssey, the "*Black Swan*" project, and the Company's other activities is available at <u>shipwreck.net</u>.

For additional information, please contact Natja Igney, Odyssey's Manager of Corporate Communications, at 813-876-1776 ext 2553.

###

Odyssey Marine Exploration believes the information set forth in this Press Release may include "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995, Section 27A of the Securities Act of 1933 and Section 21E of the Securities Act of 1934. Certain factors that could cause results to differ materially from those projected in the forward-looking statements are set forth in "Risk Factors" in the Part I, Item 1A of the Company's Annual Report on Form 10-K for the year ended December 31, 2006, which has been filed with the Securities and Exchange Commission.



**EXHIBIT B**

**TO THE**

**SWORN STATEMENT**

**Faxes to Guardia Civil with Notice to Mariners**

Dated

January 26, 2007
February 12, 2007
February 16, 2007
March 5, 2007
May 14, 2007
May 17, 2007

———————

**ANEXO B**

**AL**

**DECLARACION JURADA**

**Emisiones por Fax al Guardia Civil con Noticia a los Navegantes**

Fecha de

26 de enero de 2007
12 de febrero de 2007
16 de febrero de 2007
5 de marzo de 2007
14 de mayo de 2007
17 de mayo de 2007

———————

*This document is confidential and intended only for the use of the recipient. It should not be distributed to any party without authorization of an officer or legal representative of Odyssey Marine Exploration Inc.*
*Este documento es confidencial y solo para el uso de recipiente designado. No debe ser distribuido a cualquier parte sin autorización de un oficial o representante legal de Odyssey Marine Exploration Inc.*

GOÑI
& CO,
ABOGADOS

Fecha: 26/1/07
Nº de Pags: 3

# FAX

| To: | COMANDANCIA DE ALGECIRAS | Att.: | Comandante Martín de Oliva |
|---|---|---|---|
| Fax: | 956 63 33 71 | Pages : | 3 |
| Tel: | | Date: | 26 de enero de 2007 |
| Y/ REF: | | O/REF: | |

El conte nido de este fax es, por su naturaleza, confidencial. Si por error llegara a otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Comandante Oliva

Re.: ODYSSEY EXPLORER. Cartas náuticas

Siguiendo las instrucciones recibidas de D. Jose Luis Goñi y D.Greg Stem, haciéndole extensible nuestro agradecimiento por habernos recibido, le adjunto los dos extractos de las dos cartas náuticas como le prometimos.

La 1ª denominada zona de operaciones.

Durante los días 26 a 28 de enero, aproximadamente, el buque ODYSSEY EXPLORER se moverá en dirección este/oeste sondeando y anotando la profundidad del agua. Ningún equipo será introducido en el agua. Hemos ya avisado a la torre de Tarifa y hemos comenzado este ejercicio alrededor de las 14:00 horas de hoy después de nuestra reunión.

La 2ª carta náutica denominada zona de prueba de equipos.

Durante los días 28 a 30 de enero, aproximadamente, el buque ODYSSEY EXPLORER mantendrá su posición utilizando propulsores y posicionamiento dinámico dentro de esta zona de 1 milla náutica, zona que se encuentra fuera de las 12 millas de la costa española. En ese momento si vamos a tener equipo de superficie para hacer pruebas en varios momentos durante este periodo.

Atentamente

P.O. Mª José de Medina

JOSE LUIS GOÑI ETCHEVERS
GOÑI & CO. ABOGADOS

VELAZQUEZ, 24-3º dcha.• 28001  MADRID • TEL (34) 91 563 47 40 • FAX (34) 91  63 11 43
joseluis.goni@goni-abogados.com
ROSELLÓN 229 – 2º, 1º B • 08008 BARCELONA • TEL (34) 93 415  90 68 • FAX (34) 93 415 70 13





**URGENTE** 

**GOÑI**
**& CO.**
**ABOGADOS**

# FAX

| To: | COMANDANCIA DE | Att.: | Comandante Martin de Oliva |
|-----|----------------|-------|----------------------------|
|     | ALGECIRAS      |       |                            |

| Fax: | 956 63 33 71 | Pages : | 2 |
|------|--------------|---------|---|

| Tel: | | Date: | 12 de febrero de 2007 |
|------|--|-------|-----------------------|

| Y/REF: | | O/REF: | |
|--------|--|--------|--|

El conte nido de este fax es, por su naturaleza, confidencial. Si por error llegara a otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Comandante Oliva

**Re.: ODYSSEY EXPLORER. Carta náutica**

Siguiendo las instrucciones recibidas de la letrada Dña. Marie Rogers, y de acuerdo con la conversación mantenida con usted durante el día de ayer , domingo 11 de febrero , le adjuntamos carta náutica donde aparece indicada la zona de operaciones como BLOCK B.

Atentamente

P o me.

**GOÑI ABOGADOS S.L.**
Velázquez, 24 3º Dcha.
28001 MADRID

MARIE ROGERS
GOÑI & CO. ABOGADOS

VELAZQUEZ, 24-3º dcha.• 28001 MADRID • TEL. (34) 91 563 47 40 • FAX (34) 91 63 11 43
marie.rogers@goni-abogados.com
ROSELLÓN 229 – 2º, 1º B • 08008 BARCELONA • TEL (34) 93 415 90 68 • FAX (34) 93 415 70 13



P. 1

* * * INFORME RESULTADO DE LA TRANSMISIÓN ( 12.FEB.2007 10:30 ) * * *

TTI   GONI AND CO 5631143

| FECHA | HORA | NOMBRE | MODO | HORA | PAG. | RESUL. | CAR. |
|-------|------|--------|------|------|------|--------|------|
| 12.FEB. | 10:29 | CDS G.C.ALGECIRAS | ES | 0'48" | P. 2 | OK | 465 |

S : RESOLUCIÓN ESTANDAR  D : RESOLUCIÓN DETALLE  F : RESOLUCIÓN FINA    E : ECM
M : MEMORIA              P : POLLING            L : TRANSM. RETARDADA   * : TRANSMI. POR LOTES

GOÑI
& CO.
ABOGADOS

Fecha: 16/02/07
Nº de Pags: 2

# FAX

**To:**  COMANDANCIA DE    **Att.:**  Comandante Martin de Oliva
ALGECIRAS

| | | | |
|---|---|---|---|
| **Fax:** | 956 63 33 71 | **Pages :** | 2 |
| **Tel:** | | **Date:** | 16 de febrero de 2007 |
| **Y/ REF:** | | **O/REF:** | |

El conte nido de este fax es, por su naturaleza, confidencial. Si por error llegara a
otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Comandante Oliva

**Re.: ODYSSEY EXPLORER. Zona de operaciones**

Siguiendo las instrucciones recibidas de la letrada Dña. Marie Rogers,   le adjuntamos carta
náutica donde aparece indicada la zona de operaciones.

Atentamente

P. o.

MARIE ROGERS
GOÑI & CO. ABOGADOS



P. 1

\* \* \* INFORME RESULTADO DE LA TRANSMISIÓN ( 16.FEB.2007 17:15 ) \* \* \*

TTI   GONI AND CO 5631143

| FECHA | HORA | NOMBRE | MODO | HORA | PAG. | RESUL. | CAR. |
|-------|------|--------|------|------|------|--------|------|
| 16.FEB. | 17:14 | COS G.C.ALGECIRAS | ES | 1'22" | P. 2 | OK | .63 |

| ┌─┐ | RESOLUCIÓN ESTANDAR | D : | RESOLUCIÓN DETALLE | F : | RESOLUCIÓN FINA | E : | ECM |
|---|---|---|---|---|---|---|---|
| └─┘ | MEMORIA | P : | POLLING | L : | TRANSM. RETARDADA | ✻ : | TRANSMI. POR LOTES |

GOÑI
& CO.
ABOGADOS

Fecha: 05/03/07
Nº de Pags: 4

# FAX

| To: | COMANDANCIA DE | Att.: | Comandante Martin de Oliva |
| | ALGECIRAS | | |
| Fax: | 956 63 33 71 | Pages : | 4 |
| Tel: | | Date: | 5 de marzo de 2007 |
| Y/ REF: | | O/REF: | |

El conte nido de este fax es, por su naturaleza, confidencial. Si por error llegara a otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Comandante Oliva

**Re.: ODYSSEY EXPLORER. Zona de operaciones**

Siguiendo las instrucciones recibidas de D. Jose Luis Goñi, le adjuntamos copia del aviso a los navegantes emitido por la empresa ODYSSEY MARINE EXPLORATION con su correspondiente traducción al español. Así mismo les adjuntamos la carta náutica donde aparece indicada la zona de operaciones.

Atentamente

P.O. Ma

JOSE LUIS GOÑI ETCHEVERS
GOÑI & CO. ABOGADOS

VELAZQUEZ, 24-3º dcha.• 28001 MADRID • TEL (34) 91 563 47 40 • FAX (34) 91 G3 11 43
joseluis.goni@goni-abogados.com
ROSELLÓN 229 – 2º, 1º B • 08008 BARCELONA • TEL (34) 93 415 90 68 • FAX (34) 93 415 70 13

From:     Roy Truman
          Director of Marine Operations
          Odyssey Marine Exploration
          royt@shipwreck.net
          Tel: 001 813 830 6584

To:       Coordinator NavArea 3

Subject:  **Request for Notice to Mariners (Restricted Maneuverability)**

Dear Coordinators,

The MV Odyssey Explorer will be conducting Acoustic Survey Operations in the area bounded by:

36 deg 07.6 min N   005 deg 05.4 min W
35 deg 56.0 min W   005 deg 02.0 min W
35 deg 56.4 min N   004 deg 32.6 min W
36 deg 08.1 min N   004 deg 32.8 min W

Between 5th March and 30th March 2007.  Due to the nature of survey procedures we request that vessels not close to less than 1 NM.  Survey lines will be generally in an East – West direction.

We request that you publish a Notice to Mariners for that time frame that includes the following information: (The vessel will broadcast this information continually via the AIS system, and will make periodic VHF broadcasts as warranted. Vessel description follows:)

MV Odyssey Explorer
Call Sign: C6OS4
Inmarsat Telephone: 00-871-763-837-144

De: Roy Truman
    Director de Operaciones Marinas
    Odyssey Marine Exploration
    royt@shipwreck.net

Para: Coordinador NavArea 3

Objeto: Solicitud de aviso a los navegantes (Maniobrabilidad restringida)

Estimados Coordinadores,

El buque M/V Odyssey Explorer se encontrará efectuando Operaciones acústicas de prospección en la zona delimitada por las siguientes coordenadas:

36 grados 07.6 minutos N  005 grados 05.4 minutos O
35 grados 56.0 minutos O  005 grados 02.0 minutos O
35 grados 56.4 minutos N  004 grados 32.6 minutos O
36 grados 08.1 minutos N  004 grados 32.8 minutos O

Entre el 5 y el 30 de marzo. Debido a la naturaleza de los procedimientos de prospección solicitamos que no se aproximen otros buques a menos de 1 MN. Las Líneas de prospección estarán en su mayoría en una dirección Este – Oeste.

Solicitamos que publiquen un aviso a los navegantes para esos días que incluya la siguiente información: (El buque emitirá esta información de forma continuada mediante sistema AIS y de forma periódica via VHF como está establecido. La descripción del buque es la siguiente:)

MV Odyssey Explorer
Señal de llamada: C6OS4
Teléfono Inmarsat: 00-871-763-836-144



P. 1

∗ ∗ ∗ INFORME RESULTADO DE LA TRANSMISIÓN ( 5.MAR.2007 18:41 ) ∗ ∗ ∗

TTI   GONI AND CO 5631143

| FECHA | HORA | NOMBRE | MODO | HORA | PÁG. | RESUL. | CAR. |
|-------|------|--------|------|------|------|--------|------|
| 5.MAR. | 18:40 | COS G.C.ALGECIRAS | ES | 1'15" | P. 4 | OK | 883 |

S : RESOLUCIÓN ESTANDAR  D : RESOLUCIÓN DETALLE  F : RESOLUCIÓN FINA  E : ECM
M : MEMORIA            P : POLLING         L : TRANSM. RETARDADA  ∗ : TRANSMI. POR LOTES

Rogers & Co.

# R&C

Abogados

C/ Don Ramón de la Cruz 102, 4º-B
28006        Madrid
Teléfono      91 401 60 91
Fax          91 401 70 62
24 horas      661 495 994
lag@rogersco.es
www.rogersco.es

## FAX

| Compañia: | GUARDIA CIVIL | Destinatario: | Comandante Sr. Martin de Oliva |
|---|---|---|---|
| Telf: | 956 587 610 | Fax: | 956 63 33 71 |
| Fecha: | Madrid, 14/05/07 | Páginas: | 1 + 2 |
| S / REF.: | | N / REF.: | |

El contenido de este fax es, por su naturaleza confidencial. Si por error llegara a otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Sr.,

**Ref.: BUQUE "OCEAN ALERT" – ODYSSEY MARINE EXPLORATION**

Siguiendo instrucciones de Marie Rogers, colaboradora de José Luis Goñi, y en representación de ODYSSEY MARINE EXPLORATION le remito la carta náutica y *"notice of mariners"* relativos a las próximas operaciones del buque "OCEAN ALERT".

Reciba un cordial saludo;

Luis Alberto García



RV Ocean Alert work area May 15 – May 30, 2007

36 deg 10.56 min N
004 deg 28.08 min W

35 deg 55.55 min N
004 deg 27.47 min W

36 deg 10.08 min N
005 deg 00.75 min W

35 deg 56.11 min N
005 deg 00.68 min W

From:        Roy Truman
             Director of Marine Operations
             Odyssey Marine Exploration
             royt@shipwreck.net
             Tel: 001-813-830-6584

To:          Coordinator NavArea3

Subject:     Request for Notice to Mariners

Dear Coordinators:

The RV Ocean Alert will be conducting Acoustic Survey Operations in the area bounded by:

36 deg 10.08 min N   005 deg 00.75 min W
36 deg 10.56 min N   004 deg 28.08 min W
35 deg 55.55 min N   004 deg 27.47 min W
35 deg 56.11 min N   005 deg 00.68 min W

Between 15 May 2007 and 30th May 2007. Due to the nature of survey procedures we request vessels not close to less than 1 NM. Survey lines will be generally in a east-west direction.

We request that you publish a Notice to Mariners for that time frame that includes the following information:

Name and Description of vessel:

RV Ocean Alert
LOA: 71.8 meters
BOA: 12.1 meters
Port of Registry: Panama
Flag: Panama
Call Sign: H03002
Inmarsat telephone: 00-870-764-660-514

Estimated dates and times of operation:

Start on or about 15th May 2007
End on or about 30th May 2007

**Rogers & Co.**

# R&C

Abogados

C/ Don Ramón de la Cruz 102, 4º-B
28006        Madrid
Teléfono    91 401 60 91
Fax         91 401 70 62
24 horas    661 495 994
leg@rogersco.es
www.rogersco.es

# FAX _____

| Compañía: | GUARDIA CIVIL | Destinatario: | Comandante Sr. Martín de Oliva |
|---|---|---|---|
| Telf: | 956 587 610 | Fax: | 956 63 33 71 |
| Fecha: | Madrid, 17/05/07 | Páginas: | 1 + 1 |
| S / REF.: | | N / REF.: | |

El contenido de este fax es, por su naturaleza confidencial. Si por error llegara a otra persona, rogamos se nos indique con la máxima urgencia.

Estimado Sr.,

Ref.: BUQUE "OCEAN ALERT" - ODYSSEY MARINE EXPLORATION - SUSSEX

Siguiendo instrucciones de Marie Rogers, colaboradora de José Luis Goñi, y en representación de ODYSSEY MARINE EXPLORATION le remito la carta náutica relativa a las próximas operaciones del buque "OCEAN ALERT".

Reciba un cordial saludo:

Luis Alberto García



RV Ocean Alert work area May 17 – May 30, 2007

36 deg 09 min N
004 deg 19 min W

35 deg 58.5 min N
004 deg 19 min W

36 deg 08 min N
005 deg 05 min W

35 deg 58 min N
005 deg 02.5 min W