IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | | |
|---|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | Case No: 8:07-CV-00614-SCB-MAP |
| | : | |
| THE UNIDENTIFIED, SHIPWRECKED VESSEL, | : | |
| if any, its apparel, tackle, appurtenances and | : | |
| cargo located within a five mile radius of the | : | |
| center point coordinates provided to the Court | : | |
| under seal, | : | |
| | : | |
| Defendant; | : | |
| *in rem* | : | |
| and | : | |
| | : | |
| The Kingdom of Spain, | : | |
| | : | |
| Claimant. | : | |
| _____/ | : | |

## AMENDED VERIFIED COMPLAINT IN ADMIRALTY

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by and through its undersigned counsel, and in response to the Opposed Motion of Claimant Kingdom of Spain ("Claimant") for a More Definite Statement hereby states that it does not object to Claimant's Motion and in response thereto files this, its Amended Complaint in rem against the Unidentified Shipwrecked Vessel, if any, its apparel, tackle, appurtenances, and cargo (hereinafter, "Defendant Site") located within a five mile radius of the center point coordinates which have been previously provided to the Court under seal (filed with the initial Complaint (Dkt. 1) filed on April 9, 2007) and the Kingdom of Spain,

1

Claimant, along with the attached documentation including the Sworn Statement of Gregory P. Stemm, Odyssey's Cofounder, and attachments thereto.

## I.

## THE PARTIES

1. Odyssey is a Nevada corporation with its principal place of business at 5215 West Laurel St., Tampa, Florida 33607. Odyssey is engaged in the business of deep ocean exploration and the recovery of shipwrecks around the world.

2. The Defendant Site is at a depth of approximately 1100 meters, beyond the territorial waters or contiguous zone of any sovereign nation, approximately 100 miles west of the Straits of Gibraltar in the Atlantic Ocean. The center point coordinates of the area in which the Defendant Site is located have been provided to the Court under seal. Evidence at the Defendant Site indicates that efforts, if any, by any previous owner to salvage the Defendant Site and/or its cargo have been long since abandoned.

3. Claimant herein, Spain, filed a Verified Claim on May 31, 2007, (Dkt. 13) stating in part that "the Kingdom of Spain has not abandoned its ownership rights and other rights in sunken vessels of the Kingdom of Spain, in vessels sunk while in the service of the Kingdom of Spain, and in cargo or other property of the Kingdom of Spain on or in sunken vessels." Spain's Verified Claim does not assert a basis for any claim specific to this Defendant Site.

II.

## JURISDICTION AND VENUE

4. This is a case of admiralty and maritime jurisdiction stating a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rules C and D as hereinafter more fully appears. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1333. In addition, the Court has in personam jurisdiction over the Plaintiff and constructive quasi in rem jurisdiction over the Defendant Site.

5. This Court has, or will have during the pendency of this action, jurisdiction over any potential claimant including Claimant, Spain, and/or competing salvors by virtue of its contacts to this forum; the nature of the Plaintiff's admiralty action; the relationship of the potential claimant and/or salvor to the Plaintiff, the submission of a claim (such as that of Spain) by any potential claimant in this forum; and/or under the principles of jurisdiction by necessity.

6. This Court's exercise of jurisdiction over Spain and other competing claimants and/or salvors is necessary to prevent irreparable injury to, or destruction of the Defendant Site; to allow the Plaintiff to continue to pursue its ongoing survey and recovery operations without interference; to bring the recovered artifacts within this District; and to prevent destruction of this Court's actual and potential jurisdiction.

7. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391 and Local Rule 3(A) and (B)(3). Plaintiff's principal place of business is located in this District, and the artifacts recovered

from the Defendant Site have been brought within the District and are undergoing appropriate conservation and preservation efforts.

III.

PROCEDURAL BACKGROUND

8. On April 9, 2007, Odyssey filed the initial Verified Complaint In Admiralty In Rem (Dkt. 1) against the Defendant in this case. Odyssey also turned over to the U.S. Marshal a small bronze block recovered from the Defendant Site for the symbolic arrest of the Defendant Site.

9. On April 13, 2007, this Court entered the Order Appointing Substitute Custodian (Dkt. 8) and found that Odyssey was duly qualified to serve as the Substitute Custodian of the bronze block and other artifacts recovered from the Defendant Site.

10. On April 12, 2007, (Dkt. 5) this Court issued an Order Directing the Issuance of a Warrant of Arrest. On April 13, 2007, the Clerk issued the Warrant of Arrest.

11. On May 31, 2007, Claimant, the Kingdom of Spain filed its Verified Claim (Dkt. 13). Spain's claim does not assert a basis for any claim specific to this Defendant Site.

12. On June 19, 2007, the Kingdom of Spain filed its Opposed Motion of Claimant of Spain for a More Definite Statement and Other Disclosure or, in the Alternative to Dismiss (Dkt. 16).

13. On June 26, 2007, Odyssey filed its Unopposed Motion for an Extension of Time in which to respond to the Motion (Dkt. 17), and on June 27, 2007, this

|   |   |
|---|---|
|   | Court granted the Motion (Dkt. 18) giving Odyssey until July 23, 2007, to file a response. |
| 14. | Odyssey filed a Motion for Extension on July 23, 2007 (Dkt. 19), and this Court entered an Endorsed Order (Dkt. 20) granting Odyssey's Motion and giving Odyssey until August 6, 2007, to file its response. |

### III.

### FACTS

15. The Defendant Site rests on the sea floor of the Atlantic Ocean at a depth of approximately 1100 meters, beyond the territorial waters or contiguous zone of any sovereign nation. The Defendant Site's position is located within a five mile radius of the center point coordinates which have been provided to the Court under seal. Upon information and belief, no other salvor is currently working on the Defendant Site. Odyssey does not have any specific knowledge of any archaeological or salvage operations other than those by Odyssey which have been conducted on the Defendant Site or in the general area, and to the best of Odyssey's knowledge, no salvor has sought to protect an interest in the Defendant Site through an arrest.

16. Odyssey first located the Defendant Site in March, 2007 using sophisticated sonar and magnetometer equipment. At the time of filing of the initial Complaint, Odyssey had not discovered evidence of a ship, but based upon its research, it believed that the vessel associated with the wreck site was a nineteenth century ship. At the time of filing of this Amended Complaint, Odyssey still has not recovered evidence which would confirm the identity of a

particular ship related to the artifacts recovered.

17. When Odyssey first filed the initial Complaint, it had surveyed the Defendant Site and had begun an archaeological pre-disturbance survey taking video and photographs in order to create a photomosaic image of the Defendant Site, using a surface-controlled remotely operated vehicle ("ROV"). Odyssey placed an array of 5 acoustic beacons on towers around the Defendant Site to provide navigational information and precise positioning information. Odyssey has since completed the survey and the photomosaic image of the Defendant Site.

18. Subsequent to the arrest, and this Court's order appointing Odyssey as Substitute Custodian, Odyssey found and safely transported artifacts to the Middle District of Florida from the Defendant Site which are undergoing conservation according to strict archaeological protocols. Odyssey has prepared a Preliminary Site Assessment (hereinafter, "PSA") regarding the Defendant Site and the artifacts recovered, and will present that to the Court under seal. Odyssey files herewith its Motion for Protective Order which references the PSA and the need for assurance prior to filing that the PSA will be kept confidential. Nothing recovered to date from the subject Defendant Site confirms an interest in the artifacts of any third party including the Kingdom of Spain. Odyssey is prepared to release information from the PSA as directed by the Court to Claimant, Spain, however, given that Odyssey has found no evidence which would confirm the identity of a ship or an interest of Spain or any other third party in this particular site, Odyssey submits that there is nothing which would require that the Kingdom of Spain or any other third party be given any more specific information other

than what is contained in this Amended Complaint and the Exhibits which are part of the public record. When and if Odyssey discovers evidence which confirms that the wreck is that of a particular ship, Odyssey will properly give notice to any third party with a potential interest.

19. Odyssey's survey and recovery operation has been, and will continue to be, conducted in accordance with all appropriate archaeological protocols and under the direction of an experienced nautical archaeologist.

20. Odyssey, its agents and associates, have invested substantial time, money and effort in locating, surveying and photographing the Defendant Site, and in planning the archaeological recovery of the artifacts from the Defendant Site.

21. Odyssey, its agents and associates, have been actively, voluntarily and successfully engaged in the process of reducing artifacts from the Defendant Site to the Plaintiff's exclusive custody, possession, dominion and control, as circumstances permit, and Odyssey has the present ability and intention to continue to do so during the pendency of this action.

22. Odyssey's recovery of artifacts from this and other sites has been the subject of intense international media attention especially in Spain. Many Spanish media reports have been filled with inaccuracies including false claims that artifacts were recovered illegally from Spanish territorial waters. As a result of the false reports, and despite Odyssey's continued assurance that no artifacts have been recovered anywhere near Spanish territorial waters, Odyssey became the subject of a criminal investigation in Spain. In fact, Odyssey became aware through the Spanish press that Spanish authorities would intercept and inspect

Odyssey's vessels (The *Ocean Alert* and the *Odyssey Explorer*) if they attempted to depart Gibraltar where they were docked. Odyssey's attorneys were denied access to the order, however, and were told that the order was "secret." Odyssey's attempts to appear in its defense were unsuccessful. Thus, Odyssey prepared a Sworn Statement of Gregory P. Stemm, Odyssey's Cofounder, explaining Odyssey's actions and the facts surrounding the arrest, the recovery, and the subsequent claims and baseless detention of Odyssey's ships by Spain. (A copy of the Sworn Statement including all Exhibits is attached hereto).

23.   Despite the fact that Odyssey provided the Sworn Statement and further information regarding its recovery to Spanish officials, and despite the assurance of the Spanish criminal judge (Judge Juan Jose Navas Blanquez sitting in substitution of the Judge for the Number Three First Instance and Preliminary Investigating Court of La Linea de la Concepcion and district – a different judge from the one who signed the original "secret order"), that Odyssey's vessels would not be boarded without the consent of the Master or forcibly taken to a Spanish port, on July 12, 2007, while Odyssey was moving its vessel the *Ocean Alert* from Gibraltar, and while the vessel was in international waters, Spain boarded the vessel under protest from the Master and illegally seized the vessel forcing it into the Spanish port of Algeciras. Having alerted the Spanish media to the boarding and seizure, Spanish authorities paraded the *Ocean Alert* along the coastline for photograph and video opportunities. Additionally, despite her protests, officials seized the personal computer of one of Odyssey's attorneys, Marie Rogers, and illegally copied all attorney/client privileged information

regarding Odyssey and other clients. As of the date of this Amended Complaint, the computer has been returned without the hard drive. The original hard drive and copy are retained in the custody of the court. A formal complaint and request for the return of the hard drive and all copies taken has been made to the court and is currently pending decision by the Judge as to the legitimacy of the seizure of the laptop.

Once in Algeciras, Odyssey's crew and attorneys were forced by the Spanish officials to sit in the scalding sun for approximately seven hours without food or water or use of the restroom. Their passports were taken (but returned later that day) as were all of their electronic equipment (of which the hard drives have been removed and only the empty laptops returned). The *Odyssey Explorer* remains blockaded in Gibraltar by virtue of the criminal order and threatened seizure by Spain. Odyssey's rights granted by this Court to continue its recovery have been restricted by Spain, and Odyssey's damages as a result of Spain's conduct are extensive.

IV.

PLAINTIFF'S CLAIMS

COUNT I

POSSESSORY AND OWNERSHIP CLAIM
PURSUANT TO THE LAW OF FINDS

24. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 23.

25. This count arises under Supplemental Admiralty Rule D and the general maritime law.

26. The Plaintiff is, by virtue of its exclusive possession, dominion and control of the Defendant Site, in possession of the artifacts recovered from the Defendant Site, and has taken such actions as are necessary to constitute continued possession, dominion and control of the Defendant Site and the recovered artifacts.

27. As there is no extant owner of the Defendant Site or its artifacts, Odyssey is entitled to an adjudication of title and ownership in the Defendant Site, and her artifacts, and the right to continue recovery of the Defendant Site and her artifacts without the interference of any other salvor, claimant, agency, department or instrumentality of any government, domestic or foreign.

COUNT II

SALVAGE AWARD CLAIM
PURSUANT TO THE LAW OF SALVAGE

28. Plaintiff incorporates by reference, as though fully set forth herein, the allegations, set forth above in paragraphs 1 through 27.

29. This count arises under Supplemental Admiralty Rule C and the general maritime law as salvage services constitute a preferred maritime lien.

30. The Defendant Site and her artifacts are subject to maritime peril and are in an utterly helpless condition from which they could not be rescued without the voluntary and successful services of Odyssey, its agents and associates.

31. Plaintiff is under no legal obligation or official duty to render salvage services to the Defendant Site.

32. Plaintiff's voluntary services have been and will continue to be successful in rescuing and/or helping to rescue artifacts from the Defendant Site in order to

investigate and research the Defendant Site, to preserve and display artifacts of historical and archaeological significance, and to return recovered portions to the stream of commerce from which they were lost.

33. Plaintiff, by virtue of services performed, the private risk capital expended, and the time spent and danger incurred in finding and recovering artifacts from the Defendant Site, is entitled to a liberal salvage award for such services.

## COUNT III

### CLAIM FOR INJUNCTIVE RELIEF TO PROTECT THE RECOVERY OPERATION

34. Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in Paragraphs 1 through 33.

35. The rights and efforts of the Plaintiff, the economic value and integrity of the artifacts sought, the successful recovery of lost and abandoned property at sea, and the safety of life and limb mandate that Plaintiff be protected by the Court in maintaining exclusive dominion and control of its recovery activities concerning the Defendant Site without the interference of third parties for as long as Plaintiff intends to conduct operations at the Defendant Site.

36. Allowing interference with the Plaintiff's ongoing operations would substantially and irreparably injure the Plaintiff, would be inequitable, would be harmful to the public good, would constitute a significant hazard to safe and successful salvage operations, and would be contrary to a balancing of the respective interests of the parties and the comparative hardships borne.

37. In order to adequately protect the security and the archaeological integrity

of the Plaintiff's recovery operations, this Court should enter a preliminary injunction prohibiting any rival salvors or entity from conducting search and/or recovery operations, or conducting activities that would disturb the Defendant Site in any manner, or that would interfere with the Plaintiff's rights to continue its recovery of the Defendant Site.

COUNT IV

<u>DECLARATORY JUDGMENT</u>

38. Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in Paragraphs 1 through 37.

39. This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201(a).

40. Defendant Site is located on the submerged lands located in the Atlantic Ocean within a five mile radius of the center point coordinates provided to the Court under seal. This is in an area located beyond the territorial waters or contiguous zone of any sovereign nation.

41. No government, individual and/or corporation has the authority to interfere with Odyssey's exploration and/or recovery of the Defendant Site, or to grant, condition or deny the right of Odyssey to do so within the waters of the Atlantic Ocean, beyond the territorial sea or contiguous zone of any sovereign nation; and the Defendant Site is subject to the admiralty laws of abandonment and the law of finds, or the maritime law of salvage.

## COUNT V

### CLAIM OF EQUITABLE RELIEF FOR
### *QUANTUM MERUIT*, UNJUST ENRICHMENT AND ALLIED THEORIES

42.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations set forth in paragraphs 1 through 41.

43.     This cause of action is pled in the alterative to Count II. This cause of action seeks equitable relief, which is within the grounds of relief available to a federal district court sitting in admiralty. This count is pendent with the remaining causes of action. To the extent that a separate basis of jurisdiction is required to sustain this count, Plaintiff alleges a diversity of citizenship of the parties and that the jurisdictional amount of at least $75,000, as per 28 U.S.C. § 1332(a), has been satisfied here. Additionally, insofar as a foreign sovereign may properly appear in this admiralty action as a claimant, as per 28 U.S.C. §§ 1605, 1607, this Court would have jurisdiction to adjudicate this count.

44.     In the event a claimant successfully asserts ownership to all or part of the Defendant Site, cargo, or effects, and also successfully disclaims or refuses Plaintiff's salvage rights for the relevant part of the Defendant Site, cargo, or effects, Plaintiff will have incurred substantial costs and expense for the recovery, stabilization, conservation, curation, identification, and protection of the vessel, if any, cargo, and effects, all of which costs and expenses were incurred reasonably and in good faith by Plaintiff.

45.     Recovery of the Defendant Site and any artifacts therefrom as well as evidence which would support any claimant's interest in the Defendant Site would necessarily stem from Plaintiff's efforts in recovering and identifying the

        Defendant Site and artifacts. But for the Plaintiff's efforts and the costs and expenses associated therewith, there would be no recovery and no basis for proof of an interest.

46.     These costs and expenses, both direct and indirect, as incurred by Plaintiff should be reimbursed and compensated in full by a successful claimant in order to avoid an unjust enrichment on the part of that claimant, and also on grounds of quantum meruit inuring in favor of the Plaintiff. Plaintiff would also be entitled to equitable relief based on other equitable theories.

47.     This Court should determine the reasonable costs and expenses incurred by Plaintiff, both direct and indirect, as attributable to the recovery, stabilization, conservation, curation, identification, and protection of the vessel, if any, cargo, and effects, on behalf of any successful claimant within the purview of this count. This Court should grant an equitable, *in specie* award to Plaintiff, compensating and reimbursing it for its reasonable costs and expenses, to be charged against any property which a successful claimant might receive by order of this Court.

COUNT VI

CLAIM FOR DAMAGES SPECIFIC TO CLAIMANT, SPAIN

48.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations set forth in paragraphs 1 through 47.

49.     In addition to the equitable relief requested in Count V, and irrespective of whether Spain ultimately prevails in its claim against the Defendant Site, Plaintiff requests this court grant affirmative relief in its favor against Claimant, Spain based upon its tortious conduct more specifically described in paragraph 23 and

its active interference with Odyssey's possessor rights.

50. Based upon the arrest and this Court's order, appointing Odyssey Substitute Custodian, Spain has a duty to refrain from interfering with Odyssey's activities related to the Defendant Site.

51. Spain has clearly interfered with Odyssey's rights and has caused Odyssey extensive damages including but not limited to:

(a) costs associated with the forced detention and blockade of Odyssey's vessels (the *Ocean Alert* and the *Odyssey Explorer*) in Gibraltar, including but not limited to actual costs and lost opportunity;

(b) costs and expenses related to Odyssey's defense against the baseless criminal order issued in Spain;

(c) costs related to the illegal boarding and seizure of the *Ocean Alert* including the seizure of personal items from Odyssey's crew and Odyssey's attorney;

(d) damages related to any unlawful use or publication of privileged information seized by Spain;

(e) damages as a result of the unlawful, unfair, and inhumane treatment of Odyssey's crew and attorneys; and

(f) damages for loss of reputation caused by Spain's activities and statements made in public by Spanish authorities including the Minister of Culture against Odyssey without any factual or legal basis.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a) that a Declaratory Judgment issue that the Defendant Site is

subject to the admiralty laws of abandonment and the law of finds, or the maritime law of salvage.

(b)  that a Declaratory Judgment issue that no government has the jurisdiction or authority to interfere with exploration for and/or recovery of the Defendant Site, or to grant, condition or deny the right of Odyssey to do so within the waters of the Atlantic Ocean, beyond the territorial sea or contiguous zone of any sovereign nation.

(c)  that Odyssey be adjudged the true, sole and exclusive owner of the Defendant Site and any items recovered therefrom;

(d)  in the alternative, that should Spain or any claimant other than Odyssey be adjudged the owner of the Defendant Site and/or a Shipwrecked Vessel which may be found to be related to the Defendant Site, or any items recovered therefrom, that Odyssey be awarded a liberal salvage award, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage;

(e)  that Odyssey be adjudged as having the continued sole and exclusive right to conduct recovery operations on the Defendant Site, to preserve any artifacts recovered from the Defendant Site as either salvor-in-possession or finder-in-possession, without the interference of other third parties, and that any and all such interference be temporarily and permanently enjoined; and

(f)  that any third party, including Spain, asserting an interest or filing a Verified Claim in response to this Amended Complaint give strict proof of its interest and show cause as to why the artifacts recovered from the Defendant Site by Odyssey and its associates should not be:

     (1.) delivered to Odyssey as the sole and exclusive owner of said artifacts; or

     (2.) alternatively, sold or appropriately transferred in satisfaction of any judgment in favor of Odyssey for a salvage award; and

  (g) that in the event a claimant successfully asserts ownership to all or part of the Defendant Site and related Unidentified Shipwreck, if any, its cargo, or effects, and also successfully disclaims or refuses Plaintiff's salvage rights for the relevant part of the Defendant Site, cargo, or effects, Plaintiff should receive an equitable, *in specie* award to fully reimburse and compensate it for all costs and expenses, both direct and indirect, for the recovery, stabilization, conservation, curation, and protection of the Defendant Site.

  (h) that damages be awarded in favor of Odyssey, against Claimant, Spain.

  (i) that Odyssey may have such other and further relief as the justice of this cause may require.

Dated: <u>August 6, 2007</u>

         <u>s/ Allen von Spiegelfeld</u>
         Allen von Spiegelfeld – FBN 256803
         avonsp@fowlerwhite.com
         Eric C. Thiel – FBN 016267
         ethiel@fowlerwhite.com
         FOWLER WHITE BOGGS BANKER P.A.
         P.O. Box 1438
         Tampa, Florida 33601
         (813) 228-7411
         Facsimile: (813) 229-8313
         Attorneys for Plaintiff

**VERIFICATION**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

      Before me, the undersigned authority, personally appeared this day Melinda MacConnel, General Counsel, Odyssey Marine Exploration, Inc., who has produced _____N/A_____ as identification or is personally known to me, and who was duly sworn and says that she has read the foregoing Amended Complaint and is familiar with its contents which are true to the best of her information and belief.

_____ (Signature)
___Melinda J. MacConnel___ (Printed Name)
___General Counsel___ (Title)

      SWORN TO AND SUBSCRIBED before me this ___6TH___ day of August, 2007.

_____ (Signature)
Notary Public, State of Florida
At Large

BETSY W MARRERO
Comm# DD0374815
Expires 11/28/2008
Bonded thru (800)432-4254
Florida Notary Assn., Inc

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004, Attorneys for Claimant, Kingdom of Spain.

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff