IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | | |
|---|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | Case No: 8:07-CV-00614-SCB-MAP |
| | : | |
| THE UNIDENTIFIED, SHIPWRECKED VESSEL, | : | |
| if any, its apparel, tackle, appurtenances and | : | |
| cargo located within a five mile radius of the | : | |
| center point coordinates provided to the Court | : | |
| under seal, | : | |
| | : | |
| Defendant; | : | |
| *in rem* | : | |
| and | : | |
| | : | |
| The Kingdom of Spain, | : | |
| | : | |
| Claimant. | : | |
| _____ / | : | |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**
**REGARDING PRELIMINARY SITE ASSESSMENT**

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, hereby moves for entry of a Protective Order granting Odyssey's request that (1) the Court hold the Preliminary Site Assessment (hereinafter, "PSA") relative to the Defendant Site under seal; (2) information contained within the PSA which is relevant to the claim of Claimant Spain and which, if released, will not jeopardize the security of the Defendant Site, be released to Claimant Spain and counsel for Spain once Claimant Spain designates a particular authority within Spain to take possession and control over the information and that authority and counsel

1

for Spain both sign a Confidentiality Agreement not to release the information to any other person or authority, even authorities within the Spanish government, without leave of Court.

The grounds supporting this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

Respectfully submitted,

Dated: <u>August 6, 2007</u>

<u>s/ Allen von Spiegelfeld</u>
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | | |
|---|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : Case No: 8:07-CV-00614-SCB-MAP | |
| | : | |
| THE UNIDENTIFIED, SHIPWRECKED VESSEL, | : | |
| if any, its apparel, tackle, appurtenances and | : | |
| cargo located within a five mile radius of the | : | |
| center point coordinates provided to the Court | : | |
| under seal, | : | |
| | : | |
| Defendant; | : | |
| *in rem* | : | |
| and | : | |
| | : | |
| The Kingdom of Spain, | : | |
| | : | |
| Claimant. | : | |
| _____ / | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PRELIMINARY SITE ASSESSMENT

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, respectfully submits this memorandum of law in support of its Motion for Entry of a Protective Order Regarding Preliminary Site Assessment ("PSA").

I.     BACKGROUND

   A.   The Parties

Odyssey is a Nevada corporation with its principal place of business at 5215 West Laurel St., Tampa, Florida 33607. Odyssey is engaged in the business of deep ocean exploration

and the recovery of shipwrecks around the world.

The Defendant Site is at a depth of approximately 1100 meters, beyond the territorial waters or contiguous zone of any sovereign nation, in the Atlantic Ocean, approximately 100 miles west of the Straits of Gibraltar. The center point coordinates of the area in which the Defendant Site is located have been provided to the Court under seal. Evidence at the Defendant Site indicates that efforts, if any, by any previous owner to salvage the Defendant Site and/or its cargo have been long since abandoned.

Claimant herein, Spain, filed a Verified Claim on May 31, 2007, (Dkt. 13) stating in part that "the Kingdom of Spain has not abandoned its ownership rights and other rights in sunken vessels of the Kingdom of Spain, in vessels sunk while in the service of the Kingdom of Spain, and in cargo or other property of the Kingdom of Spain on or in sunken vessels." Claimant, Spain's Verified Claim does not assert a basis for any claim specific to this Defendant Site.

B.   04History

On April 9, 2007, Odyssey filed the initial Verified Complaint In Admiralty In Rem (Dkt. 1) against the Defendant in this case. Odyssey also turned over to the U.S. Marshal a small bronze block recovered from the Defendant Site for the symbolic arrest of the Defendant Site.

On April 13, 2007, this Court entered the Order Appointing Substitute Custodian (Dkt. 8) and found that Odyssey was duly qualified to serve as the Substitute Custodian of the bronze block and other artifacts recovered from the Defendant Site.

On April 12, 2007, this Court issued an Order Directing the Issuance of a Warrant of Arrest (Dkt. 5).

On April 13, 2007, the Clerk issued the Warrant of Arrest.

On May 31, 2007, Claimant, the Kingdom of Spain filed its Verified Claim (Dkt. 13). Spain's claim does not assert a basis for any claim specific to this Defendant Site.

Along with this Motion, Odyssey filed its Amended Complaint which referenced this Motion and the subject PSA.

Odyssey filed a Motion for Extension on July 23, 2007, (Dkt. 19) and this Court entered an Endorsed Order (Dkt. 20) granting Odyssey's Motion and giving Odyssey until August 6, 2007 to file its response.

C.  The Wreck Site

The Defendant Site rests on the sea floor at a depth of approximately 1100 meters, beyond the territorial waters or contiguous zone of any sovereign nation, in the Atlantic Ocean, approximately 100 miles west of the Straits of Gibraltar. The Defendant Site's position is located within a five mile radius of the center point coordinates which have been provided to the Court under seal. Odyssey first located the Defendant Site in March 2007, using sophisticated sonar and magnetometer equipment. At the time of filing of the initial Complaint, Odyssey had not discovered evidence of a ship, but based upon its research, it believed that the vessel associated with the wreck site was a nineteenth century ship. Odyssey surveyed the Defendant Site and began an archaeological pre-disturbance survey taking video and photographs in order to create a photomosaic image of the Defendant Site, using a surface-controlled remotely operated vehicle ("ROV"). Odyssey placed an array of 5 acoustic beacons on towers around the Defendant Site to provide navigational information and precise positioning information. At the time of filing of the Amended Complaint, Odyssey still had not recovered evidence which would confirm that the wreck is that of a particular ship.

D. <u>The Preliminary Site Assessment ("PSA")</u>

Subsequent to the arrest and the Court appointing Odyssey as Substitute Custodian, Odyssey recovered and safely transported several artifacts to the Middle District of Florida from the Defendant Site which are undergoing conservation according to strict archaeological protocols. Odyssey has prepared a Preliminary Site Assessment (hereinafter, "PSA") regarding the Defendant Site and the artifacts recovered and will present that to the Court under seal. It is Odyssey's desire that the Court has a full and complete understanding of the wreck site, the artifacts recovered to date, and the efforts and expense incurred by Odyssey to recover and conserve the artifacts in an archaeologically sound manner.

Prior to filing the PSA, however, Odyssey hereby requests from the Court a Protective Order stating that (1) the Court will hold the PSA relative to the Defendant Site under seal; (2) information contained within the PSA which is relevant to the claim of Spain and which, if released, will not jeopardize the security of the Defendant Site, be released to Spain and to Spain's counsel only after Spain designates a particular authority within the country to take possession and control over the information and that both that authority and counsel for Spain sign a Confidentiality Agreement not to release the information to any other person or authority, even authorities within the Spanish government, without leave of Court.

E. <u>Spain's Appalling Behavior</u>

The factual basis for Odyssey's request for a Protective Order include the sensitive and valuable nature of the information contained within the PSA and the actions to date of Claimant, Spain against Odyssey in its effort to force Odyssey to reveal the location of artifacts it has recovered. Odyssey is prepared to release certain information from the PSA as directed by the Court to Claimant, Spain, however, Odyssey submits that given the information

garnered from the items recovered thus far, there is nothing which would require that the Kingdom of Spain or any other third party be given any more specific information other than what is contained in this Amended Complaint and the Exhibits which are part of the public record. These concerns are elaborated in the attached Affidavit of Gregory P. Stemm, Odyssey Cofounder.

    Odyssey's recovery of artifacts from this and other sites has been the subject of intense international media attention, especially in Spain. Many Spanish media reports have been filled with inaccuracies including false claims that artifacts were recovered illegally from Spanish territorial waters. As a result of the false reports, and despite Odyssey's continued assurance that no artifacts have been recovered anywhere near Spanish territorial waters, Odyssey became the subject of a criminal investigation in Spain. In fact, Odyssey became aware through the Spanish press that Spanish authorities would inspect Odyssey's vessels (the *Ocean Alert* and the *Odyssey Explorer*) if they attempted to depart Gibraltar where they were docked. Odyssey's attorneys were denied access to the order, however, and were told that the order was "secret." Odyssey's attempts to appear in its defense were unsuccessful. Thus, Odyssey prepared a Sworn Statement of Gregory P. Stemm, Odyssey's Cofounder, explaining Odyssey's actions and the facts surrounding the arrest, the recovery, and the subsequent claims and baseless detention of Odyssey's ships by Spain. (A copy of the Sworn Statement including all Exhibits was attached to the Amended Complaint in this case).

    Despite the fact that Odyssey provided the Sworn Statement and further information regarding its recovery to Spanish officials, and despite the assurance of the Spanish criminal judge (Judge Juan Jose Navas Blanquez sitting in substitution of the Judge for the Number Three First Instance and Preliminary Investigating Court of La Linea de la Concepcion

and district – a different judge from the one who signed the original "secret order"), that Odyssey's vessels would not be boarded without the consent of the Master or forcibly taken to a Spanish port, on July 12, 2007, while Odyssey was moving its vessel the *Ocean Alert* from Gibraltar, and while the vessel was in international waters, Spain boarded the vessel under protest from the Master and illegally seized the vessel forcing it into the Spanish port of Algeciras. Having alerted the Spanish media to the boarding and seizure, Spanish authorities paraded the *Ocean Alert* along the coastline for photograph and video opportunities. Additionally, despite her protests, officials seized the personal computer of one of Odyssey's attorneys, Marie Rogers, and illegally copied all attorney/client privileged information regarding Odyssey and other clients. As of the date of this Amended Complaint, the computer has been returned without the hard drive. The original hard drive and copy are retained in the custody of the court. A formal complaint and request for the return of the hard drive and all copies taken has been made to the court and is currently pending decision by the Judge as to the legitimacy of the seizure of the laptop.

   Once in Algeciras, Odyssey's crew and attorneys were forced by the Spanish officials to sit in the scalding sun for approximately seven hours without food or water or use of the restroom. Their passports were taken (but returned later that day) as were all of their electronic equipment (of which the hard drives have been removed and only the empty laptops returned). The *Odyssey Explorer* remains blockaded in Gibraltar by virtue of the criminal order and threatened seizure by Spain. Odyssey's rights granted by this Court to continue its recovery have been restricted by Spain, and Odyssey's damages as a result of Spain's conduct are extensive.

Given the conduct of Spain to date, Odyssey has every reason to believe that Spain will use any information contained in the PSA as a clue to the location of this wreck site. Interestingly, counsel for Spain, Jim Goold, is the Chairman of RPM Nautical Foundation, a potential competitor in the provision of underwater archaeological services to Spain and other countries. Clearly, Odyssey has an interest in assuring the confidentiality of any information from the PSA which will be released into his possession and control. Therefore, Odyssey requests that the Court not release any of the information from the PSA unless and until a confidentiality agreement is in effect which designates a particular authority within Spain to take possession and control over the information and both that authority and counsel for Spain sign a Confidentiality Agreement not to release the information to any other person or authority, even authorities within the Spanish government, without leave of Court.

II.     LEGAL ANALYSIS

The Courts have long understood that, in salvage cases, especially those involving sunken wrecks, secrecy is often of the utmost importance. See *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing*, 546 F.Supp. 919 (S.D. Fla. 1981); *Columbus America Discovery Group v. Atlantic Mutual Insurance Company, et. al.*, 203 F.3d 291, 303 (4th Cir. 2000). Not only is secrecy of the location important, but secrecy as to the amount of property obtained and the wreck's provenance data[1] is also important. This matter is no different. This Court should exercise its discretion and grant a protective order guaranteeing the PSA concerning this unidentified shipwreck remain protected.

---

[1] "Provenance Data" is defined as "valuable historical and archeological information concerning the exact location, depth and proximity of each item found with respect to other items." *Cobb Coin Co., Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 549 F.Supp. 540, 558 (S.D. Fla. 1982). The Court further noted that "the provenance data is important not only to historians, archeologists and anthropologists, but it documents the authenticity and thus enhances the resale value of otherwise precious artifacts." Id. at 559.

Upon motion by a party, the Court may protect the disclosure or public availability of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(7). To determine whether the moving party has shown good cause, this Court is required to balance the interests of those requesting the order with other competing rights to the disclosure of the material. See *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989); *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir.1985); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001).

This Court has already recognized the unique nature of this maritime salvage action and granted Plaintiff's motion for protective order in sealing the exact location of the current unidentified shipwreck (Dkt. 2, 4). In addition to the good cause shown for sealing the coordinates of the wreck, good cause also exists to seal the PSA and place limitations on any disclosure of information contained in the PSA to Claimant Spain.

As detailed above and in the Affidavit of Gregory P. Stemm, the preparation of the PSA in this matter required the expenditure of vast amounts of time and expertise. (Affidavit, Paragraph 5). Indeed, the research and expertise used to create the PSA is an essential part of the process of identifying and salvaging a historical shipwreck, and adds to the value of any recovered items. (Affidavit, Paragraph 6). The present wreck location is an active historical site and the protection of the wreck's location for both archeological and salvage purposes is essential. The information contained in the PSA, if released, would greatly prejudice the security of the Defendant Site and allow competing salvors to gain enough information to attempt unauthorized salvage at the wreck site (Affidavit, Paragraphs 7, 15-17).

Plaintiff is willing to provide certain information from the PSA to Spain that is relevant to its claim. Plaintiff's recent recovery has set off a media circus in Spain, leading to a highly charged political environment with several competing internal individuals and authorities in the Spanish Government apparently competing over jurisdiction and control over the unidentified wreck. The Spanish Minister of Culture, the autonomous State of Andalucia, and Spain may all have competing claims for the shipwreck. Accordingly, in order to protect the security of the Defendant Site while providing information to the Claimant in this matter, this Court should require that any information from the PSA be released to Spain only if a confidentiality agreement is signed preventing the dissemination of the disclosed PSA excerpts to persons other than the intended party.

For the foregoing reasons, Plaintiff submits that it has demonstrated that good cause exists to grant Odyssey's Motion for Protective Order. Furthermore, Plaintiff submits that its interests in keeping the PSA confidential greatly outweigh any competing interest in the unlimited disclosure of the data. Thus, Odyssey's Motion for Protective Order should be granted.

Respectfully submitted,

Dated: August 6, 2007

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004, Attorneys for Claimant, Kingdom of Spain.

                                                s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff