IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | | |
|---|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | Case No: 8:07-CV-00614-SCB-MAP |
| | : | |
| THE UNIDENTIFIED, SHIPWRECKED VESSEL, | : | |
| if any, its apparel, tackle, appurtenances and | | |
| cargo located within a five mile radius of the | : | |
| center point coordinates provided to the Court | : | |
| under seal, | | |
| | : | |
| Defendant; | : | |
| *in rem* | | |
| | : | |
| and | | |
| | : | |
| The Kingdom of Spain, | | |
| | : | |
| Claimant. | : | |
| _____/ | : | |

## PLAINTIFF'S MOTION FOR ORDER
## GRANTING PRELIMINARY INJUNCTIVE RELIEF

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, hereby moves for entry of an Order granting a preliminary injunction temporarily enjoining and prohibiting any third parties from conducting search and/or recovery operations or conducting activities that would disturb the Defendant Site in any manner or that would interfere with Odyssey's exclusive rights to recover the Defendant Unidentified Shipwrecked Vessel if any, its apparel, tackle, appurtenances and cargo located within a five mile radius of the center

1

point coordinates of which have been provided to the Court under seal (hereinafter referred to as the "Defendant Site").  Plaintiff warrants to the Court that it shall monitor evidence of activity related to the Defendant Site and give notice of the Order to any third party coming within the area of the Defendant Site.

The grounds supporting this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

Respectfully submitted,

Dated: August 6, 2007

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | |
|---|---|
| ODYSSEY MARINE EXPLORATION, INC. : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : Case No: 8:07-CV-00614-SCB-MAP <br> : <br> THE UNIDENTIFIED, SHIPWRECKED VESSEL,: <br> if any, its apparel, tackle, appurtenances and : <br> cargo located within a five mile radius of the : <br> center point coordinates provided to the Court : <br> under seal, : <br> : <br> Defendant; : <br> *in rem* : <br> and : <br> : <br> The Kingdom of Spain, : <br> : <br> Claimant. : <br> _____/ : | CIVIL ACTION |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ORDER GRANTING PRELIMINARY INJUNCTIVE RELIEF

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion for entry of an Order granting a preliminary injunction temporarily enjoining and prohibiting any third parties from conducting search and/or recovery operations or conducting activities that would disturb the Defendant Site in any manner or that would interfere with Odyssey's exclusive rights to recover the Defendant Unidentified Shipwrecked Vessel, if any, its apparel, tackle, appurtenances and cargo located with a

3

five mile radius of the center point coordinates of which have been provided to the Court under seal (hereinafter referred to as the "Defendant Site").

I. BACKGROUND

The Defendant Site rests on the sea floor in the Atlantic Ocean at a depth of approximately 1100 meters, beyond the territorial waters or contiguous zone of any sovereign nation. The Defendant Site's position is located within a five mile radius of the center point coordinates which have been provided to the Court under seal. Upon information and belief, no other salvor is currently working on the Defendant Site. Odyssey does not have any specific knowledge of any archaeological or salvage operations other than those by Odyssey which have been conducted on the Defendant Site or in the general area, and to the best of Odyssey's knowledge, no salvor has sought to protect an interest in the Defendant Site through an arrest.

Odyssey first located the Defendant Site in March, 2007 using sophisticated sonar and magnetometer equipment. At the time of filing of the initial Complaint, Odyssey had not discovered evidence of a ship, but based upon its research, it believed that the vessel associated with the wreck site was a nineteenth century ship. At the time of filing of this Amended Complaint, Odyssey still has not recovered evidence which would confirm the existence of a particular ship, or in fact, any ship at all.

When Odyssey first filed the initial Complaint, it had surveyed the Defendant Site and had begun an archaeological pre-disturbance survey taking video and photographs in order to create a photomosaic image of the Defendant Site, using a surface-controlled remotely operated vehicle ("ROV"). Odyssey placed an array of 5 acoustic beacons on towers around the Defendant Site to provide navigational

information and precise positioning information. Odyssey has since completed the survey and the photomosaic image of the Defendant Site.

Odyssey subsequently recovered additional artifacts from the Defendant Site which are undergoing conservation according to strict archaeological protocols. Odyssey has prepared a Preliminary Site Assessment (hereinafter, "PSA") regarding the Defendant Site and the artifacts recovered and will present that to the Court under seal. Odyssey has filed a Motion for Protective Order which references the PSA and the need for assurance that the PSA will be kept confidential prior to filing. Nothing recovered to date from the subject Defendant Site confirms an interest in the artifacts of any third party including the Kingdom of Spain. Odyssey is prepared to release certain information from the PSA as directed by the Court to Claimant, Spain. When and if Odyssey discovers evidence which confirms that the Defendant Site is that of a particular shipwreck, Odyssey will properly give notice to any third party with a potential interest.

Odyssey's survey and recovery operation has been, and will continue to be, conducted in accordance with all appropriate archaeological protocols and under the direction of an experienced nautical archaeologist.

Odyssey, its agents and associates, have invested substantial time, money and effort in locating, surveying and photographing the Defendant Site, and in planning the archaeological recovery of the artifacts from the Defendant Site.

Odyssey, its agents and associates, have been actively, voluntarily and successfully engaged in the process of reducing artifacts from the Defendant Site to the Plaintiff's exclusive custody, possession, dominion and control, as circumstances permit,

and Odyssey has the present ability and intention to continue to do so during the pendency of this action.

Odyssey's recovery of artifacts from this and other sites has been the subject of intense international media attention especially in Spain. Many Spanish media reports have been filled with inaccuracies including false claims that artifacts were recovered illegally from Spanish territorial waters. As a result of the false reports, and despite Odyssey's continued assurance that no artifacts have been recovered anywhere near Spanish territorial waters, Odyssey became the subject of a criminal investigation in Spain. In fact, Odyssey became aware through the Spanish press that Spanish authorities would intercept and inspect Odyssey's vessels (the *Ocean Alert* and the *Odyssey Explorer*) if they attempted to depart Gibraltar where they were docked. Odyssey's attorneys were denied access to the order, however, and were told that the order was "secret." Odyssey's attempts to appear in its defense were unsuccessful. Thus, Odyssey prepared a Sworn Statement of Gregory P. Stemm, Odyssey's Cofounder, explaining Odyssey's actions and the facts surrounding the arrest, the recovery, and the subsequent claims and baseless detention of Odyssey's ships by Spain. (A copy of the Sworn Statement including all Exhibits was attached to the Amended Complaint).

Despite the fact that Odyssey provided the Sworn Statement and further information regarding its recovery to Spanish officials, and despite the assurance of the Spanish criminal judge (Judge Juan Jose Navas Blanquez sitting in substitution of the Judge for the Number Three First Instance and Preliminary Investigating Court of La Linea de la Concepcion and district – a different judge from the one who signed the original "secret order"), that Odyssey's vessels would not be boarded without the consent

of the Master or forcibly taken to a Spanish port, on July 12, 2007, while Odyssey was moving its vessel the *Ocean Alert* from Gibraltar, and while the vessel was in international waters, Spain boarded the vessel under protest from the Master and illegally seized the vessel forcing it into the Spanish port of Algeciras. Having alerted the Spanish media to the boarding and seizure, Spanish authorities paraded the *Ocean Alert* along the coastline for photograph and video opportunities. Additionally, despite her protests, officials seized the personal computer of one of Odyssey's attorneys, Marie Rogers, and illegally copied all attorney/client privileged information regarding Odyssey and other clients. As of the date of this Amended Complaint, the computer has been returned without the hard drive. The original hard drive and copy are retained in the custody of the court. A formal complaint and request for the return of the hard drive and all copies taken has been made to the court and is currently pending decision by the Judge as to the legitimacy of the seizure of the laptop.

Once in Algeciras, Odyssey's crew and attorneys were forced by the Spanish officials to sit in the scalding sun for approximately seven hours without food or water or use of the restroom. Their passports were taken (but returned later that day) as were all of their electronic equipment (of which the hard drives have been removed and only the empty laptops returned). The *Odyssey Explorer* remains blockaded in Gibraltar by virtue of the criminal order and threatened seizure by Spain. Odyssey's rights granted by this Court to continue its recovery have been restricted by Spain, and Odyssey's damages as a result of Spain's conduct are extensive.

II. <u>STANDARD FOR GRANTING INJUNCTIVE RELIEF</u>

In this Circuit, the four requirements for awarding preliminary injunctive relief are:

 (1) a substantial likelihood that the party requesting relief will ultimately succeed on the merits;

 (2) the party requesting relief will suffer irreparable injury if the injunction is not issued;

 (3) that threatened injury to the moving party outweighs harm to the opposing party; and

 (4) the injunction, if issued, will not be adverse to the public interest.

See Siegel v. Lepore, 234 F.3d 1163 (11th Cir. 2000); Haitian Refugee Center, Inc. v. Nelson, 872 F.2d 1555, 1561-62 (11th Cir. 1989), aff'd, 498 U.S. 479 (1991); United States v. Alabama, 791 F.2d 1450, 1459 n.10 (11th Cir. 1986), cert. denied, 479 U.S. 1085 (1987).

As set forth below, Odyssey satisfies each of these four requirements. Therefore, an award of a preliminary injunctive relief is appropriate in this matter.

III. ARGUMENT

 A. There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claims

This is a salvage case involving admiralty and maritime claims under the law of salvage and the law of finds.[1] Regardless of which legal theory is ultimately

---

[1] As a case involving an admiralty and maritime claim, this Court has jurisdiction over the subject matter pursuant to the Constitution of the United States, Article III, Section 2, Clause 1, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure. Claims arising out of salvage operations are unquestionably within the admiralty jurisdiction of the federal courts. See Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, 640 F.2d 560, 566-67 (5th Cir. 1981) (Treasure Salvors III). Furthermore, U.S. admiralty courts unquestionably have jurisdiction to adjudicate salvage claims based on salvage operations that occur on the high seas. See Treasure Salvors III, 640 F.2d at 566-67 ("The subject matter jurisdiction thus granted is not limited to causes of action arising from acts or occurrences on the territorial waters of the United States."); Treasure Salvors I, 569 F.2d at 334 ("the presence of the res within the district is not an absolute prerequisite to the court's jurisdiction."). It is common for

found to apply to the case, there is a substantial likelihood that Odyssey will ultimately succeed on the merits of either or both of its claims or under its claim for equitable relief based on quantum meruit and unjust enrichment.

    1.    <u>There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Finds</u>

The maritime law of finds gives title to a person who has reduced to possession an object which has been abandoned at sea. *See Columbus-America Discovery Group v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, 974 F.2d 450 (4th Cir. 1992), *cert. denied*, 507 U.S. 1000 (1993). This doctrine has been consistently recognized in admiralty, and courts have awarded title to shipwrecks to the finder when warranted by the facts. *See Treasure Salvors, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337 (5th Cir. 1978) (*Treasure Salvors I*); *Martha's Vineyard Scuba Headquarters, Inc. v. The Unidentified, Wrecked and Abandoned Vessel*, 833 F.2d 1059, 1065 (1st Cir. 1987); *Indian River Recovery v. The CHINA*, 645 F. Supp. 141 (D. Del. 1986).

A finding of abandonment may be inferred from all of the relevant facts and circumstances, and may be based on circumstantial evidence. *Zych v. Unidentified, Wrecked and Abandoned Vessel Believed to be the LADY ELGIN*, 755 F. Supp. 213, 214 (N.D. Ill. 1991), *aff'd*, 960 F.2d 665 (7th Cir. 1992). Under the facts of this case, there is a substantial likelihood that Odyssey will be able to prove that the Defendant Site has

---

U.S. admiralty courts to assert *in rem* jurisdiction over shipwrecks located in international waters and even within the territorial seas of foreign nations. *See Marex v. Unidentified, Wrecked and Abandoned Vessel*, 952 F. Supp. 825, 828 (S.D. Ga. 1997); *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 924 F. Supp. 714 (E.D. Va. 1996); *Bemis v. R.M.S. Lusitania*, 884 F. Supp. 1042 (E.D. Va. 1995), *aff'd*, 99 F.3d 1129 (4th Cir. 1996), *cert. denied*, 118 S. Ct. 1558 (1998).

been abandoned by its original owner. The Defendant Site is located beyond the territorial waters or contiguous zone of any sovereign nation. The Defendant Site has revealed no evidence which would confirm the existence of a particular ship or of any ship at all. The artifacts recovered have similarly failed to provide evidence which would suggest anything other than an abandonment. In fact, it is possible that the artifacts were tossed overboard from a ship, as jettison. See *Taylor v. The CATO*, 23 F. Cas. 752, 753 (D. P.a 1806) (No. 13,786). Thus, the Court should find that the Defendant Site and the artifacts recovered have been abandoned and award title to Odyssey under the maritime law of finds.

    2.    <u>There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Salvage</u>

The common law of salvage applies to property that is lost at sea but has not been abandoned by its original owner. The law of salvage grants a liberal reward to those who voluntarily engage in efforts to save a vessel in peril at sea, and it promotes the orderly recovery of such property. *See The BLACKWALL*, 77 U.S. 1 (1869). It is well recognized that three elements must be established in order to present a salvage claim:

    (1)    a marine peril from which the property could not have been rescued without the assistance of the salvor;

    (2)    service voluntarily rendered when not required as a pre-existing duty; and

    (3)    success, in whole or in part, of recovery of the imperiled property.

*See The SABINE*, 101 U.S. 384 (1879); *Treasure Salvors, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, "Nuestra Senora de Atocha"*, 546 F. Supp. 919,

930 (S.D. Fla. 1981) (*citing Legnos v. M/W Olga Jacob*, 498 F.2d 666, 669 (5th Cir. 1974)).

Odyssey's activities with respect to the Defendant Site satisfy all three of these elements, and therefore is a salvage operation within the meaning of the law.

a. The Defendant Site Is In Marine Peril

A marine peril "includes more than the threat of storm, fire or piracy to a vessel in navigation." *Treasure Salvors I*, 569 F.2d at 337. The concept of marine peril also includes property which is discovered after being long lost but is "still in peril of being lost through actions of the elements." *Id. See also Platoro Ltd., Inc. v. Unidentified Remains*, 614 F.2d 1051 (5th Cir. 1980); *Fort Myers Shell & Dredging Co. Barge NBC512*, 404 F.2d 137, 139 (5th Cir. 1968) (the "peril required in salvage service need not necessarily be one of imminent or absolute danger, either presently or reasonably to be apprehended."). The Defendant Site is in danger from rival salvors who may attempt to locate it and recover remaining artifacts with "grab buckets" and without regard to archaeological protocols or proper conservation techniques. Thus, the Defendant Site satisfies the definition of marine peril because it is "still in peril of being lost through actions of the elements." *See Treasure Salvors I*, 569 F.2d at 337.

b. Odyssey Is Voluntarily Rendering Service When Not Required As A Pre-Existing Duty

Odyssey is under no duty to recover the Defendant Site. Instead, it is voluntarily rendering service to rescue the Defendant Site from being lost forever through the action of the elements in the sea *and* from the possibility that the artifacts will be hastily recovered by salvors without regard for the Defendant Site's historic and

11

archaeological value. Accordingly, Odyssey has satisfied the second element of a salvage claim.

  c. <u>Odyssey Is Substantially Likely To Succeed, In Whole Or In Part, In Recovering The Imperiled Property</u>

Odyssey has already demonstrated that it is capable of finding, surveying and photographing a large wreck site beneath 1100 meters depth or deeper. Odyssey is ready, willing and able to continue its recovery operations. Moreover, Odyssey has the equipment, manpower and experience required to successfully complete archaeological recovery operations.

Odyssey desires to search for and recover artifacts from the Defendant Site which may prove helpful in identifying a particular shipwreck. Odyssey has taken constructive possession of the wreck site to the extent its age, depth and historical significance permit. Accordingly, Odyssey is substantially likely to succeed in recovering the imperiled property, and it has satisfied the final element of a successful salvage claim.

  d. <u>Any Assertion By Spain Or Any Other Potential Claimant That It Has Successfully Refused Salvage Would Be Irrelevant</u>.

Insofar as Spain may assert that it has properly refused salvage for all Spanish shipwreck-sites -- irrespective of their location, disposition, and character -- Plaintiff would assert that such would be irrelevant with respect to the Defendant Site. As was already discussed, all current evidence from the Defendant Site suggests that there is, in fact, no remains of a ship to be found. In fact, the cargo may have been voluntarily jettisoned. As the U.S. Supreme Court has held, in such circumstances

12

jettisoned property is subject to a claim by a successful salvor, and no attempt at refusal of salvage would be valid. See *The ELIZA LINES*, 199 U.S. 119, 133-34 (1905). In any event, Claimant Spain could never satisfy the maritime law's stringent standard for an effective and proper refusal of salvage, insofar as (1) it is not in actual possession of the Defendant Site, (2) a prudent mariner would not refuse salvage under circumstances such as this, (3) Plaintiff acted in good faith to recover property and investigated the origin of property; and (4) in any event, a party purporting to disclaim salvage may only do so for its property and not for that owned by other parties. See *Merritt & Chapman Derrick & Wrecking Co. v. United States*, 274 U.S. 611, 613 (1927); *Tidewater Salvage, Inc. v. Weyerhaeuser Co.*, 633 F.2d 1304, 1307 (9th Cir.1980). Courts have made it a legal presumption that owners of property lost at sea desire to have their property salvaged, and the burden would necessarily rest on a party to conclusively prove that they had effectively refused salvage services. See *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 963 (4th Cir. 1999).

   3. <u>Defendant Site is Located Beyond the Territorial Sea or Contiguous Zone of any Nation.</u>

   No nation may interfere with shipwreck recovery activities, unless such are occurring within that nation's territorial sea or contiguous zone. A nation's territorial sea is measured from the shoreline (or baselines along the coast) out to a maximum of 12 nautical miles. A nation's contiguous zone is (as the name implies) contiguous with a territorial sea, and extends out a maximum of an additional 12 nautical miles, making for a total maximum of 24 nautical miles. See *United States v. Hidalgo-Gato*, 703 F.2d 1267 (11th Cir. 1983). Even in a nation's contiguous zone, a coastal state's competence is

13

limited. See *United States v. McRary*, 665 F.2d 674, 677 n.4 (5th Cir. Unit B 1982) ("the control of the United States over foreign boats in the contiguous zone is limited to the enforcement of customs, fiscal, immigration or sanitary regulations.").

The Defendant Site is not located within the territorial sea or contiguous zone of any nation. Plaintiffs have already filed with this Court, under seal, coordinates of the area in which the Defendant Site is located. Odyssey will file under seal a nautical chart depicting the location of the site described in the subject Amended Complaint. It is undisputed that the Defendant Site is not located within 24 nautical miles of any nation's coastline, and is thus not within any nation's territorial sea or contiguous zone.

B. <u>Odyssey Will Suffer Irreparable Injury If Injunctive Relief Is Not Issued</u>

Odyssey has expended considerable resources in locating, studying and surveying the Defendant Site, in photographing and documenting the Defendant Site, and in developing an archaeological excavation and conservation plan as well as in recovering the artifacts and in preserving their historical value. Odyssey has committed its financial resources, time, manpower, equipment and its vessels to these efforts. To allow others to come in at this time and reap the benefits of Odyssey's labor would constitute irreparable harm and injury to Odyssey for which there would be no adequate remedy at law. See *Treasure Salvors*, 546 F. Supp. at 929; *Deep Sea Research, Inc. v. The Brother Jonathan*, 883 F. Supp. 1343, 1362 (N.D. Cal. 1995), *aff'd*, 102 F.3d 379 (9th Cir. 1997), *aff'd in part, vacated in part and remanded*, 118 S. Ct. 144 (1998).

> As the Fifth Circuit explained in *Treasure Salvors III*:
>
> A salvor. . . has a valuable interest in his salvage operations which the law protects by vesting in the salvor certain rights. Among the most important of these rights are the right to exclude others from participating in the salvage

> operations, so long as the original salvor appears ready, willing and able to complete the salvage project, and the right to possession of the salved property, a right exclusive even of the owner, until such time as the salvage lien on the property is extinguished or adequate security for this obligation is given.

640 F.2d at 567.

Odyssey risks violation of its legal rights and substantial investment to date if the Court does not award preliminary injunctive relief. Consequently, the Court should enter a preliminary injunction protecting Odyssey's continued right to exclusive possession of the Defendant Site, and protecting it from interference from rival salvors.

C.  <u>Odyssey's Potential Injury Outweighs The Injury Of Any Other Party</u>

Odyssey is the only party which has expended any resources in the search for and recovery of the Defendant Site. Further, the Defendant Site is located beyond the territorial waters or contiguous zone of any sovereign nation. There is no evidence currently which would confirm the interest of any third party to the Defendant Site or to the artifacts recovered therefrom. Odyssey is not aware of any other party, including fishermen, salvors, divers or others that may have discovered or recovered items from the Defendant Site, that has sought a salvage claim, or that has attempted to reduce the Defendant Site to its possession.

Consequently, Odyssey's potential injury outweighs the injury of any other party, since Odyssey will suffer serious irreparable injury if an injunction is not issued, and it is unlikely that any other party will suffer injury if preliminary injunctive relief is awarded to Odyssey.

     D.     <u>An Injunction Will Not Be Adverse To The Public Interest</u>

Odyssey is committed to recovering the Defendant Site in a manner that benefits the public interest. The recovery operation and artifact preservation has been and will continue to be conducted in accordance with strict archaeological protocols. Furthermore, Odyssey intends to make certain of the recovered artifacts available for public display and educational purposes as well as historic and scientific study. Consequently, the issuance of an injunction will not be adverse to the public interest. To the contrary, the issuance of a preliminary injunction permitting Odyssey to conduct a competent, safe, scientific and successful recovery of the Defendant Site can only benefit the public interest. *See Treasure Salvors*, 546 F. Supp. at 929.

IV.     CONCLUSION

For the foregoing reasons, Odyssey respectfully requests that the Court grant its motion for entry of an Order granting a preliminary injunction temporarily enjoining and prohibiting any third parties from conducting search and/or recovery operations or conducting activities that would disturb the Defendant Site in any manner or that would interfere with Odyssey's exclusive rights to salvage the Defendant Site within the areas described in the Complaint.

Respectfully submitted,

Dated: August 6, 2007

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004, Attorneys for Claimant, Kingdom of Spain.

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313
Attorneys for Plaintiff