# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
## IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

     Plaintiff,                              CIVIL ACTION

vs.

                                     Case No. 8:07-CV-00614-SDM-MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
center point coordinates:
(to be provided to the Court under seal)

     Defendant(s);
     <u>in rem</u>,

and

The Kingdom of Spain,

     Claimant/Defendant.

_____/

### Opposition by Claimant-Defendant Kingdom of Spain to
### <u>Plaintiff's Motion for Order Granting Preliminary Injunctive Relief</u>

Claimant-Defendant, the Kingdom of Spain ("Spain"), by its undersigned counsel,

respectfully submits this opposition to Odyssey Marine Exploration, Inc.'s ("Odyssey") Motion

for Order Granting Preliminary Injunctive Relief (Dkts. 23, 28).

### Memorandum of Law

The Eleventh Circuit, in a decision cited by Odyssey, has pointed out that preliminary

injunctive relief is an "extraordinary and drastic remedy," which should "not to be granted unless

the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites."

<u>Siegel v. Lepore</u>, 234 F.3d 1163, 1176, 1179 (11th Cir. 2000) (internal citations omitted)

(affirming the denial of a preliminary-injunction motion); see also Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975) (noting that grants of preliminary injunctive relief are the "exception rather than the rule"). Specifically, the movant must show the following prerequisites: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the relief is not granted; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest if issued. See, e.g., Siegel, 234 F.3d at 1176 (internal citations omitted). Odyssey does not meet its burden of showing the existence of any of these prerequisites here. Thus, Odyssey's motion should be denied.

I.    Odyssey Has Not Pleaded a Valid Claim to the Property upon Which Injunctive Relief Can Be Premised.

Odyssey's motion begins with the faulty premise that Odyssey in fact has "exclusive rights to recover the Defendant" under the laws of salvage and of finds. Plaintiff's Motion for Order Granting Preliminary Injunctive Relief at 1 (Aug. 6, 2007) (Dkts. 23, 28) [hereinafter Preliminary Injunction Motion] (emphasis added). There are two fundamental problems with this premise. First, it assumes that Odyssey is in fact a salvor or a finder with rights over the property, even though its status as to either with regard to the Defendant res in this case has not yet been judicially determined. Second, Odyssey's claims to rights over the res, as outlined in Odyssey's Amended Complaint (Dkts. 21, 25), fall short of the pleading requirements of the Supplemental Rules of Admiralty.[1] A party seeking exercise of the court's injunctive power to protect a claimed legal interest must first have stated a valid claim to that interest. See e.g.,

---

[1] Spain accordingly has also filed herewith a Motion to Dismiss the Amended Complaint and for Other Relief, including vacation of the arrest of the res and termination of Odyssey's substitute custodianship. Spain incorporates that motion and supporting memorandum of law by reference.

Bayless v. Martine, 430 F.2d 873, 877-79 (5th Cir. 1970) (affirming denial of a preliminary injunction where the plaintiff's pleadings failed to set forth facially valid underlying grounds for relief); 42 Am. Jur. 2d Injunctions § 231 (2007) ("[T]he valid commencement of the action is a condition precedent to . . . even entertain an application for an injunction . . . ."). Simply put, a plaintiff who fails to comply with the Supplemental Rules and, thus, to state a valid in rem claim to property cannot be said to have any probability of success on the merits, less so a substantial likelihood of success. See Siegel v. Lepore, 234 F.3d 1163, 1176, 1179 (11th Cir. 2000).

As discussed in more detail in Spain's concurrent motion to dismiss, Odyssey's Complaint and Amended Complaint do not "describe with reasonable particularity the property that is the subject of the action." Supplemental Rule C(2)(b). The rules further require that Odyssey "state the circumstances from which the claim arises with such particularity that the . . . claimant will be able, without moving for a more definite statement, to commence investigation of the facts and to frame a responsive pleading." Supplemental Rule E(2)(a). In its initial Complaint, Odyssey provided little or no identification of the Defendant res, thus failing to "describe" the property with the stringent particularity required by the Supplemental Rules. See United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1547 fn.20 (11th Cir. 1987) (noting that the Supplemental Rules' pleading standard is "more stringent than [] that of the Federal Rules"). In response to Spain's June 19, 2007 Motion for More Definite Statement (Dkt. 16), Odyssey filed an Amended Complaint that again fails to identify the property it claims in this case. See Amended Complaint (Aug. 6, 2007) (Dkts. 21, 25).

Injunctive relief may not be granted on the premise that Odyssey has "exclusive rights" to property Odyssey has repeatedly refused to identify, when, as a threshold matter, Odyssey must describe the property subject to an in rem claim in admiralty with particularity in order to bring a

valid claim. The need for full disclosure as a prerequisite for such a claim is heightened where, as here, a plaintiff asks the court to enter broad injunctive relief with respect to that property.

Odyssey's motion itself reveals just how twisted its logic is and why its denial is appropriate. While Odyssey claims at the start of its memorandum that it has "exclusive rights" to the res, it later says that at some future date "Odyssey will properly give notice to any third party with a potential interest." Preliminary Injunction Motion at 1, 5. Odyssey thus seeks to defer identifying the shipwreck until some future date if Odyssey, and Odyssey alone, "confirms" that the res at issue in this case corresponds to a particular shipwreck. Odyssey also claims a right to compensation for expenses incurred while the owner was kept in the dark. See Amended Complaint ¶¶ 20, 44-47.

Before Odyssey can be awarded equitable relief, see Lewis v. S.S. Baume, 534 F.2d 1115, 1121 (5th Cir. 1976) (calling an injunction an "equitable tool"), it must act equitably and disclose information about the identity of the property it seeks to subject to an injunction for its private benefit. Odyssey's persistence on maintaining a monopoly over this important information not only clashes with the Supplemental Rules, but also leads to an inequitable result because, without the information, the property's owner cannot, at a minimum, present all the grounds that may bar a preliminary injunction.

As discussed more fully in Spain's concurrent motion to dismiss, relevant case law construing Supplemental Rules C and E in shipwreck cases makes clear that Odyssey is entitled to no injunctive relief in this case, less so preliminary injunctive relief. In Great Lakes Exploration Group LLC v. Unidentified, Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006), a purported salvor plaintiff filed a motion for preliminary injunctive relief, arguing that it would be necessary to

protect the plaintiff's interests in the shipwreck against a sovereign intervenor. Like Odyssey has done twice here, the plaintiff in Great Lakes failed to provide sufficient information in its complaint for the intervenor to evaluate its potential ownership interest in the vessel. Great Lakes, 2006 WL 3370878, at **4-5. The court held that failure to comply with the Supplemental Rules, and thereby allow others to evaluate and protect their potential rights of ownership, precluded any showing of, inter alia, probability of success on the merits. Id. at *7. Indeed, plaintiff's failure to set forth information "known to [p]laintiff and which is important to defining Defendant" shipwreck warranted dismissal of plaintiff's claims. Id. at **4-5, 8.

In short, Odyssey's failure to follow the rules in this case makes denial of its Motion for Preliminary Injunction appropriate.

II.    Odyssey's Motion Misstates the Courts' Jurisdiction and Authority Over a Shipwreck Outside the United States.

Odyssey seeks a sweeping injunction running against "any third parties," presumably, any person or entity anywhere in the world, from "conducting search and/or recovery operations or conducting activities that would disturb the Defendant site in any manner or that would interfere with Odyssey's exclusive rights to salvage the Defendant Site within the areas described in the Complaint." Preliminary Injunction Motion at 1, 16. This bold request should fail on numerous grounds cutting across the prerequisites for a preliminary injunction. Simply put, Odyssey's motion is not backed up by a showing that Odyssey will succeed on the merits, that Odyssey faces irreparable harm meriting the broad preliminary relief sought, that this threatened harm outweighs the harm an injunction would have on Spain, and that the preliminary injunction, if issued, would not be adverse to the public interest. See Siegel, 234 F.3d at 1176.

As an initial matter, the preliminary injunction's breadth is not justified by a concomitant risk of irreparable injury to Odyssey. The preliminary injunction would apply to a vast area

"approximately 100 miles west of Gibraltar," outside U.S. territorial waters. <u>See Preliminary Injunction Motion</u> at 16 (linking the preliminary injunction to the "areas described in the Complaint"); <u>Amended Complaint</u> ¶ 2 (noting that the site where the Defendant <u>res</u> was located is "approximately 100 miles west of the Straits of Gibraltar"). This area encompasses thousands of miles of ocean over which Odyssey would have this court exercise its injunctive power. The area identified by Odyssey includes territorial waters of at least Spain, and possibly of Portugal and of Morocco. Notably, the preliminary injunction would apply to "any third party," presumably any nation (including those nations whose own waters may be "approximately 100 miles west of Gibraltar") and any business or person anywhere in the world, regardless of whether they are in any way subject to this court's jurisdiction. Odyssey thus asks the court to enter an injunction that would apply to anyone within a vast area of the sea, on the other side of the Atlantic Ocean, for purposes of "protecting" an undisclosed location somewhere therein.

The reasons for such a sweeping exercise of the court's preliminary injunctive power are far from clear. Odyssey itself acknowledges that "no other salvor is currently working on the Defendant Site" and presents no evidence that other potential salvors are threatening to disturb the site. <u>See Preliminary Injunction Motion</u> at 4. Odyssey also acknowledges that the allegedly wrongful conduct by Spanish authorities of a criminal investigation against Odyssey (the real animus behind the request for relief) has an adequate remedy at law. <u>Id.</u> at 7 ("Odyssey's damages as a result of Spain's conduct are extensive."); <u>see Lewis v. S.S. Baune</u>, 534 F.2d 1115, 1122 (11th Cir. 1976) (reversing an injunction partly because plaintiffs acknowledged other potential remedies, thus precluding a finding of irreparable injury). In short, Odyssey's motion should be dismissed because Odyssey's alleged potential injury does not outweigh the potentially far-reaching impact the proposed injunction may cause to Spain and other third parties.

Second, Odyssey cannot show a substantial likelihood of success on the merits of its injunctive plea of relief. The court in this case has in personam jurisdiction over Odyssey and in rem and/or quasi in rem jurisdiction over the Defendant res. See Amended Complaint ¶ 4. But the court does not have the necessary jurisdiction over Spain or over other parties, let alone the entire world.

Injunctions operate in personam and, as such, require jurisdiction over the affected person. See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1917) (concluding that the district court's issuance of an injunction against defendants over which the court had no personal jurisdiction was erroneous because "the injunction operates only in personam"); Lathrop v. Unidentified, Unidentified, Wrecked & Abandoned Vessel, 817 F. Supp. 953, 961 (M.D. Fla. 1993) (same). As discussed more fully in Spain's concurrent motion to dismiss, this court has no jurisdiction to entertain in personam claims against Spain. See 28 U.S.C. §§ 1330(a)-(b), 1604. Accordingly, Odyssey faces a substantial likelihood of failure, not success, on the merits of its injunctive relief claim against Spain.

Moreover, this court has limited admiralty jurisdiction over the site where Odyssey alleges the res is located. In a footnote to its memorandum which discusses jurisdiction, Odyssey argues that "[i]t is common for U.S. admiralty courts to assert in rem jurisdiction over shipwrecks located in international waters and even within the territorial seas of other nations," principally citing decisions through 1996 concerning the Titanic for that proposition. Preliminary Injunction Motion at 8-9. Odyssey does not mention that a later decision also concerning the Titanic specifically addressed and clarified the limits of in rem jurisdiction over shipwrecks outside the United States. R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943 (4th Cir. 1999). In R.M.S. Titanic, the Fourth Circuit held that in rem claims against a shipwreck outside

the United States do not confer sovereignty over the wreck or in personam jurisdiction over third

parties. Id. at 958, 960-61, 965. In rem jurisdiction over claims to a shipwreck in international

waters is only:

> an 'imperfect' or 'inchoate' in rem jurisdiction which falls
> short of giving the court sovereignty over the wreck. It
> represents rather a "shared sovereignty," shared with other
> nations enforcing the same jus gentium. Through this
> mechanism, internationally recognized rights may be
> legally declared but not finally enforced. Final
> enforcement requires the additional steps of bringing either
> property or persons involved before the district court or a
> court in admiralty of another nation.

Id. at 967-68. The court cautioned that

> asserting sovereignty through a claim of exclusive judicial
> action beyond the territorial limits of a nation would disrupt
> the relationship among nations that serves as the
> enforcement mechanism of international law and custom.
> What would occur if an English or French court were to
> exercise similar power? The necessary response to probes
> such as these leads to the now well-established norm of
> international law that no nation has sovereignty over the
> high seas. See, e.g., United States Convention on the Law
> of the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1287 art. 89
> (providing that "no state may validly purport to subject any
> part of the high seas to its sovereignty").

Id. at 968 (emphasis added). Accordingly, the court held that jurisdiction over an in rem claim to

a shipwreck outside U.S. waters (in that case, south of Newfoundland and thus far closer to the

United States than the shipwreck claimed in this case) confers authority to enforce rights arising

from a maritime lien issued in favor of a salvor that had been successful in obtaining a salvage

award vis-à-vis parties subject to the court's <u>in personam</u> jurisdiction.[2]  <u>R.M.S. Titanic</u>, 171 F.3d at 968.

Odyssey stands in no such position: it has merely filed a salvage claim.  This claim is improperly pled and barred as to any interest of Spain in the Defendant <u>res</u> by, <u>inter alia</u>, Spain's refusal of salvage and Spain's other sovereign rights.  Moreover, the <u>Titanic</u> court held that even though the salvor had obtained a final award in that case (unlike here), it was error for the district court to enjoin others from being at and examining the shipwreck.  <u>Id.</u> at 971.  In sum, the Circuit Court decision directly on point demonstrates that Odyssey's proposed injunction is clearly impermissible and would enmesh the court in international conflict.  Accordingly, Odyssey faces little likelihood of success on the merits and its preliminary-injunction motion should be denied.

III.     <u>Odyssey's Factual Grounds in Support of Its Motion Clash with the Foreign Sovereign Immunities Act and the Act of State Doctrine.</u>

The gravamen of Odyssey's motion for preliminary injunctive relief is that Spanish authorities have allegedly wrongfully conducted a criminal investigation of its activities near Spain's coasts.  <u>See</u> <u>Preliminary Injunction Motion</u> at 6-7.  Odyssey alleges that this investigation is a result of [] false [media] reports" surrounding its activities near Spain's coasts.  <u>Id.</u> at 6.  First of all, Odyssey is in no position to claim that this court should order injunctive relief to save it from the consequences of the public attention it has brought onto itself.  While refusing to disclose the identity or location of the shipwreck in this case, Odyssey issued a press release trumpeting that it had conducted the "World's Largest Historical Shipwreck Recovery" and announcing that it surreptitiously brought to the United States 17 tons of gold and silver

---

[2] For the reasons discussed in support of Spain's concurrent motion to dismiss, Spain also respectfully submits that the court possesses no <u>in personam</u> jurisdiction over Spain.

coins. See Press Release, Odyssey's Latest Shipwreck Find Yields Over 500,000 Silver and Gold Coins (May 18, 2007), http://shipwreck.net/pr134.html. If Odyssey now finds that it is the subject of curiosity and speculation by the media it has courted, or investigations by law enforcement authorities seeking information Odyssey continues to conceal, Odyssey has only itself to blame.

Odyssey further compounds the misguided nature of its motion by casting aspersions on Spain's judiciary and its officers. Preliminary Injunction Motion at 6-7. Odyssey's claim is as misguided as if it had filed papers in a Spanish court seeking preliminary injunctive relief against the United States based on a claim that a search warrant issued by a U.S. court was a result of "false" media reports.

The conduct of a criminal investigation in Spain against Odyssey, including the search by Spanish authorities of one of Odyssey's vessels as part of a court order, Preliminary Injunction Motion at 6-7, does not and cannot constitute any basis for a U.S. court to grant injunctive relief against the government of Spain.[3] As discussed in Spain's concurrent motion to dismiss, U.S. courts ought not sit in judgment on the order of a Spanish court and on how this order was carried out.

A.    *There Is No Jurisdiction to Enjoin Spain in These Proceedings.*

To establish subject matter jurisdiction to claims against a foreign state, a would-be plaintiff must identify a viable exception to immunity within the four corners of the Foreign

---

[3] Spain does not accept Odyssey's self-serving version of events concerning the criminal law investigation. Odyssey submits only hearsay at best by Mr. Stemm, whose declaration makes no claim that he was even present when the search of an Odyssey vessel was conducted. See Sworn Statement of Gregory Stemm (July 5, 2007) (Dkt. 21-2). Nor does Odyssey identify any Spanish law that it even claims was violated. If Odyssey has any real grievance concerning a Spanish court, or how it was carried out, Odyssey's motion papers show that it has engaged counsel in Spain to represent it before the proper authorities in Spain. See Goñi Cover Letter to Sworn Statement of Gregory Stemm (Dkt. 21-2).

Sovereign Immunities Act ("FSIA") and show that the exception covers the sovereign conduct forming the basis for the claims. Dominican Energy Ltd. v. Dominican Republic, 903 F. Supp. 1507, 1512 (M.D. Fla. 1995); see, e.g., Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1214 (11th Cir. 2005); Gerding v. Republic of France, 943 F.2d 521, 526 (4th Cir. 1991) (when a claim is filed against a foreign state, "the burden shifts to the opposing party to raise the exceptions to sovereign immunity and assert at least some facts that would establish the exceptions") (emphasis added). If no exception applies, the claims against the sovereign must be dismissed. See Samco Global Arms, 395 F.3d at 1218 (affirming dismissal of claims against Honduras because they were not covered by a FSIA exception).

Here, the FSIA presumptively bars Odyssey's request for an injunction against Spain because such an injunction operate in personam against Spain and because Spain is a sovereign state. Accordingly, Odyssey must show that Spain's alleged conduct, which forms a basis for the relief sought, is covered by an exception to sovereign immunity. Odyssey fails to do so in its Amended Complaint, as discussed more fully in Spain's concurrent motion to dismiss (incorporated herein by reference). Accordingly, Odyssey's motion for a preliminary injunction should be denied because Odyssey cannot succeed on the merits of its claim for injunctive relief against Spain.[4]

B.    *The Act of State Doctrine Precludes Judicial Review of the Spanish Court's Conduct of a Criminal Investigation of Odyssey.*

The exercise by another nation's judiciary of their powers under their own laws is the paradigmatic exercise of sovereign authority. Under the Act of State doctrine, as well as the

---

[4] Additionally, there is no jurisdiction over a foreign nation unless it has been served in accordance with the specific requirements set forth in 28 U.S.C. § 1608. As also discussed in Spain's concurrent motion to dismiss, Odyssey has effected no such service on Spain.

FSIA, a U.S. court should not review or decide the validity of the exercise of that authority.  See

Saudi Arabia v. Nelson, 507 U.S. 349 (1993).

The Act of State doctrine recognizes that foreign nations are sovereigns and that, as such,

they are not subject to U.S. judicial review of how their own laws and procedures are applied and

enforced.  To "permit the validity of the acts of one sovereign state to be reexamined and perhaps

condemned by the courts of another would very certainly imperil the amicable relations between

governments and vex the peace of nations."  Oetjen v. Cent. Leather Co., 246 U.S. 297, 304

(1918).  The Act of State doctrine therefore requires U.S. courts to accept the acts of a foreign

government under its laws and procedures as lawful:

> [The act of state doctrine] requires only that, when it is made to
> appear that the foreign government has acted in a given way on the
> subject-matter of the litigation, the details of such action or the
> merit of the result . . . must be accepted by our courts as a rule for
> their decision.

Ricand v. American Metal Co., 246 U.S. 304, 309 (1918).

The Act of State doctrine applies with particularly clear logic and force when a U.S. court

is asked to review another nation's law-enforcement processes.  See, e.g., Duchow v. United

States, No. 95-2121, 1995 WL 425037, at **3-4 (E.D. La. July 19, 1995) (dismissing claims of

wrongful detention premised on a Bolivian criminal investigation allegedly based on Bolivian

officials acting on false information); First Merchants Collection Corp. v. Republic of Argentina,

190 F. Supp. 2d 1336 (S.D. Fla. 1995) (dismissing claims of wrongful seizure of property in

Argentinian criminal investigation).

Odyssey's request that the Court enjoin "any third parties . . . from . . . conducting

activities . . . that would interfere with Odyssey's exclusive rights to salvage the Defendant Site

in any manner" is a thinly disguised effort to have this Court immunize Odyssey from the duty

and authority of the Spanish judiciary to investigate potential violations of the laws of Spain.

Odyssey's effort to have this court issue an injunction aimed at interfering with the investigative enforcement process of a Spanish court, or at restricting how the Government of Spain may exercise its official duties and responsibilities, should accordingly be rejected.

IV.    Odyssey Has Not Shown and Cannot Show a Substantial Likelihood of Success on the Merits or Any of the Other Prerequisites for a Preliminary Injunction.

In addition to the grounds for denial discussed above, Odyssey's motion should be denied because it has not and cannot show that the prerequisites for issuance of a preliminary injunction are present here.

A.    *Odyssey Cannot Show a Substantial Likelihood of Success Under The Law of Finds.*

Contrary to what its motion suggests, Odyssey is not substantially likely to succeed on the merits of its law-of-finds claim. See Preliminary Injunction Motion at 9-10; Amended Complaint ¶¶ 24-27. To begin with, application of the law of finds is generally disfavored. To prevail on a law-of-finds theory, a plaintiff must provide "strong proof" of abandonment, such as an "express" declaration of abandonment by property's owner. Thomas J. Schoenbaum, Admiralty and Maritime Law 180 (4th ed. 2004).

In addition, as with its arguments about admiralty jurisdiction, Odyssey conspicuously omits the leading decision on point. In Sea Hunt v. Kingdom of Spain, 221 F.3d 634 (4th Cir. 2000), the Fourth Circuit held that the law of finds does not apply to sunken Spanish vessels unless express official abandonment is shown. 221 F.3d at 640. The court confirmed that the law of finds can only apply to a shipwreck when "clear and convincing evidence" shows that an owner expressly and affirmatively abandoned its property. Id. at 643-44. A Verified Claim in rem by Spain in a shipwreck case negates any inference of abandonment. Id. at 641-42.

Neither Odyssey's motion nor its Amended Complaint presents any evidence showing abandonment by Spain of any interest it may have on the Defendant res in this case.  In fact, Spain's Verified Claim specifically affirms its non-abandonment of its interests in sunken vessels and their contents.  See Verified Claim of the Kingdom of Spain (May 31, 2007) (Dkt. 13).  Long before this case, Spain also gave official notice that it did not abandon its interests in sunken vessels and property.  See Protection of Sunken Warships, Military Aircraft and Other Sunken Government Property, 60 Fed. Reg. 5647 (Feb. 5, 2004).  Consequently, Odyssey's motion should be dismissed because Odyssey is not substantially likely to succeed on the merits of its law-of-finds claim.[5]

    B.    Odyssey Cannot Show a Substantial Likelihood of Success Under The Law of Salvage.

Odyssey's claims of probable success under the law of salvage likewise ignore relevant case law of the Eleventh Circuit and other federal jurisdictions.  Long-settled admiralty doctrine holds that a salvor has no right to conduct salvage or to receive any award when salvage has been refused.  In International Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft, 218 F.3d 1255 (11th Cir. 2000), the Eleventh Circuit reversed a salvage award and stated that "[o]nly in a rare case where [a] government owner gives express or implied consent to salvage, should an award be given because the government has full power to reject or prohibit

_____

[5]  Odyssey argues that a substantial probability of success on the merits exists because "it is possible that the artifacts were tossed overboard from a ship . . . ."  Preliminary Injunction Motion at 10.  Even if this implausible statement were true, it would not assist Odyssey:

> Admiralty law presumes that owners do not give up title to ships and cargo in marine peril, even if cargo is swept overboard or a crew has to leave its vessel on the open water.

Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft, 218 F.3d 1255, 1258 (11th Cir. 2000).

- 14 -

the services." 218 F.3d at 1262 fn.16 (quoting with approval Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 16-7 (2d ed. 1994)); <u>see also</u> Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> 188 (4th ed. 2004). As the Eleventh Circuit noted, an owner has the "<u>perfect right to decline any assistance that may be offered him: he should not be assisted against his will.</u>" <u>Int'l Aircraft Recovery</u>, 218 F.3d at 1262 (emphasis added) (internal citations omitted). Any owner, whether sovereign or not, has the long-established right to reject salvage. <u>See Id.</u> at 1262 fn.16; <u>see also</u> <u>Sea Hunt v. Kingdom of Spain</u>, 221 F.3d 634, 647 fn.2 (4th Cir. 2000) (affirming a lower court's denial of a salvage award because "[i]t is the right of the owner of any vessel to refuse unwanted salvage").

<u>International Aircraft Recovery</u> marked no departure from long-standing admiralty law. In <u>Klein v. Unidentified Wrecked & Abandoned Sailing Vessel</u>, 758 F.2d 1511, 155 (11th Cir. 1985), the Eleventh Circuit affirmed the denial of a salvage award against a historic shipwreck where "the owner of the property may not even have desired for the property to be 'rescued.'"[6] 758 F.2d at 1515. In <u>Lathrop v. Unidentified, Unidentified, Wrecked & Abandoned Vessel</u>, 817 F. Supp. 953 (M.D. Fla. 1993), this court held that "potential salvors do <u>not</u> have an inherent right to salvage distressed vessels." 817 F. Supp. at 963 (emphasis added). "In cases where the vessel has sunk, the master can communicate rejection of salvage services through a sign, buoy, marker or <u>public advertisement</u>," the result of which is that a salvor "will not be entitled to a salvage award". <u>Id.</u> at 964 (emphasis added).

---

[6] Odyssey's reliance on <u>Treasure Salvors, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel</u>, 640 F.2d 560 (5th Cir. 1981) (<u>Treasure Salvors III</u>) is instructive. <u>Preliminary Injunction Motion</u> at 14. In that case, the salvor had obtained a final salvage award and was granted injunctive relief only against a would-be rival that was actively engaged in recovery operations at the site and had directed gunfire at sea against the award holder. <u>Id.</u> at 563-564. Here, by contrast, Odyssey concedes that "no other salvor is currently working on the Defendant Site." <u>Preliminary Injunction Motion</u> at 4.

Likewise, in Sea Hunt v. Unidentified Shipwrecked Vessel or Vessels, No. 98-281, 1999 U.S. Dist Lexis 21752 (E.D. Va. June 25, 1999), the court noted that "the doctrine of rejection [of salvage] is an ancient one" which remains in full force today. 1999 U.S. Dist Lexis 21752, at *3, aff'd, Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels, 221 F.3d 634, 638 (4th Cir. 2000). Applying that doctrine, the district court ordered the would-be salvor to "deliver to Spain" all artifacts taken by the salvor from a Spanish vessel, ordered the salvor to refrain from any further salvage efforts, and held that there could be no "award for services performed in contradiction to Spain's wishes." Id. at **2, 13-14. Importantly, in view of Odyssey's argument that it may not have confirmed the identity of the vessel in this case, the court pointed out that in a "treasure salvage case [such an argument] could encourage potential salvors to intentionally remain ignorant of the ownership of a wrecked vessel in order to maintain salvage rights. That is certainly not in harmony with the purposes of salvage." Id. at **12-13.

Long before Odyssey's claimed location of this shipwreck in March 2007, see Amended Complaint ¶16, Spain gave public notice to potential claimants or salvors such as Odyssey that sunken vessels and property in which Spain has an interest may not be salvaged or disturbed without express authorization by Spain. As summarized by Spain in a February 5, 2004, Federal Register notice published by the U.S. Department of State on "the matter of Spanish laws and policy regarding the remains of sunken vessels that were lost while in the service of the Kingdom of Spain and/or were transporting property of the Kingdom of Spain," "salvage or other disturbance of sunken vessels or their contents in which Spain has such interests is not authorized and may not be conducted without express consent by an authorized representative of the Kingdom of Spain." See Protection of Sunken Warships, Military Aircraft and Other Sunken Government Property, 60 Fed. Reg. 5647 (Feb. 5, 2004). Spain's refusal of salvage, which it has

a "perfect right" to do, <u>International Aircraft Recovery, L.L.C. v. Unidentified, Wrecked &</u> <u>Abandoned Aircraft</u>, 218 F.3d 1255, 1262 (11th Cir. 2000), was reaffirmed in its Verified Claim. <u>Verified Claim of the Kingdom of Spain</u> at 2 (Dkt. 13).

In short, Odyssey stands as nothing more than a "gratuitous intermeddler" vis-à-vis salvage of Spanish vessels or property, not as the holder of any protectable right. Odyssey is thus wrong in arguing that it has acquired any rights by "voluntarily rendering service" to the shipwreck, or that it would suffer "irreparable injury" if it were not granted a preliminary injunction. Odyssey is barred from disturbing vessels or property in which Spain has an interest, much less taking artifacts or receiving compensation for "services" it was directed <u>not</u> to provide.[7]

The decision of this district in <u>Lathrop v. Unidentified Wrecked & Abandoned Vessel</u>, 817 F. Supp. 953 (M.D. Fla. 1993) also points to further procedural and substantive grounds for denial of this motion. The court affirmed as an initial matter that when an <u>in personam</u> preliminary injunction is sought allegedly to protect a salvor's claimed <u>in rem</u> rights to a shipwreck against a potential claimant, <u>in personam</u> jurisdiction and service of process on the adverse claimant is required:

> Although this action began as an <u>in rem</u> admiralty action, the issuance of an injunction operates <u>in personam</u> and requires the same jurisdictional predicate as any other <u>in personam</u> action — a basis for exercising personal jurisdiction accompanied by adequate notice (service of a summons and a complaint).

---

[7] Odyssey also argues that it has a right to conduct salvage because it "is the only party which has expended any resources in the search for and recovery of the Defendant Site." <u>Preliminary Injunction Motion</u> at 15. The Eleventh Circuit disposed of this argument in <u>International Aircraft</u>, ruling that it was error for the district court to adopt a "theory that owners can only reject salvage services if they have made alternative plans to recover their vessels." 218 F.3d at 1262. It is well settled that would-be salvors operate entirely at their own risk.

Lathrop, 817 F. Supp. at 961 (citing Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229

(1917)). As noted in Spain's concurrent motion to dismiss, Odyssey has failed to serve Spain

with the Amended Complaint that seeks injunctive relief in accordance with 28 U.S.C. § 1608.

Accordingly, under 28 U.S.C. § 1608, there is no jurisdiction to enter any injunctive order

against Spain.

This court in Lathrop also noted that a salvor must have acted lawfully before it can

obtain a preliminary injunction protecting claims to salvage a shipwreck:

> The requirement that a salvor act lawfully while salvaging a vessel
> is consistent with general admiralty law. By itself, possession of
> abandoned property is not sufficient to establish a salvage claim.
> Before a valid claim can be established, a salvor must acquire
> possession lawfully.

813 F. Supp. at 963; see also id. at 965 (denying preliminary injunctive relief on the ground that

a state has the "unquestioned" right to "refuse salvage services when those services will

endanger its . . . historical resources"); Great Lakes Exploration Group LLC v. Unidentified,

Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL

3370878, at **7-8 (W.D. Mich. Nov. 20, 2006) (holding that a plaintiff asserting an in rem claim

against a defendant shipwreck may not obtain preliminary injunctive relief that could interfere

with the exercise of governmental law enforcement and other regulatory functions). Odyssey's

motion effectively seeks to turn these principles upside down, arguing that it may be granted

preliminary injunctive relief in part because it is the subject of an active investigation into

whether it has acted unlawfully.

In summary, contrary to what Odyssey's motion suggests, there is no substantial

likelihood of success on Odyssey's salvage claims.

C.    *The Public Interest Is Squarely Against the Motion.*

Odyssey argues that the requested injunction "can only benefit the public interest" Preliminary Injunction Motion at 16, but ironically its motion is premised in part on the fact that Odyssey is the subject of an active criminal investigation. Odyssey offers no explanation as to how the public interest would be served by an injunction that seeks to interfere with the law-enforcement process of a major European nation and U.S. ally.

Moreover, as discussed in more detail in Spain's concurrent motion to dismiss, in the Foreign Sovereign Immunities Act ("FSIA"), Congress determined and codified that the public interest requires recognition of sovereign immunity to preclude claims aimed against other nations, unless a specific exception to immunity provided in the FSIA is present. The Act of State doctrine also exists precisely because the U.S. public interest is disserved by judicial review of another nation's public acts, especially its law-enforcement process. As also noted earlier, the leading decision on the exercise of admiralty in rem jurisdiction outside U.S. waters points out the perils of issuing injunctions related to salvage claims for shipwrecks in such waters. The opinion warns: "a claim of exclusive judicial action beyond the territorial limits would disrupt the relationship among nations that serves as the enforcement mechanism of international law and custom" and would violate the "well established norm that no nation has sovereignty over the high seas." R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 968 (4th Cir. 1999).

Specifically with regard to Spain's rights in sunken vessels and property, the Fourth Circuit has made abundantly clear that the public interest mandates recognition of those rights:

> It bears repeating that matters as sensitive as those implicate important interests of the executive branch. Courts cannot just turn over the sovereign shipwrecks of other nations to commercial salvors . . . . [N]othing in the law of admiralty

suggests that Spain has abandoned its dead by respecting their final resting place at sea.

<u>Sea Hunt, Inc. v. Kingdom of Spain,</u> 221 F.3d 634, 647 (4th Cir. 2000).  Accordingly, the balance of interests and the public interest weigh in favor of denying Odyssey's motion.

> D.    *Odyssey Has Shown No Need for Injunctive Relief In Any Event.*

Even if Odyssey's motion were well-founded in all other respects, it should be denied in any event because Odyssey has shown no reason why preliminary injunctive relief is actually needed.  Odyssey admits that "no other salvor is currently working on the Defendant Site." <u>Preliminary Injunction Motion</u> at 4.  Odyssey further notes that it knows of no one who has conducted salvage operations "on the Defendant Site or in the general area." <u>Id.</u>  Odyssey also makes no claim that there is anyone who intends to do so: it is "not aware of any other party . . . that has sought a salvage claim, or that has attempted to reduce the Defendant Site to its possession." <u>Id.</u> at 15.  Odyssey has identified no present or real threat of injury to the shipwreck of any kind, whether by any "rival salvor" or anyone else.

Odyssey also has announced that it has no intention as of now to return to the site and cannot say when it might.  In a May 18, 2007 press release, Odyssey announced that it is "holding off further excavation" and it is only at some unidentified future point that "we will develop the archaeological plan for additional excavation and recovery." Odyssey, Press Release, Black Swan Frequently Asked Questions (FAQ) (May 18, 2007), http://shipwreck.net/bswfaq.html.

Preliminary injunctive relief may not be based on unsupported and speculative hypothetical scenarios.  In the Eleventh Circuit decision in <u>Siegel v. Lepore</u>, 234 F.3d 1163 (11th Cir. 2000) on which Odyssey relies for the elements for preliminary injunctive relief, the court

cautioned that the "sine qua non" for such a motion is a showing of a "substantial likelihood of irreparable harm." 234 F.3d at 1776. The "asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Id. Odyssey's motion shows the opposite. Accordingly, it should be denied.

* * *

For all of the above reasons, Spain respectfully submits that Odyssey's motion should be denied. In view of the foregoing, Spain respectfully submits that the only order which should issue in response to Odyssey's motion is that Odyssey be directed during the pendency of this case not to disturb the shipwreck further by salvage or other operations without approval of the court.

Dated: September 19, 2007   s/ James A. Goold
            James A. Goold
            District of Columbia Bar # 430315
            Covington & Burling LLP
            1201 Pennsylvania Ave., NW
            Washington, DC 20004
            Telephone: (202) 662-5507
            Fax: (202) 662-6291
            E-mail: jgoold@cov.com

            David C. Banker
            Florida Bar # 352977
            Bush Ross, PA
            220 S. Franklin Street
            P.O. Box 3913
            Tampa, Florida 33601-3913
            Telephone: (813) 224-9255
            Fax: (813) 223-9255
            E-mail: dbanker@bushross.com

<u>Certificate of Service</u>

I hereby certify that I caused the attached Opposition of the Kingdom of Spain to Motion

for Order Granting Preliminary Injunctive Relief in Case No. 8:07-cv-00614-SDM to be served

via the Court's CM/ECF system this 19th day of September, 2007.

James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com