UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

| | |
|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : |
| | : Case No: 8:07-cv-00614-SDM-MAP |
| THE UNIDENTIFIED, SHIPWRECKED VESSEL, if any, its apparel, tackle, appurtenances and cargo located within a five mile radius of the center point coordinates provided to the Court under seal, | : |
| Defendant; | : |
| *in rem* | : |
| and | : |
| The Kingdom of Spain and the Republic of Peru, | : |
| Claimants, | : |
| and | : |
| Gonzalo de Aliaga (the Count of San Juan de Lurigancho), et al., Santiago de Alvear, et al., Elsa D. Whitlock f/k/a Elsa Dorca Ruiz, Jose Antonio Rodriguez Menendez aka Joseph Anthony Rodriguez, and Dr. Jaime Durand Palacios | : |
| Claimants. | : |
| _____/ | : |

## PLAINTIFF, ODYSSEY MARINE EXPLORATION, INC.'S RESPONSE TO THE KINGDOM OF SPAIN'S REPLY TO ODYSSEY'S RESPONSE TO SPAIN'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), pursuant to the Court's order of February 3, 2009, and files this Response to Claimant Kingdom of Spain's Reply to Plaintiff's Opposition to Motion to Dismiss or for Summary Judgment (Dkt. 163) and in support thereof states as follows:

1. With few exceptions, despite the 30 page pleading and over 500 pages of additional affidavits and exhibits, Spain's Reply is basically a reiteration of the allegations made in its initial Motion to Dismiss (Dkt. 131). Spain's claim rests solely on circumstantial evidence which is wholly inadequate to support the relief it seeks.

2. Contrary to Spain's initial assertions that a vessel was located at the site or was buried in inches of visible sediment or was somehow discernable from a virtual piecing together of wood fragments and gravel, Spain's Reply does, for the first time, acknowledge the lack of a vessel at the Defendant Site. ("There is no reason for there to be a coherent vessel." (Dkt. 163, pp. 11-12)).

3. Also for the first time, Spain acknowledges the private property aboard the *Mercedes*, but implies that it compensated individuals who suffered losses as a result of its demise.[1] Spain's novel assertion in this regard is historically inaccurate. Furthermore, the mere acknowledgement by Spain that it would consider claims made by those who owned property aboard the *Mercedes* is an admission that it did not consider that property to be its

---

[1] Exhibit E to Odyssey's Response (Dkt. 138-31) mentions claims for losses from the *Mercedes* which were "recognized" by the Spanish government; however, there was no allegation at that time that any actual consideration was ever given by Spain to private individuals.

own sovereign property. Spain may not now take a contrary position in an attempt to deny that this Court has jurisdiction over the subject *res*.

4. The issue before the Court on Spain's Motion to Dismiss or for Summary Judgment is related only to the potential sovereign nature of the property before it. Nevertheless, rather than offering proof of any ownership interest in the actual *res* before the Court, Spain begs the Court to conclude that an absent vessel (and all the private property aboard it) is the sovereign property of Spain and therefore the entire *res* in this case is immune from its jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). The *res* in this case is not "the *Mercedes*," and even if such a fiction were to be created, neither the *Mercedes* nor the cargo she carried should be considered the sovereign property of Spain so as to defeat this Court's jurisdiction.

## MEMORANDUM OF LAW

### A. Burden of Proof

Spain realleges that the burden of proof as to the Motion to Dismiss is on Odyssey. This is incorrect. The ultimate burden of proof to show that this case should be dismissed under the FSIA is on the moving party. That is Spain. This issue is addressed in Odyssey's Response to the motion as well as in Peru's Response. Spain's suggestion that there is no existence of evidence in the record which supports the essential elements of Odyssey's claim (Dkt. 163, p. 4) is unreasonable and untrue. Odyssey has presented overwhelming evidence that it is entitled to a legal interest in the property recovered either under the law of finds (should no claimant present credible evidence of ownership) or under the law of salvage (should a claimant, in fact, prove an ownership interest in all or part of the *res*). By contrast,

Spain clearly has not met its burden of proof to show that Spain, and Spain alone, is the owner of the entire *res* and that this Court's jurisdiction is precluded under the FSIA.

**B.     Sovereign Immunity in this case**

The sole issue to be decided under Spain's Motion to Dismiss is whether under the FSIA (28 U.S.C. Sections 1602–1611), this case must be dismissed for lack of jurisdiction of the Court over the Defendant *res*. In its most recent pleading, Spain does provide more specificity regarding its reliance upon the statute in support of its motion. Spain relies solely upon section 1609 of the statute to argue dismissal of the case. Clearly, however, section 1609 does not apply in this case because the entire Defendant *res* is not indisputably "the property of a foreign state." Furthermore, even if Spain could prove such, the FSIA provides an applicable exception, 28 U.S.C. Section 1605(b), for "suits in admiralty" (which this claim is), to "enforce a maritime lien against a vessel or cargo of a foreign state" (assuming Spain's ownership, such lien would have arisen when Odyssey successfully salvaged the subject property), "which maritime lien is based upon a commercial activity of the foreign state" (if Spain is correct that the subject property came from the *Mercedes*, Spain was engaged in a commercial activity related to this *res*).[2]

When Spain finally addresses the FSIA on page 13 of its 30 page Reply, it alleges that "Odyssey acknowledges the *Mercedes* as Spanish 'government-owned...at the time of its sinking.' This is sufficient in itself to mandate sovereign immunity." (Dkt. 163, p. 13). This allegation is wrong. While Odyssey does acknowledge that the *Mercedes* was "government-

---

[2] The U.S. Supreme Court has held that under the FSIA a foreign sovereign's actions are "commercial" when it acts as a private player would within a market. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). *See also Guevara v. Republic of Peru*, 468 F.3d 1289 (11th Circuit, 2006) and *Letelier v. Republic of Chile*, 748 F.2d 790 (2nd Cir. N.Y. 1984). There is no dispute as to the notice provisions in section 1605(b).

3

owned," Odyssey also acknowledges the following: (1) Odyssey has not recovered or disturbed the *Mercedes* or any vessel; (2) there is insufficient evidence to prove that the vessel related to the Defendant Site is the *Mercedes*; (3) the *Mercedes* was not a sovereign immune vessel; (4) regardless of the status of the vessel, the vast majority of property aboard the *Mercedes* was private property being shipped as freight on a commercial basis; and (5) the *res* in this case, even if related to the *Mercedes*, is not state owned let alone sovereign property subject to immunity under the FSIA.

Spain states, "As a foreign government-owned vessel, **not engaged in commerce**... the *Mercedes* is entitled under section 1609 of the FSIA to immunity from arrest and from claims in U.S. courts." (Dkt. 163, p. 14) (emphasis added). Here, for the first time, and despite its continued rhetoric purporting otherwise, Spain recognizes that the nature of the mission of a vessel does matter for purposes of sovereign immunity. As Odyssey has proven and Spain cannot refute, the *Mercedes* **was** engaged in commerce. *See* Declaration of William Flayhart, Exhibit A hereto. Therefore, even if Spain could prove that the *res* in this case is related to the *Mercedes*, there will be no immunity under the FSIA.

**C.    The *res***

In its Reply, as in its motion, Spain bounces back and forth between arguments and intermingles assertions which relate to the *Mercedes*, the Defendant Site, and the *res* which is in the jurisdiction of this Court. There are several issues of material fact regarding the *res* in this case which will prevent dismissal or summary judgment. Spain wrongfully alleges that there is no dispute that the entire *res* is sovereign and not subject to the Court's jurisdiction. There has been much discussion throughout the pleadings regarding the issue of whether the

4

*Mercedes* should be considered a sovereign immune vessel (and that will be addressed briefly because Spain's historical experts have again erred in their factual analysis). Actually, however, this Court need not make a determination of whether the *Mercedes* was/is a sovereign immune vessel for two reasons. First, Odyssey has not recovered the *Mercedes*; and second, even if the property recovered by Odyssey originated from the *Mercedes*, and even if the *Mercedes* was considered to be a sovereign immune vessel (which it was not), such sovereignty would not transfer to her commercial cargo.

The Court's determination of whether it has *in rem* jurisdiction under the FSIA must turn on an analysis of the potential interests in the *res* which has been brought before it. **The FSIA has never been applied to deny the jurisdiction of a U.S. court over cargo recovered from the ocean floor.** This is not a case in which a clear sovereign vessel has sailed into a U.S. port and is seized and a lien attached. Spain cites several cases in its Reply and implies that they stand for the proposition that the FSIA will apply when they "relate to commercial vessels with no military connection whatsoever." The implication is misleading. The cases cited are easily distinguishable. They address identified, sovereign vessels in possession of the sovereign, not property recovered from the bottom of the ocean. Possession is a requirement for FSIA applicability. Also, each case involves attachment of a lien for damage claims against a sovereign. Odyssey has not brought a tortious claim against a state or a state owned vessel in this case.

In this case there are many, many factual issues which are disputed as to the ownership rights of the property which has been brought before the Court. There is no dispute that the property is **not** a vessel. In fact, Spain now concedes such. Spain's argument is that the

property before the Court came from a sovereign vessel and thus must also be sovereign. Assuming the *res* in this case is related to the *Mercedes*, this argument flies in the face of clear evidence demonstrating otherwise including the manifest of the *Mercedes* which shows that the vast majority of her cargo was privately owned. (Dkt. 138-30; Dkt. 138-31, p. 15, n. 33; Dkt. 138-62). Spain's bold assertion, moreover, fails to give any credence whatsoever to the claims of those who are also parties in this litigation and who assert an ownership interest in the *res*.

Spain's erroneous assumption that the *res* in this case is indisputably identifiable as the *Mercedes* also ignores evidence suggesting that the Defendant Site is **not** that of the *Mercedes*. (Dkt. 138-3; Dkt. 138-28; Dkt. 138-30). For example, ironically enough, is the attachment to Spain's own Reply (Dkt. 163-10, p. 60), which Spain chose not to translate. It refers to what can be understood as the sinking of the *Mercedes* occurring on the 5th of October "within the view of Cape Santa Maria, and thinking to enter into Cadiz." This corroborates the evidence previously produced by Odyssey with its Response that the *Mercedes* sunk within view of land. (Dkt. 138-3, p. 61). The Defendant Site, by contrast, is beyond the view of land, and the view therefrom does not correspond in any way to the landscape view from the site as described by Diego de Alvear, an eyewitness to the sinking of the *Mercedes* (138-27, Annex 22.2).[3] Spain either intentionally or ignorantly asserts, moreover, that "design details" such as the dolphin figures on cannon seen at the site were unique to the *Mercedes*. (Dkt. 131, p. 15; Dkt. 163, p. 10). Interestingly, cannon from HMS *Victory*, a British warship, which Odyssey in cooperation with the United Kingdom just recently recovered, sport the very same dolphin

---

[3] Failing to recognize Odyssey's discussion of location, Spain argues that Odyssey has not addressed its expert declarations which imply that the Defendant Site is exactly where Spain knew the *Mercedes* to have gone down. This assertion needs no response, especially given the fact that Spain, in its own pleadings, cites several references indicating that the *Mercedes* went down within clear view of land. (Dkt. 131-8, p. 66; Dkt. 131-6, p. 5; Dkt. 131-5, p.7). The subject site is not with view of land.

6

motif; yet these were clearly British cannon manufactured in England. (*See* Exhibit B attached hereto). Basic research into armament of the period shows that bronze cannon of many different nations featured these same dolphins.

**D.     Sovereign immunity of the *Mercedes***

Much of Spain's Reply is dedicated toward an argument that the *Mercedes* was not a vessel under the regimen of the Correos Maritimos, or Maritime Cargo Service. Evidence presented by Odyssey demonstrates otherwise.[4] Spain repeatedly asserts that Odyssey denies the *Mercedes* was a "naval vessel." Even a cursory reading of the pleadings will show that this is not true. Unlike Spain, Odyssey has presented all relevant historical evidence including the fact that the *Mercedes* was on the naval registry, which addresses ownership but not the nature of its mission, an element critical to establishing sovereign immunity. Spain fails to acknowledge that the Correos Maritimos, a civilian operation, commissioned the Navy to transport private cargo for pay. The nature of such missions involved a substantial commercial component. As such, the vessel and her crew no longer enjoyed sovereign immunity as demonstrated by the regulation changes and notice (Dkt. 138-31, pp. 16-19; Dkt. 138-64, pp. 3-9). Spain underscores the *Mercedes*' final mission as "military." Whether the mission had a "military" element or not, and whether the *Mercedes* was or was not actually in the service of the Correos Maritimos, however, are irrelevant to the main issue regarding sovereign immunity; and that is whether the nature of the vessel's mission at the time of her demise was **exclusively** "noncommercial." Throughout its pleadings, Spain

---

[4] Evidence presented by Odyssey that the *Mercedes* sailed under orders of the Correos Maritimos is addressed in Exhibits E and F to Odyssey's Response (Dkt. 138-31; Dkt. 138-64), and Exhibit A hereto.

concedes that the mission was commercial in nature.[5]

E.  **Spain's claim that compensation was paid**

Attached to Spain's Reply is the Royal Order 24th August 1824 indicating that compensation was offered in line with the "*paternal purposes of His Majesty on the indemnification of his subjects for these losses......*" (Dkt. 163-10, p. 24). Although this declaration, which is not an official document, is an indication that claims would be considered, in fact, there is no evidence that Spain ever paid any compensation to individuals who suffered losses as a result of the *Mercedes*' demise. It is clear from the documentation exhibited by Spain that if any payment had been made to any party relating to the *Mercedes*, there would have existed an "administrative file" relating to each individual claim with a corresponding official file number which would record the claim made by the family, the documents submitted in support of such a claim and any ensuing correspondence and payment (including any signed receipt for payment). It is significant that despite its claim, Spain has not presented any such supporting documentation. Moreover, an *ex gratia* payment in such circumstances, on its face, would not create rights of subrogation. Without reference to an express right to subrogate, the Spanish State cannot simply presume to take that right, and the legislation exhibited by Spain makes no reference to the State enjoying rights of subrogation of any kind following payment of compensation.

Finally, compensation to individuals who suffered a loss of their own private property, and even the mere notice of an intent to compensate, clearly demonstrates that

---

[5] Spain even acknowledges the laws which require there to be a noncommercial mission, even of a military vessel, for a finding of sovereign immunity. Spain specifically sites, for example, 10 U.S.C. §113 note, § 1408(3)(A) which refers to "warships," but Spain ignores the language of that statutory note which requires vessels to be "on military **noncommercial** service." (Dkt. 163, p. 20).

8

Spain did not consider all of the cargo which was lost on the *Mercedes* to be Spanish sovereign property.[6] Spain cannot now succeed in asserting the contrary position (that the *Mercedes* and all her cargo were the sovereign property of Spain) in an attempt to deny the jurisdiction of the U.S. Court under the FSIA. At the very least, the issue presented as to Spain's rights versus those of the Descendant Claimants, is factually disputed and must prevent dismissal or summary judgment.

F.  **Private property aboard a sovereign vessel will not be considered sovereign**

Spain continues to deny the distinction between vessel and cargo, relying instead on the argument that a master can refuse salvage for the vessel and her cargo in cases where a vessel is in peril and to interfere with her cargo would jeopardize the vessel. As Odyssey has previously briefed, (Dkt. 162-1 at 14), the U.S. Supreme Court has held that a master can only refuse salvage when he is in actual possession and command of the vessel. *See The LAURA*, 81 U.S. (14 Wall.) 336, 344-45 (1871). Just as pertinently, the Supreme Court has recognized a distinction between a sovereign vessel and its private cargo. In *The Santissima Trinidad*, 20 U.S. 283 (1822), the Court recognized the sovereign immunity of the subject vessel, but, ironically enough, the Court agreed with Spain's argument in that case that immunity did not extend to its private cargo stating "...whatever may be the exemption of the public ship herself, and of her armament and munitions of war, the prize property which she brings into our ports is liable to the jurisdiction of our Courts..." *Id.* at 354.

The only issue of sovereign immunity which could be relevant to this case is whether

---

[6] Also, Spain's own documentation refers to the *Mercedes* as a "prize" of England, and Spain does not dispute that England's "taking" of the *Mercedes* is what led Spain to declare war two months later. As a prize, Spain's ownership of the ship and any of its cargo would have ceased, and title would then have gone over to its captors (assuming any title or rights would have existed at all upon the disappearance of the vessel).

9

any particular property recovered from the Defendant Site is property legally owned by a sovereign state which has not been abandoned,[7] and to which salvage rights have been effectively denied; and even assuming Spain could prove the existence of such sovereign immune property in this case, such would not be dispositive of the case on a Motion to Dismiss or for Summary Judgment because the vast majority of cargo recovered (assuming it came from the *Mercedes*) was clearly private property. If, in fact, this Court makes the determination that the cargo recovered from the Defendant Site came from the *Mercedes*, it must consider that owners of that property have **not** refused salvage, and have specifically conceded that Odyssey is entitled to a liberal salvage award for its efforts in the recovery.

## G.  Relief requested

Spain wrongfully asserts that Supplemental Rule E (5) allows the Court to deny its jurisdiction yet "order the return of the *res* to the rightful custodian." The rule says no such thing. Rather, it addresses **release** of property to an owner who was in possession in return for a bond sufficient to satisfy the plaintiff's claims as to that *res*. This Rule has no bearing on the matter before this Court, and absent jurisdiction, there is no legal method for the Court to order transfer of the *res* to Spain.

There is no question as to whether this Court has jurisdiction over the *res* in its custody and the right and duty to adjudicate the interests therein of all parties proving claims thereto. Spain's Motion must be denied and the Court must take firmly in its hand the resolution of this matter in the best interest of justice.

---

[7] Spain argues that Odyssey does not contest its assertion that it has not abandoned the vessel. This, too, is incorrect. Odyssey asserts, and this Court has agreed, that abandonment may be implied from the circumstances. (Dkt. 162, pp. 12-13).

Dated: 2/13/09

Respectfully submitted,

/s/

Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@bankerlopez.com
Banker Lopez Gassler P.A.
501 E. Kennedy Blvd.
Suite 1500
Tampa, FL 33602
(813) 221-1500
Facsimile: (813) 222-3066

and

Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net
Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13th, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL 33601, *Attorneys for Claimant, Kingdom of Spain;* and Timothy P. Shusta, Phelps Dunbar LLP, 100 S. Ashley Drive, Suite 1900, Tampa, FL 33602-5315; and Mark Maney, South Tower, Penzoil Place, 711 Louisiana, Suite 3100, Houston, TX 77002, *Attorneys for Claimant, Republic of Peru*; David Paul Horan, Horan, Wallace & Higgins, LLP, 608 Whitehead Street, Key West, FL 33040, *Attorney for Descendant Claimants*; John J McLaughlin, Wagner, Vaughan & McLaughlin, P.A., 601 Bayshore Blvd., Ste. 910, Tampa, FL 33606, *Attorney for Descendant Claimants*; Marlow V. White, Lewis & White, P.L.C., P.O. Box 1050, Tallahassee, FL 32302, *Attorney for Claimant, Elsa D. Whitlock;* Guy E. Burnette, Jr., 3020 N. Shannon Lakes Dr. Tallahassee, FL 32309, *Attorney for Claimant, Dr. Jaime Durand Palacios,* and by email to Joseph A. Rodriguez, *Pro Se/Unrepresented Party*, Email: expertdoctor@aol.com.

Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@bankerlopez.com
Banker Lopez Gassler P.A.
501 E. Kennedy Blvd.
Suite 1500
Tampa, FL 33602
(813) 221-1500
Facsimile: (813) 222-3066

and

Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net