UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.,

        Plaintiff,

        v.                                                                  Case No: 8:07-cv-614-T-23MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, if any, its apparel, tackle,
appurtenances and cargo located within a five
mile radius of the center point coordinates
provided to the Court under seal,

        Defendant;
        *in rem*

and

THE KINGDOM OF SPAIN *et al.*,

        Claimants.
_____/

**PLAINTIFF ODYSSEY MARINE EXPLORATION, INC.'S OPPOSITION TO THE UNITED STATES'S MOTION FOR LEAVE TO FILE STATEMENT OF INTEREST &amp; *AMICUS CURIAE* BRIEF (DOC. 239) OR, IN THE ALTERNATIVE, UNOPPOSED MOTION (ON BEHALF OF ITSELF AND CERTAIN CLAIMANTS) FOR LEAVE TO FILE RESPONSE TO STATEMENT OF INTEREST &amp; *AMICUS CURIAE* BRIEF (DOC. 239-2)**

Following Magistrate Judge Mark A. Pizzo's June 3, 2009, Report and Recommendation (the "R&R") (Doc. 209) on claimant Kingdom of Spain's motion to dismiss or for summary judgment based on asserted lack of subject-matter jurisdiction ("Spain's Motion") (Doc. 131), plaintiff Odyssey Marine Exploration, Inc. ("Odyssey") filed its objections to the R&R ("Odyssey's Objections") (Doc. 230). On August 31, 2009, Spain

1

filed its response to Odyssey's Objections ("Spain's Response") (Doc. 236). The U.S. Department of Justice filed the Motion of United States for Authorization to File Statement of Interest and Amicus Curiae Brief in Support of Kingdom of Spain (the "U.S. Motion") (Doc. 239) and attached to it the Statement of Interest and Brief of the United States as Amicus Curiae in Support of the Kingdom of Spain (the "U.S. Brief") (Doc. 239-2). The U.S. Brief is authored by and supported with declarations and affidavits issued by federal Executive Branch agencies, and significantly, as stated in the Congressional correspondence attached as Exhibit 1 to this filing, at least some federal legislators oppose the Executive Branch's attempt to interject itself in this case.

As discussed below, the U.S. Motion should be denied and the U.S. Brief stricken. Notably, there is no evidence whatsoever that the United States has an actual interest in any of the *res* at stake in this case or that the outcome of the pending substantive issue – whether the Court has subject-matter jurisdiction – will have any effect on it. Nor does the United States (or, more precisely, the Executive Branch) have any unique or special insight into the legal issues – let alone the factual determinations – the Court must consider to resolve this matter. Instead, the Executive Branch seeks to interject itself to advocate that the Court treat Spain the way the United States would want to be treated in Spain's courts. As discussed below, however, Spain's Motion must be resolved in accordance with established U.S. law. If the Executive Branch believes the current state of that law is inconsistent with its desires, then it should petition Congress, not this Court, for change.

If the Court permits filing of the U.S. Brief, then Odyssey, on behalf of itself and all individual claimants[1], respectfully requests leave to file responses to that brief within 30 days after an order on the U.S. Motion. Odyssey likely will also need to conduct discovery relating to the U.S. Brief.

## ARGUMENT

The only relevant substantive motion pending in this case is Spain's Motion, so the primary issue before the Court is whether it has subject matter jurisdiction to adjudicate claims relating to the *res* (the majority of which, the record evidence indisputably shows, consists of private interests' – not Spain's – gold and silver coins, bars of tin and copper, and other artifacts) or whether jurisdiction is precluded by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* (the "FSIA").[2] As shown below, that issue ultimately involves resolution of factual and legal questions that are governed by U.S. law and do not implicate any interests of the Executive Branch that warrant its interjection.

### I. THE U.S. MOTION SHOULD BE DENIED BECAUSE THE EXECUTIVE BRANCH'S EXPRESSED INTERESTS ARE NOT RELEVANT TO THE COURT'S DETERMINATION OF WHETHER IT HAS SUBJECT-MATTER JURISDICTION

The Executive Branch contends it has "substantial policy interests" in this litigation. U.S. Mot. 1. It predicates those interests "upon the pledges made by the United States and Spain" in the 1902 Treaty of Friendship and General Relations between the two nations (the

---

[1] "Individual claimants" refers to all claimants in this case except Spain and Peru.

[2] Although Spain also moved for an order to show cause why the arrest should not be vacated (Doc 132), that motion also is based on an asserted lack of subject-matter jurisdiction.

"1902 Treaty")[3] and asserts "a strong interest in fostering the reciprocal treatment the terms of the 1902 Treaty require Spain to afford to U.S. submerged vessels" because of the many U.S. warships lost at sea, the importance of vessel remains and cargo and equipment, and the possibility that wreck sites are graveyards. *Id.* at 1, 2. In other words, its asserted interest is having this Court treat Spain the way the United States would want to be treated in Spanish courts. *See id.* at 2 ("By supporting Spain, the United States seeks to ensure that its own sunken warships and lost crews are treated as sovereign ships and honored graves, and are not subject to unauthorized exploration or exploitation."); *id.* at 2-3 (noting that because the Executive Branch expects an increase in "the number of situations . . . in which the United States will need to call upon other States for assistance, protection, and immunities[,] . . . in order to satisfy its obligations under international law and encourage comparable treatment by other States of our vessels, the United States must observe and apply these protections and immunities in order to increase the probability that it will be treated fairly in actions concerning U.S. warships that may be brought in a foreign jurisdiction.").

However, the appropriate focus for the Court is whether it has subject-matter jurisdiction under established U.S. law and not – as the Executive Branch advocates – to resolve the issue in the same way the Executive Branch would want Spanish Courts to resolve it if it involved a U.S. vessel. If the Executive Branch is displeased with the state of U.S. law governing subject-matter jurisdiction in this case, rather than interjecting itself in this case, it should petition the legislature for change.

---

[3] *See* Treaty of Friendship and General Relations, signed at Madrid July 3, 1902, entered into force April 13, 1903, 33 Stat. 2105, T.S. 422, 11 Bevans 628.

Allowing the Executive Branch's interjection under these circumstances – especially in light of the opposition from members of Congress (*see* Ex. 1) – would unnecessarily raise the complexity of and significantly prolong this dispute.  Odyssey would be entitled to discovery regarding the Executive Branch's views and, in particular, of its affiants and declarants.  For example, Odyssey would want to depose the declarants and affiants to examine them about inconsistencies between the position advocated in the U.S. Brief and the position adopted by the Executive Branch in other circumstances.  This discovery would be burdensome and would almost certainly raise significant discovery disputes.  The Executive Branch's interjection could also spur other government agencies or officials, including members of Congress, to also try to interject themselves in this case.

The issues currently before the Court are governed by established U.S. law, and that law cannot be interpreted differently simply to suit the Executive Branch's desires.  In determining whether the Court has subject-matter jurisdiction, the relevant issues are:  (1) the applicable standard of review (whether it is the standard imposed by Rule 12(b)(1) or Rule 56 or some other standard); (2) the accuracy and appropriateness of factual determinations made by the Magistrate Judge (including the identity of the vessel that carried the *res*, the identity of the owners of the *res*, and whether that vessel was engaged in commercial activity); and (3) the scope and effect of the FSIA (including whether FSIA Section 1609 confers sovereign immunity on the vessel, whether any such immunity extends to the vessel's privately-owned cargo, and whether Odyssey's salvage claim may proceed under FSIA Section 1605(b) even if blanket immunity applies).

From the U.S. Brief, it appears the Executive Branch seeks leave to address the third issue. *See generally* U.S. Br. When distilled to its essence, the view advocated in the U.S. Brief (and by Spain) is that, presupposing (1) the vessel associated with the *res* is the *Nuestra Señora de las Mercedes* (the "*Mercedes*") and (2) that it is a "warship" (both of which are factual questions that have been vigorously contested by Odyssey), the vessel and all of its cargo (ignoring that most of it is not owned by Spain) should have blanket sovereign immunity under U.S. law and should not be subject to a well-recognized legal rule that government-owned vessels on commercial missions do not enjoy immunity. *See, e.g.*, *id.* at 20.

The determination of the issue the U.S. Brief addresses – like the determination of the other two issues – ultimately involves conclusions of U.S. law and not of any international law or practices that could benefit from the Executive Branch's views. In other words, the Executive Branch would offer no unique or special insight that would held the Court decide whether it has subject-matter jurisdiction. Although FSIA Section 1609 limits the scope of a sovereign's immunity in accordance with international agreements in force when the FSIA was enacted (*see* 28 U.S.C. § 1609), according to both the Executive Branch and Spain, the only international agreement that applies is the 1902 Treaty. *See* U.S. Br. at 5. As the Executive Branch and Spain note, that treaty accords Spanish vessels the same rights accorded to U.S. vessels under the same circumstances. *See* 1902 Treaty, Art. X; U.S. Br. at 5-6, 16, 18. In other words, that treaty merely would require this Court to resolve the question of immunity under U.S. law as though the *res* related to the wreck of a U.S. vessel.

Relevant protections accorded to U.S. vessels under similar circumstances are codified in the Sunken Military Craft Act (the "SMCA").[4] The SMCA extends certain protections, including immunity, only to a "sunken military craft" (*see* SMCA §§ 1401, 1402), so the issue is whether the SMCA's definition of "sunken military craft" would include the *Mercedes* if it was a U.S. vessel.[5] Although the SMCA provides that it should be "applied in accordance with generally recognized principles of international law and in accordance with the treaties, conventions, and other agreements to which the United States is a party" (SMCA § 1406(b)), the main focus here is the basic question of whether the definition of a "sunken military craft" includes all "warships" or only a "warship . . . that was owned or operated by a government on military noncommercial service when it sank." SMCA § 1408(3)(A). At the heart of that question is the SMCA's definition of "sunken military craft," and reaching the answer requires consideration of relevant statutory language and Congressional intent, neither of which justifies interjection by the Executive Branch. In short, it is a matter of how the statute and Congress define "sunken military craft," and not of how it should be defined to suit the Executive Branch's international objectives. Even assuming *arguendo* the Executive Branch could add anything meaningful, the value of its views would be severely undermined by the opposition generated among members of Congress (*see* Ex. 1). The Executive Branch's interjection here would be especially

---

[4] Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, Div. A, Tit. XIV, 118 Stat. 2094 (passed Oct. 8, 2004) (signed into law Oct. 28, 2004) (codified at 10 U.S.C. § 113 notes).

[5] The SMCA defines a "sunken military craft" as a "sunken warship, naval auxiliary, or other vessel that was owned or operated by a government on military noncommercial service when it sank." SMCA § 1408(3)(A).

inappropriate because under fundamental principles of separation of powers, the Executive Branch, unlike Congress, has no right to delineate the Court's subject-matter jurisdiction.

## II. IF THE U.S. MOTION FOR LEAVE IS GRANTED, ODYSSEY AND THE INDIVIDUAL CLAIMANTS SHOULD BE GRANTED LEAVE TO FILE RESPONSES TO THE U.S. BRIEF

In the event the U.S. Motion is granted, Odyssey requests leave, on its behalf and on behalf of the individual claimants, to file responses to the U.S Brief within 30 days of an order granting that motion. The Executive Branch is a new party in this case that seeks to advocate a result for Spain's Motion that conflicts with Odyssey's interests and with the interests of all other claimants except Spain. Because Odyssey and the individual claimants have not previously had an opportunity to address any arguments by the Executive Branch, in the event the U.S. Motion is granted Odyssey and the individual claimants should be given an opportunity to file briefs in response to the U.S. Brief.[6] In its response, Odyssey would, among other things, offer evidence from a former member of the U.S. Department of State and the U.S. Navy Operations Instructions that show that the U.S. Brief's interpretation of legal rules is legally and factually wrong and is inconsistent with the Executive Branch's position in other matters, and that its factual assumptions are unfounded.

---

[6] If the Court defers ruling on the U.S. Motion until it has had some time to consider the substantive arguments made in favor and against Spain's Motion, then Odyssey (on behalf of itself and the individual claimants) respectfully requests leave to file a responsive brief within 30 days of the decision to defer ruling so that if the Court ultimately grants the U.S. Motion, Odyssey (and the individual claimants) will have had an opportunity to respond to the U.S. Brief without having these proceedings further delayed.

## CONCLUSION

For these reasons, the U.S. Motion (Doc. 239) should be denied and the U.S. Brief (Doc. 239-2) should be stricken. In the alternative, Odyssey and the individual claimants should be granted leave to file responses to the U.S. Brief within 30 days of an order granting the U.S. Motion.

## LOCAL RULE 3.01(g) CERTIFICATION

Odyssey has conferred with counsel for the United States, and the United States does not oppose the request for leave to file responses to the U.S. Brief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2009, I electronically filed this document with the Clerk of the Court by using the CM/ECF system and that a true and correct copy will be mailed to non-CM/ECF participant Joseph A. Rodriguez, *pro se*, 4611 South University Drive, Davie, FL 33328-3817, on September 10, 2009.

Respectfully submitted,

s/ Gianluca Morello
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Phone: (813) 228-7411
Fax No: (813) 229-8313

Melinda J. MacConnel, FBN 871151
mmacconnel@shipwreck.net
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
Phone: (813) 876-1776, ext. 2240
Fax No.: (813) 830-6609

Attorneys for Plaintiff Odyssey Marine Exploration, Inc.