UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.,

       Plaintiff,

       v.                         Case No: 8:07-cv-614-T-23MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, if any, its apparel, tackle,
appurtenances and cargo located within a five
mile radius of the center point coordinates
provided to the Court under seal,

       Defendant;
       *in rem*

and

THE KINGDOM OF SPAIN *et al.*,

       Claimants.
_____/

**PLAINTIFF ODYSSEY MARINE EXPLORATION, INC.'S REPLY
TO KINGDOM OF SPAIN'S RESPONSE TO ODYSSEY
MARINE EXPLORATION'S OBJECTIONS TO THE MAGISTRATE
<u>JUDGE'S JUNE 3, 2009, REPORT AND RECOMMENDATION</u>**

Odyssey Marine Exploration, Inc. ("Odyssey") hereby replies to the Kingdom of Spain's ("Spain") Response ("Resp.") (Doc. 236) to Odyssey's Objections ("Objs.") (Doc. 230) to the June 3, 2009, Report and Recommendation ("R&R") (Doc. 209) on Claimant Spain's Motion to Dismiss (Doc. 131). The immediate decision before this Court is whether it has subject matter jurisdiction to adjudicate rights relating to the defendant *res*. Contrary to the R&R's conclusion, Spain has not satisfied its burden of establishing the defendant *res* is subject to sovereign immunity and that consequently this Court lacks subject matter jurisdiction over this matter. Spain asserts that the R&R reflects "careful review of the factual evidence" (Resp. at 4[1]) and that the "Magistrate Judge's factual findings are amply supported" (Resp. at 11). Spain is wrong. In reality, the R&R improperly accepts "facts" as presented by Spain (indeed, much of the language in the R&R is taken word for word from Spain's filings) and dismisses – often without sufficient explanation – the true facts as revealed by the record (or, at a minimum, the existence of factual disputes).

## I. THE R&R APPLIES THE WRONG STANDARD OF REVIEW

Spain asserts that the R&R applied the correct standard of review (Resp. at 6-11) and that "the 'intertwined' exception to the Rule 12(b)(1) standard does not apply in FSIA cases" (Resp. at 7). Each of the Foreign Sovereign Immunities Act (28 U.S.C. § 1602 *et seq*) ("FSIA") cases cited in support of this argument, however, is easily distinguished from this case. The foreign sovereign interest to property at issue was never disputed in those cases. In contrast, here Spain is not a defendant and it has not shown that it owns or otherwise has an interest in all (or even the majority) of the defendant *res*. In fact, the evidence establishes

---

[1] Page numbers in record citations refer to the numbers assigned by the CM/ECF system.

1

that the bulk of the *res* is <u>not</u> owned by Spain, and Spain's immunity cannot displace the Court's jurisdiction to determine which private parties own it.

Spain relies on *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172-73 (5th Cir. 1994), which presents an exception – adopted by no other court – to the rule, when the FSIA is at issue, that the Rule 56 summary judgment standard applies for addressing factual issues dispositive of subject matter jurisdiction when those issues are intertwined with the merits of a case. (Resp. at 8, 9.) Again, however, the relevant defendant in *Moran* was clearly a foreign sovereign. Thus, the sole question in that case was whether an exception to FSIA applied. In contrast, there is no foreign sovereign defendant in this case, nor is a foreign sovereign the clear owner of property before the Court. Spain is but one claimant of many in this case, including another sovereign, Peru, which accepts this Court's subject matter jurisdiction. The question of Spain's rights, if any, necessarily involves a resolution of disputed facts as to its rights versus those of every other claimant. Spain's interest in this case hinges on the ownership of the defendant *res*. The evidence establishes that the defendant *res* is not Spain; the *res* is not the *Mercedes*; and the *res* is not a vessel at all. The crucial question, then, is not whether an exception to FSIA exists – the question in *Moran* – but whether FSIA applies at all to the *res*. By its own language, FSIA § 1609 applies only to the property of a foreign state.

Contrary to Spain's contentions, the Rule 56 summary judgment standard applies because the jurisdictional issues are intertwined with the merits of Odyssey's claims. The Objections identify a number of these issues and the related erroneous findings in the R&R. One of these issues concerns the commercial nature of the *Mercedes*' final voyage. In an

attempt to somehow counter the voluminous undisputed evidence of the *Mercedes'* commercial activities, Spain asserts that the only passengers on board the vessel on its final voyage were the family of Captain Alvear (Resp. at 13). This is not true. In reality, there were at least 24 passengers and as many as 40, only 9 of whom were related to Alvear. (*See* Flayhart Aff. at 12 (Doc. 138-64); Carlisle Aff. ¶ 6 at 9 (Doc. 138-31).) Spain relies on the crew list from the voyage from Callao to Montevideo, not the crew list of the pivotal voyage from Montevideo to Spain (De Leste Decl. at ¶ 21). (*Compare with* Aff. and Report of William Flayhart ("Flayhart Aff.") at 20 (Doc. 131-64) *and* Aff. and Report of Rodney Carlisle ("Carlisle Aff.") ¶ 6 at 9 (Doc. 138-1).) Despite Spain's inaccurate portrayal of these critical factual issues, the R&R accepted and reiterated them and relied on them to reach unwarranted and incorrect conclusions about the nature of the *Mercedes'* final voyage and the application of immunity.

Perhaps most notably, in reaching these conclusions the R&R observed the individual claimants in this case are descendents of people who perished on the *Mercedes* (R&R at 3). In truth, as their claims state, the claimants are descendents of merchants who paid to have their cargo and specie shipped aboard the *Mercedes*. (Docs. 164, 168, 169, 175, 176.) This fact is crucial because, assuming *arguendo* the Court somehow finds the absence of a vessel in this case irrelevant and that the recovered cargo came from the *Mercedes*, the presence of numerous claimants asserting descendancy from merchants who shipped their property aboard the *Mercedes* becomes relevant to the critical conclusion – missed by the R&R – that the *Mercedes* was on a commercial voyage and that descendants of its private cargo's owners are entitled to their ancestors' property which has been recovered by Odyssey. These are

3

critical facts which are intertwined with the merits of the case and which were not carefully considered in the R&R. Contrary to Spain's assertions, Odyssey has presented undisputed competent evidence which supports a finding of jurisdiction over this matter. *See Chalwest (Holdings) Limited v. Samuel L. Ellis*, 924 F.2d 1011, 1014 (11th Cir. 1991) ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss. *Data Disc., Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).")

In arguing the Rule 56 standard does not apply here and thus the R&R properly resolved factual disputes and weighed evidence, Spain asserts the facts of this case are not intertwined with the jurisdictional issues because the FSIA does not provide the basis for Odyssey's claim. This argument is wrong for the reasons discussed in detail in the Objections (Objs. at 24-48). It is also misplaced. This case is an *in rem* proceeding brought by Odyssey to determine the rights, if any, of parties who may have an interest in the *res*. Spain has voluntarily appeared in this case and asserted a claim over the <u>entire</u> *res* based on an allegation of immunity. However, Spain has failed to satisfy its burden of showing (or even to persuasively claim) that it actually has an ownership interest in the *res* at issue. Odyssey's defense to Spain's claim of immunity under the FSIA rests upon the very language of the FSIA which requires the foreign sovereign's ownership of the purportedly immune property (*see* FSIA § 1609) and which allows jurisdiction in admiralty cases when an admiralty lien/salvage award is at issue (*see* FSIA § 1605(b)). Dismissal of the case or summary judgment in favor of Spain under the FSIA, based solely on disputed (if not

controverted) facts and allegations presented by one foreign sovereign who claims to have (but has not shown) some interest in the *res*, would improperly and unjustly strip the descendant claimants (who have alleged actual ownership) and Odyssey (who found and recovered the *res*) of all their rights; rights which have been granted to them under the admiralty jurisdiction of U.S. courts and supported and protected by the FSIA in its clear consideration of such maritime matters. Because the facts regarding the ownership rights of Spain are clearly intertwined with the merits of Odyssey's claim for a salvage award, as careful consideration of those facts show, the FSIA does not remove the Court's jurisdiction to adjudicate rights to the *res*.

## II. THE *RES* DOES NOT ENJOY IMMUNITY BECAUSE EVEN IF IT CAME FROM THE *MERCEDES*, THE VESSEL WAS ON A COMMERCIAL MISSION

### A. Neither the FSIA nor any applicable treaties or statutes ever intended for foreign owned vessels on commercial missions to enjoy immunity from the jurisdiction of U.S. courts.

Perhaps the most glaring factual error in the R&R is the conclusion that the "*Mercedes clearly was not engaged in any commercial activity at the time of its demise.*" (R&R at 27.) Odyssey has provided voluminous undisputed evidence that the *Mercedes* was engaged in substantial and, indeed, predominantly commercial activity. Spain's Response essentially concedes the commercial nature of the voyage of the *Mercedes* and the private ownership of the vast majority of the cargo. (Resp. at 12-14.) However, faced with the consequent unavailability of sovereign immunity protections, Spain attempts to rely on the cloak of general sovereign immunity granted to "warships" and asserts the *Mercedes* and all of its commercial cargo enjoy immunity because the *Mercedes* was a "warship." Spain is legally and factually wrong.

To avoid making duplicate legal arguments, Odyssey refers the Court to its Response to the United States' Statement of Interest and *Amicus Curiae* Brief (Doc. 259) for a discussion of why, as a matter of law, this argument fails. Spain's arguments are also unsupported by the factual record. As an initial matter, Spain claims that "the *Mercedes* remains on the official register of the Spanish Navy" (Resp. at 12, citing R&R at 17; Doc. 131-2, Ex. A (De Leste Decl.) at ¶ 7.) This is simply false. The *Mercedes* does not appear on official Spanish naval registers published after 1804.[2]

Instead of sailing as a warship on its final voyage as Spain contends, the *Mercedes*, like several contemporaneous privately-owned frigates in the port of Callao, was operating as a transport vessel for commercial cargo. The *Mercedes* was carrying a very significant amount of private cargo; its gun decks were re-configured to transport cargo and passengers; and it did not expect military confrontation sailing as a neutral on a non-military mission. (*See* Decl. of Hugo O'Donnell in Support of Spain's Reply at 37 (Doc. 163-9), quoted by Objs. at 21.) Additionally, the commercial nature of the voyage is demonstrated by the detailed receipts for the shipment of the goods identifying the shippers, the owners and the intended recipients of the private cargo, as well as the amount paid for freight. (Carlisle Aff. ¶¶ 16-18 at 26-28 (Doc. 138-31); Ex. 1, Morello Decl. (Doc. 232-2).) (*See also*, Ex. 2, Morello Decl. (Doc. 232-3) for examples of the receipts which show the detail with which they were prepared and customs certifications.) These receipts were prepared and signed by

---

[2] Odyssey has examined representative copies of "Estado General de la Armada" from the years 1805–1920 and the "Curatel General de la Armada," from 1983-1995, which are official Spanish naval records, and the *Mercedes* does not appear in these documents at all. Spain's "expert" De Leste's representation to the contrary is wrong. The document carelessly purported by De Leste to represent the current "official register" is, in fact, simply an unattributed list of ships titled "Master List of Vessels, Working Document No.1" authored by some unknown party with no official designation, no reference to naval vessels, and no attribution whatsoever.

a <u>civilian</u> silver master under the auspices of the Customs authority. (Ex. 2, Morello Decl. (Doc. 232-3) at 1, 2; Carlisle Aff. ¶¶ 16-18 at 26-28 (Doc. 138-31); Flayhart Aff. at 12, 13 (Doc. 138-64).) The availability for commercial transport on all these vessels was published in Callao. Public notice of the acceptance of commercial shipment aboard the government frigates at Callao was issued by the Merchant Guild of Lima. The cargo summaries prepared at Callao by the Customs officials clearly show that *Mercedes*, *Fama* and *Clara* were engaged in precisely the same activities as the private commercial vessels in port at the same time. (Carlisle Aff. Annex 31 (Doc. 138-62) (translated version, Ex. 4, Morello Decl. at 5, 6 (Doc. 232-5)).) The nature of the cargo of the *Mercedes*, and the civilian processes and authority governing the transport of such, including the freight charged, was no different than that of the contemporaneous privately owned and operated merchant vessels in Callao.

Spain's attempts to morph the clear commercial voyage of the *Mercedes* into an exclusively military one by contending that she was being used to protect Spanish commerce (Resp. at 13) and by mischaracterizing the historical circumstances surrounding the *Mercedes'*s final voyage in 1804 also fail. Although the R&R accepts Spain's interpretation of the historical context, as shown above and in the Objections, Odyssey has presented compelling evidence establishing the true facts of the commercial mission of the *Mercedes*. In short, no matter what Spain says, the evidence establishes the *Mercedes* was on a commercial voyage and thus was not protected by sovereign immunity under the FSIA.

    **B.**    **The recovered cargo must be considered separate from a vessel.**

Regardless of the nature of the *Mercedes*, including whether it was a "warship," its privately-owned cargo must be considered separately from the vessel, and the Court has

jurisdiction to adjudicate rights to that cargo. As discussed in the Objections, it appears the underlying error of the R&R in extending immunity to private parties' property transported as cargo aboard the *Mercedes* stems from the misunderstanding and misapplication of the "unified *res*" theory. This is a legal fiction created by courts sitting in admiralty to <u>obtain jurisdiction</u> over a shipwreck site and all artifacts recovered therefrom. The unified *res* theory was developed for the exact purpose of providing U.S. courts with jurisdiction to adjudicate the rights of all concerned parties who claim an interest in items recovered or located at a site when the court lacks physical jurisdiction over the site itself. The R&R cites this proposition, as it was discussed in *R.M.S. Titanic* (R&R at 23), yet it misunderstands the purpose of the precept. The "unified *res*" theory has been used <u>only to invoke</u> the jurisdiction of admiralty courts, thus <u>preserving</u> the rights of salvors and other claimants to the protection and justice of that court.

  The R&R misapplies this theory and, in a completely novel twist, uses it to conclude this Court lacks subject matter jurisdiction over items recovered from the surface of the seabed because the Court would not have jurisdiction over a vessel which, although not present at the site, may have once carried the items. There is no valid legal basis for such a conclusion. To the contrary, adjudication of rights to items found separate from and unassociated with any vessel, and removed from the ocean bottom, is contemplated and even required under this Court's admiralty jurisdiction. *See* <u>Broere v. Two Thousand One Hundred Thirty-Three Dollars</u>, 72 F.Supp. 115 (E.D.N.Y. 1947). In fact, the adjudication of the alleged rights is the very basis for U.S. admiralty court jurisdiction. The unified *res* theory was never meant to – and has never been used to – strip salvors and private cargo

owners of their rights simply because the recovered cargo may once have been aboard a vessel owned by a foreign sovereign.

Spain contends, and the R&R concludes, that rights to cargo should not be considered separately from rights to the vessel upon which it was carried. Odyssey has cited a number of cases and other authority demonstrating that this legal conclusion is wrong. (*See* Objs. at 33-45 (noting Spain's own contrary argument presented in another case before this Court (Objs. at 41, 42 (Doc. 230))).) Even in *Titanic*, upon which the R&R relies, the court specifically addressed and separated the rights of various cargo owners from those of the vessel owner. *See* 531 F. Supp.2d 691, 692-93. Specifically as to shipwrecks, the *Titanic* court appears to reason that jurisdiction is, at most, a collateral effect of the arrest, neither the purpose nor the result, and that true jurisdiction is limited to the *res* within the physical jurisdiction of the Court. *See R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 435 F.3d 521, 530 (4th Cir. 2006).

The arrest in this case was *not* to establish jurisdiction (as it was in *Manggatu v. M/V Ibn Hayyan*, 35 F. 3d 205 (5th Cir. 1994), cited in the R&R), but rather to secure Odyssey's interest in the *res* that arose with its successful salvage efforts and to provide notice and a forum for adjudication of potential claims. The arrest was not a requirement for Odyssey to recover the *res*; instead, it secures Odyssey's interest, in the form of a maritime lien (as addressed in FSIA § 1605(b)), in a forthcoming judgment as to the property it has recovered, property which clearly does not include a vessel. The ownership of the property recovered was unknown at the time of the arrest, and still has not been established. This Court has jurisdiction over this matter to determine those ownership rights.

### III. <u>CONCLUSION</u>

Because the Court has subject matter jurisdiction over this matter or, at best for Spain, disputed jurisdictional facts are intertwined with the merits of the case, the case cannot be dismissed and summary judgment cannot be entered in favor of Spain. The evidence which Odyssey has presented, and which the R&R does not adequately consider or which it wrongfully dismisses, establishes the following: there is no vessel at the defendant site; the *res* in this case is not a vessel; the *res* in this case is not the *Mercedes*; the *Mercedes* was on a commercial mission at the time of her demise; and recovered cargo, if from the *Mercedes*, was privately owned.

The supported legal conclusions as presented by Odyssey include the following: the Court's admiralty jurisdiction allows it to determine the rights claimed by all parties and claimants; the FSIA only exempts property owned by a foreign sovereign from the jurisdiction of the court; the FSIA specifically considers and permits this Court's admiralty jurisdiction over cases exactly like this one; government vessels on commercial missions were never intended to enjoy sovereign immunity; and rights to property aboard a sunken vessel can and must be determined separately from the vessel itself (especially when there is no vessel).

For these reasons and those stated in the Objections, Odyssey's Objections to the R&R should be sustained and Spain's motion to dismiss or for summary judgment should be denied.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 15, 2009, I electronically filed this document with the Clerk of the Court by using the CM/ECF system and mailed a true and correct copy to non-CM/ECF participant Joseph A. Rodriguez, *pro se*, 4611 South University Drive, Davie, FL 33328-3817.

                                                Respectfully submitted,

                                                s/ Gianluca Morello
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Phone: (813) 228-7411
Fax No: (813) 229-8313

Melinda J. MacConnel, FBN 871151
mmacconnel@shipwreck.net
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
Phone: (813) 876-1776, ext. 2240
Fax No.: (813) 830-6609

Attorneys for Plaintiff Odyssey Marine Exploration, Inc.