UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
In Admiralty

ODYSSEY MARINE EXPLORATION, INC.,

        Plaintiff,

vs.                               CASE NO. 8:07-CV-00614-SDM-MAP

THE UNIDENTIFIED SHIPWRECKED
VESSEL, etc.,

        Defendant,
        *in rem*

and

THE KINGDOM OF SPAIN, et al.,

        Claimants.
_____/

## CARGO CLAIMANTS WHITLOCK AND DURAND'S REPLY TO SPAIN'S RESPONSE IN SUPPORT OF MAGISTRATE'S REPORT

Cargo Claimants Whitlock and Durand's objection to the Magistrate's Report (Doc. 246) recommending dismissal of Odyssey's admiralty action for lack of jurisdiction under the Foreign Sovereign Immunities Act (FSIA), but then upholding jurisdiction to take the entire *res* of 594,000 coins, including those owned and claimed by Cargo Claimants, and award them to Spain who was not in possession of the coins nor shown or found to be the owner, is discussed at the end of this Reply. Initially, Cargo Claimants reply to the assertions of Spain in its Response and then the statement of interest by the United States.

Cargo Claimants maintain that the only *res* over which this Court has actual, not merely constructive, possession and admiralty jurisdiction is the recovered salvage of cargo that includes some 594,000 coins to which Cargo Claimants assert an interest. For purposes of Article III, this

is the controversy before this Court. Based upon Supreme Court and Eleventh Circuit precedent, the Magistrate should have concluded that existing admiralty jurisdiction over the maritime claim to the recovered cargo was not ousted by principles of sovereign immunity and the FSIA.

Spain's entire immunity argument, adopted by the Magistrate's Report, is predicated upon the *res* at issue being the vessel MERCEDES. The sovereign immunity of the vessel and the attempt to invoke sovereign immunity as to the cargo are two separate and entirely distinct issues. The sovereign immunity of the vessel does not thereby confer sovereign immunity on the cargo, as the Supreme Court has expressly recognized. See discussion of *Santissima Trinidad*, 20 U.S. 283 (1822), in Cargo Claimants' Objection to Report [Doc. 227, pp. 13-14]; and, also, discussion of *In re the Amistad*, 40 U.S. 518 (1841), in Peru's Objection to the Magistrate's Report [Doc. 231, p. 24]. As Chief Justice Marshall ruled in *The Nereide*, 13 U.S. 388, 431 (1815), "[t]he characters of the vessel and cargo remain as distinct in this as in any other case."

Contrary to the Report and Spain's arguments in its Response, a vessel and her cargo are not "inextricably intertwined" for purposes of salvage and certainly not for purposes of sovereign immunity and the FSIA. The vessel MERCEDES exists in name and history only. The recovered cargo was physically separated from the vessel's structure 200 years ago by an explosion that totally destroyed the vessel MERCEDES. The cargo remained separated until recovered by Odyssey. The Report's view and Spain's argument that a vessel and her cargo are "inextricably intertwined" has been literally blown apart by the very facts cited by Spain and found by the Magistrate in his Report. Spain's argument that the non-existent vessel is the *res* before this Court is factually, legally and logically unsupportable. The only *res* before this Court is the recovered cargo. The only *res* that will ever be before this Court is the recovered cargo.

For purposes of maritime law, salvage of cargo and salvage of the vessel are separate and distinct concepts, with the rights and obligations of the owners of cargo being several, not joint, with the owners of the vessel, and *vice versa*. This same distinction is important for application of sovereign immunity and the FSIA. Odyssey and Cargo Claimants' claims against the cargo are not claims against the vessel MERCEDES nor against the vessel's owner, Spain.

This salvage case involves only cargo. The vessel, its hull, rigging, appurtenances, and gear have not been salvaged and saved and no admiralty claim is presently being asserted to any of those items. There is no claim other than to the saved cargo now within this Court's jurisdiction. The reason no salvage claims are asserted against the vessel is simple. A salvage lien against a vessel depends on the successful recovery or saving of the vessel or its structure. [*Benedict on Admiralty §15, The Form of Salvage Service,* p. 2-1 (7th ed. rev. 2008)] *See, The "Sabine"*, 101 U.S. 384 (1879); *Petition of the United States*, 425 F.2d 991 (5th Cir 1970). There has been no successful salvage of the vessel.[1] Indeed, there can be no salvage of non-existent *res.*

In salvage cases involving only cargo, the claim is against the cargo, not the vessel or the vessel's owner. This is the clearly established law in this Circuit. "If the service is rendered to cargo alone – as the rescue of goods floating upon the sea [here, resting on the bottom of the sea] – then cargo solely must make good the award." *India v. International Marine Development Corp.*, 451 F.2d 763, 766 (5th Cir. 1971) citing Norris, *The Law of Salvage*, p. 331 (1st ed. 1958), and *Benedict on Admiralty*, §205, *Cargo's Contribution*, pp. 16-1 to 16-3, (7th ed. rev. 2008).

---

[1] Likewise, even if the MERCEDES had been abandoned by Spain, there is no basis to claim ownership of the MERCEDES under the admiralty law of finds as Odyssey admits it has not found the vessel. Indeed, Odyssey's pleadings concern the unidentified vessel "if any." The Report's basis for determining the cargo came from the MERCEDES was based upon the examination of the cargo and the manifest – not the bits and pieces that could have come from any 18th century vessel. No identifying part of the vessel structure has ever been located.

Where cargo alone is salvaged, cargo alone is responsible for the salvage claim. If salvage service is successfully rendered both to ship and to cargo, the claims are separate and the ship is not liable for the claim against saved cargo and *vice versa*. These admiralty principles are well-recognized and long-standing. Neither the vessel nor the vessel's owner are liable for cargo salvage claims. See, *Benedict on Admiralty,* §205*, Cargo's Contribution,* §206, *Cargo Apportionment*, pp. 16-4 to 16-5, and §207, *Several Liability of Vessel and Cargo*, pp. 16-5 to 16-7 (7th ed. rev. 2008).

For purposes of sovereign immunity and application of the FSIA, the question is not resolved simply by recognizing the status of MERCEDES as a Spanish naval vessel. The question is whether immunity and the FSIA apply to the cargo that has not been within Spain's possession and control for over 200 years—and the vast majority of which has never been within its ownership at any time. This cargo has been successfully salvaged, recovered and saved by the Odyssey. Spain did not assert a claim to any portion of the recovered cargo and the Magistrate's Report did not find that Spain was owner of any of the individually recovered coins.

Both the Magistrate and Spain implicitly recognize that application of the Supreme Court holding in *California v. Deep Sea Research*, 523 U.S. 491 (1998), would defeat their sovereign immunity and FSIA claims. This case is the Supreme Court's most important ruling on maritime salvage and sovereign immunity. The Magistrate, in attempting to distinguish *Deep Sea* as addressing an Eleventh Amendment issue only, failed to recognize the very basis of the Court's ruling, at page 507:

> Based on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign, we conclude that the Eleventh Amendment does not bar federal jurisdiction.

4

Spain's Reply also slights the Supreme Court's *Deep Sea* decision by claiming Odyssey "misrepresents the import of the cases it cites" (Doc. 236 at p. 32) and, in footnote 15 on page 32, Spain states:

> Not surprisingly, Odyssey's *Deep Sea Research* argument has been rejected by other courts in shipwreck cases. In *Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel*, the salvor also claimed that Deep Sea Research means a sovereign "cannot successfully challenge [an *in rem* claim to shipwreck] on sovereign immunity grounds unless it actually possesses the *res*...." 352 F.Supp. 2d 1218, 1229 n. 15 (S.D. Ala. 2005). The court pointed out that "[t]his is a *non sequitur*." Id.; see also *Great Lakes Exploration Group, LLC v. Unidentified Wrecked And (For Salvage-Right Purposes) Abandoned Sailing Vessel*, 522 F.3d 682, 688 (6th Cir. 2008) (Deep Sea Research "made clear" that once a state shows ownership of a shipwreck, "the federal courts lack jurisdiction").

Spain's statement is not correct; indeed, it is a blatant misrepresentation of the cases it cites in footnote 15. Both of those cases cited by Spain recognize that sovereign immunity does not apply to defeat jurisdiction if the sovereign is not in possession.[2] The cases further recognize that if sovereign immunity does not apply and the court has jurisdiction, the sovereign has the right to assert claims on the merits against the salvor, just as the United States in *Deep Sea Research* did (See Cargo Claimant's Objection, Doc. 227, at p. 10). This is exactly Cargo Claimants' position in this case. Admiralty jurisdiction <u>does</u> exist over the maritime claims and is not ousted by sovereign immunity or the FSIA. Spain, if it had chosen, could have asserted a claim to some of the recovered coins. Over 700,000 coins were shipped by private owners and only 594,000 coins were recovered. It is possible that the 200,000 or so coins that Spain might have been able to claim ownership are a part of the recovered cargo of coins.

---

[2] In *Great Lakes Exploration, supra,* at 688, the Sixth Circuit Court cites with approval the Alabama District Court case also cited by Spain: "See, *Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F.Supp.2d, 1218, 1227 (S. D. Ala. 2005) (explaining that the Eleventh Amendment does not bar a federal court from determining salvage rights so long as the state is not in actual possession of the res)...."

Faced with controlling Supreme Court decisions, Spain and the Magistrate contend that possession by the sovereign is immaterial to application of the FSIA in an *in rem* admiralty action. No cited authority upholds the view that possession is immaterial. The first issue for application of the FSIA is whether there is a claim against the sovereign, which the cargo claim is clearly not. Spain apparently relies on the special status of a warship having never been abandoned and asserts that Odyssey's only claim is against the MERCEDES. Spain and the Magistrate argue that even absent possession, the FSIA applies to bar jurisdiction against the MERCEDES despite the fact that no claim has been asserted against the MERCEDES by any party to this proceeding. Spain's apparent convoluted thesis is that Odyssey's maritime salvage claim against the recovered cargo is really against the vessel MERCEDES and thus really against Spain for FSIA purposes. This double supposition fails in fact and in law. The claim for salvage is against the cargo, not the vessel. This is fatal to Spain's and the Magistrate's positions.

Cargo Claimants concur with Peru's Objection [Doc 231, pp. 9-24] and its able discussion that *Deep Sea* is controlling and requires rejection of the sovereign immunity and FSIA arguments of the Magistrate and Spain.

Recognition that this case at this stage concerns only whether the FSIA bars jurisdiction over the salvage of commercial cargo greatly reduces the relevant issues and arguments advanced under the Sunken Military Craft Act and Treaty of Friendship with Spain. These issues go to the merits and not jurisdiction under the FSIA. Neither the regulatory authority of the United States or Spain jurisdictionally govern the ocean floor recovery site that is within 200, but more than 24 miles off the coast of Portugal. The Sunken Military Craft Act has no jurisdictional application to the salvage of the cargo in question.

Odyssey's salvage violated no applicable laws. Indeed, Odyssey's archeological work in conducting the salvage is highly commendable. Detailed maps and photos of every inch of the site together with detailed logs of every artifact received, protected and preserved, have been kept. This is the very purpose of archeological control over a recovery site and the reason for injunctive relief to prevent interference with ongoing salvage. In this instance, the cargo recovery had even been separated from the vessel that no longer exists. Consequently, archeological recovery work at the site concerned only this cargo, which was accomplished under very careful and controlled procedures – all of which have been available to Spain and others for study. (Docs. 138-4 and 138-27.)

The false, highly prejudicial and explosive suggestion that Odyssey's maritime salvage disturbed or desecrated the non-existent "gravesite" of MERCEDES' passengers and crew should be admonished and struck. *See* Claimants Whitlock and Durand's Objections to the Magistrate's Report and their requests for fact findings. (Doc. 227, pp. 6-7 and pp. 14-18.) Interestingly, the Magistrate rejected any consideration of Spain's subjugation and exploitation of Peru's indigenous people which, unlike the "gravesite" finding, is historically and factually true. (Doc. 209, pp. 32-33.) The Magistrate and Spain reject depicting Span as the plunderer of Peru, but are content to baselessly depict Odyssey (and cargo claimants) as a grave robber. This difference should be corrected.

The United States' expression of interest needs only brief comment. First, the statement of the United States' interest does not affirmatively support Spain's argument that no jurisdiction exists under the FSIA. Instead of questioning jurisdiction, the United States relies on the Treaty of Friendship and other laws and principles that relate to the merits. Once this Court accepts jurisdiction then these contested matters can be fully developed. We also understand the United

7

States' interest in military craft and the Treaty of Friendship. The United States naval support likewise is certainly understandable – Spain is the host country for a large U. S. naval base. This goodwill support has been noted in the headline of a Spanish news outlet: "USA Torpedoes Odyssey's Future."[3] The FSIA jurisdiction issue, however, concerns salvaged cargo not the destroyed and non-existent vessel the MERCEDES. Accordingly, we do not understand the United States' interest in the privately owned and shipped cargo that was separated 200 years ago from a destroyed vessel that no longer exists. The United States has no valid interest in Cargo Claimants Whitlock and Durand's property rights.

Alternatively, should this Court hold that the principles of sovereign immunity and the FSIA require dismissal for lack of jurisdiction, the Court should not then attempt to exercise jurisdiction to award the recovered cargo to Spain. Spain's argument at Doc. 236, pp. 40-41, might be correct if the arrested cargo had been in the possession of Spain when arrested. If the MERCEDES had sailed into Philadelphia in 1804 and had been libeled like the SCHOONER EXCHANGE as reported in *Schooner Exchange v. McFadden*, 7 Cranch 116 (1812), then of course, dismissal of its arrest and libel would leave the vessel under the control and possession of the captain and crew. Not only was the cargo not in possession of Spain, Spain did not and had not owned nor claimed the recovered cargo. (Spain has only claimed ownership and its right to the warship MERCEDES, which Spain can have if she exists.) At best, Spain has a possible claim based upon the manifest to some items of the recovered cargo, a claim that has not been asserted. Cargo Claimants have properly asserted ownership rights to the recovered cargo. To take this property and order it delivered to Spain without just cause, or without any recognized jurisdiction

---

[3] The actual headline of the August 20, 2009, article published at the Spanish ABC-TV website (www.abc.es) reads "E.E.U.U. torpedea el futuro de Odyssey."

to do so, violates Claimants' federal due process rights. Without jurisdiction, Odyssey cannot be directed to deliver the coins back into the ocean no more than it can be ordered to deliver them to Spain.

Odyssey's salvage recover from the international waters violated no law of the United States. Cargo Claimants deeply appreciate that, in keeping with the high admiralty standard imposed upon salvors, Odyssey has carefully protected, conserved, and saved the recovered articles. Odyssey properly sought to invoke the admiralty jurisdiction of this Court where the claims of all and any party to this recovered cargo *res* could be fairly heard and adjudicated. Notwithstanding no jurisdiction, the Magistrate recommends the Court punish Odyssey and provide a very substantial unjust enrichment to Spain of 594,000 coins.

Without jurisdiction, any and all prior orders must be vacated – including the appointment of substitute custodian. Thus, Odyssey would no longer be the substitute custodian – it would be the sole custodian. This is perfectly agreeable to the Cargo Claimants Whitlock and Durand, as they can resolve their claims directly with Odyssey.

## Conclusion

This is a cargo salvage case. All of the claims concern the recovered cargo. There are no claims against the former naval vessel the MERCEDES or against Spain. Respectfully, Cargo Claimants would repeat the quote from Philip K. Howard's *The Death of Common Sense* that appeared at the beginning of the Objections of the Descendant Claimants (Doc. 228) represented by David Paul Horan:

> What seemed obvious becomes obscured in all the attention devoted to some point that one party decides to beat to death with thousands of pages or weeks of testimony.

WHEREFORE, Cargo Claimants pray that the Magistrate's Report be rejected and further proceedings be held on the rights to the cargo before this court.

| | |
|---|---|
| /s/ Guy E. Burnette, Jr. | /s/ Marlow V. White |
| Guy Ellington Burnette, Jr. | Marlow V. White |
| Florida Bar No. 236578 | Florida Bar No. 275417 |
| GUY E. BURNETTE, JR., P. A. | LEWIS & WHITE, P.L.C. |
| 3020 N. Shannon Lakes Drive | P.O. Box 1050 |
| Tallahassee, Florida 32309 | Tallahassee, Florida 32302 |
| Vox: 850/668-7900 | Vox: (850) 425-5000 |
| Fax: 850/668-7972 | Fax: (850) 425-5004 |
| Email: geb@gburnette.com | Email: mvw@lewisandwhite.c |
| ATTORNEYS FOR CLAIMANT | ATTORNEYS FOR CLAIMAN |
| DR. JAIME DURAND PALACIOS | ELSA D. WHITLOCK |

OF COUNSEL

William VanDercreek
Texas Bar Member 20442000
Email: wvcreek_tlh@msn.com
9441 LBJ Freeway, Suite 350
Dallas, Texas 75243
Telephone: (214) 361-4005

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy hereof was e the Clerk of the Court via the CM/ECF system on this 15th day of Octo electronically filed this document with the Clerk of the Court by using will generate and transmit Notices of Electronic Filing to all parties ex Rodriguez-Menendez, who is being served by United States Mail at 461 Davie, FL 33328-3817, this same day.

| | |
|---|---|
| /s/ Guy E. Burnette, Jr. | /s/ Marlow V. White |
| Guy Ellington Burnette, Jr. | Marlow V. White |
| Florida Bar No. 236578 | Florida Bar No. 275417 |