UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MARINE EXPLORATION, INC.,

              Plaintiff,

v.                                        Case No. 8:07-cv-614-T-23MAP

THE UNIDENTIFIED SHIPWRECKED
VESSEL,
              Defendant,

and

KINGDOM OF SPAIN, *et al.*,

              Claimant.

_____/

## REPORT AND RECOMMENDATION

After the receipt of the Eleventh Circuit's mandate affirming the district judge's order directing Odyssey to return the *res* to Spain, Spain filed two motions: one for sanctions dealing with Odyssey's post-mandate conduct (Doc. 298) and the other for an award of attorney's fees, costs, and other expenses pursuant to Local Rule 7.03(g), the Court's inherent powers, and 28 U.S.C. § 1927 (Doc. 321).[1]  Both motions are related to an extent, but Spain's second motion is much broader because Spain demands compensation for its entire participation in the case.  After considering the motions,

---

[1] Spain's motion for sanctions is part of its motion to compel Odyssey's release of the *res* to Spain filed March 5, 2012.  *See* Doc. 298.  I granted the motion to compel but reserved on the issue of sanctions.  *See* Doc. 311 at ¶ 4.

Odyssey's responses (Docs. 299; 328), and the record in this case, I make the following recommendations to the district judge: (1) that he find Odyssey in contempt for its post-mandate conduct and its violation of the Court's Orders of April 13, 2007, December 22, 2009, and February 17, 2012 (Docs. 8, 270, 295); (2) that he sanction Odyssey's general counsel, Melinda J. MacConnel, under 28 U.S.C. § 1927 for her vexatious conduct during the post-mandate period; (3) that he require Odyssey and Odyssey's general counsel to pay Spain's attorney fees, expenses, and costs associated with Spain's post-mandate efforts through and including March 20, 2012, aimed at compelling Odyssey's compliance with the Court's Orders of April 13, 2007, December 22, 2009, and February 17, 2012; and (4) that he deny the remaining aspects of Spain's motions.[2]

   *A. Certified Facts* [3]

   In March 2007, Odyssey discovered the *res* in international waters about 100

---

   [2] The district judge referred both motions to me for reports and recommendations (Doc. 324). *See* Local Rule 6.03(a) and 28 U.S.C. § 636(b)(1)(B).

   [3] In a referral under 28 U.S.C. § 636(b)(1)(B) where the magistrate judge concludes the act of a party constitutes civil contempt, § 636(e)(6)(B)(iii) states:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

2

miles west of the Straits of Gibraltar (Doc. 3; Doc. 138-3 at 9).  It recovered an artifact (a small bronze block), symbolically deposited that item with the Court, and filed this *in rem* action.  Based on Odyssey's submissions and Supplemental Rule C(3), this Court directed the Clerk to issue a warrant of arrest directing the United States marshal to seize "the Unidentified, Shipwrecked vessel, its apparel, tackle, appurtenances and cargo."  (Docs. 3; 5).   Odyssey concomitantly moved for an order appointing it as substitute custodian of the *res* in lieu of the marshal (Doc. 7).  In support of the motion, Odyssey agreed, as evidenced by the affidavit of its general counsel, Melinda J. MacConnel, to assume "[a]ll costs and expenses incidental to keeping of the said artifacts …*"* (Doc. 7-2). The Court granted the motion, appointed Odyssey as substitute custodian of the "Shipwrecked vessel and any artifacts recovered therefrom," and ordered that "Odyssey shall retain the same in custody for possession and safekeeping until further order of this Court."  (Doc. 8, Order dated April 13, 2007).

After protracted litigation spanning more than two years, the Court on December 22, 2009, concluded the *res* was the Spanish naval vessel *Nuestra Señora de las Mercedes* and, as a result, was without subject matter jurisdiction to adjudicate the claims against Spain's property.  Accordingly, the Court dismissed Odyssey's *in rem* action, vacated the warrant of arrest, and directed Odyssey, as substitute custodian, "to return the *res* to Spain within ten days under the circumstances and in a manner subject to approval

by the Magistrate Judge."[4]   The Court, however, stayed the Order, insofar as it required

the transfer of the *res*, until the completion of any appeal to the Eleventh Circuit (Doc.

270).  On September 21, 2011, the Eleventh Circuit, in an extensive written Opinion,

affirmed the Court's December 22, 2009, Order and issued its mandate on February 10,

2012.[5]  With the clerk's receipt of the mandate on February 13, 2012, this Court assumed

jurisdiction to enforce that mandate and this Court's Order of December 22, 2009,

directing Odyssey to return the *res* to Spain (Docs. 286; 270).

Coinciding with the clerk's receipt of the mandate, Spain's counsel moved for an

expedited hearing regarding Odyssey's compliance with the Court's Order of December

22, 2009, requiring Odyssey to return the *res* to Spain within ten days "of the day the

Eleventh Circuit Court of Appeals issues a mandate in this case …" (Doc. 285; 270 at 5).

In support of the motion, Spain attached correspondence from Odyssey's general counsel

to Spain's counsel to the effect: that Spain owed Odyssey's agent, Numismatic Guaranty

Corporation, $185,159.02 for conservation and storage fees; that Odyssey read the

Eleventh Circuit's decision to mean that the district court was without jurisdiction over

the coins; and that the district court had no jurisdiction over the *res* located in Gibraltar

(Doc. 285, exs. 1, 4, 6). In view of Odyssey's conduct, Spain additionally asked the Court

to require Odyssey to pay the costs associated with substitute custodianship and to direct

---

[4]  *See* Doc. 270, hereinafter referred to as the December 22, 2009, Order.

[5]  *See Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159 (11th Cir. 2011).

4

Odyssey to "release to Spain all recovered *res* wherever located" (Doc. 285 at ¶17).

Odyssey, days later, filed a motion seeking an order directing Spain to reimburse Odyssey $412,814.02 in *custodia legis* expenses.  Odyssey's motion, signed by its counsel, Mr. Nelson, recognized Odyssey served as custodian of the *res* "until further order of this Court," but the motion made no mention that Odyssey had agreed to assume "[a]ll costs and expenses incidental to keeping of the said artifacts …*"* when it asked to be appointed as substitute custodian (Docs. 291 at ¶ 2; 7-2).

On February 17, 2012, I convened a hearing on Spain's motion to enforce Odyssey's compliance with the Court's December 22, 2009, Order.  The following hearing excerpts show the demeanor of Odyssey's general counsel and highlight Odyssey's positions on Spain's motion, the Court's orders, and the Eleventh Circuit's decision.

> Ms. MacConnel:  Your Honor, Odyssey is appearing here today as an observer and for the Court's assistance in directing the U.S. Marshal how to release this property to Spain.  Obviously we do note that the Eleventh Circuit affirmed this Court's ruling.  However, we need to note that the Eleventh Circuit actually modified this Court's ruling.  Whereas this Court directed Spain – directed Odyssey to return the res to Spain, the Eleventh Circuit modified that and specifically noted that all that could be done by this Court is to direct Odyssey to release the res … We are again here as an observer.  There is no case pending right now.  The case has been closed.  Odyssey is no longer a party to this case; but as counsel for Spain said, you would actually be directing the U.S. Marshal to release the res, because Odyssey's

5

substitute custodianship has been revoked.[6]

\*       \*       \*

I do want to address one thing, and that's the Gibraltar artifacts. There's no question that those coins are not part of the res in this case. They never came into the territorial jurisdiction of this case. In a case before Judge Merryday that we brought, I think it was two years ago, the *Marquis de Tourny* case, Judge Merryday entered his order almost mocking Odyssey for asking the Court to take jurisdiction for artifacts beyond what was actually brought into his territorial jurisdiction.[7] So, there's no jurisdiction over those, Your Honor, . . . because we were actually hoping to have a fair trial on the merits of this case but Spain blocked the transport of those; and, therefore, they never –

The Court:          Ms. MacConnel, are you suggesting that this Court did not give you a fair hearing on the matter? Is that what you are suggesting by your comment?

Ms. MacConnel:     We never had a trial on the merits of this case, Your Honor. This case was dismissed for lack of subject-matter jurisdiction. There has been no trial.[8]

The Court sternly rebuked Odyssey's counsel and the positions she advocated:

The Court:          We also take the representations made by counsel in these cases very seriously; and while this may not be the typical admiralty case where a vessel is arrested that comes into the Port of Tampa for failure to pay a maritime lien of some sort, the rules applicable to that event are applied here. And so when Odyssey filed its verified complaint, it stated

---

[6]  Doc. 296 at pp. 25-26

[7]  *See Odyssey Marine Exploration, Inc. v. Unidentified, Wrecked, and Abandoned Sailing Vessel*, 727 F.Supp.2d 1341 (M.D. Fla. 2010).

[8]  Doc. 296 at p. 30

that any further artifacts recovered from the Defendant
shipwrecked vessel will be recovered under the jurisdiction
of this Court and will be within the actual or constructive
possession of this Court or its duly appointed substitute
custodian during the pendency of this action.  Ms.
MacConnel made that verification to support the complaint.

This Court issued the arrest warrant.  It also evaluated
Odyssey's motion for a substitute custodian, that is to
relieve the Marshal against the traditional role in such
matters as being the official custodian of the court; and in
Odyssey's motion to substitute itself for the Marshal, it
represented that it had adequate facilities for the care,
maintenance, and security of the artifacts.  It also stated that
the substitute custodian has also agreed to provide these
services free of charge and is prepared to take the necessary
steps for the preservation of the artifacts …

Ms. MacConnel, in your affidavit, you specifically stated,
"All costs and expenses incidental to the keeping of the
artifacts are to be assumed by Odyssey.  Odyssey agrees to
act as substitute custodian until further order of the Court."

This notion that the keeper of the coins is not the substitute
custodian, that it's some service/independent contractor is
ridiculous… This Court's obligation is to enforce the
mandate issued by the Eleventh Circuit, and this Court will
do that.[9]

The Court orally stated the rulings at the hearing's conclusion and followed with a

written order that same day memorializing the directives recited: "Odyssey, per its

obligations as substitute custodian under this Court's order dated April 13, 2007 (Doc. 8)

and at its expense is to furnish Spain by February 21, 2012, with a verified inventory [of]

the specie and artifacts within its possession or the possession of its agents or assigns

---

[9]  Doc. 296 at pp. 35-36

*wherever located* that make up the *res*."  (emphasis added) (Doc. 295 at 1-2).  And the

Court further ordered Odyssey to transfer the *res* to Spain's custody on February 24, 2012

(Doc. 295 at 4).  On February 23, 2012, Odyssey released to Spain the *res* located in the

United States but not the *res* located in Gibraltar (Doc. 298 at 2).

On March 5, 2012, Spain moved for an order compelling Odyssey to comply with

the Court's Orders of December 22, 2009, and February 17, 2012, regarding the releasing

of the remaining *res*; it also moved for the imposition of sanctions and for a verified

accounting (Doc. 298).[10]  At the March 16 hearing on the matter, Odyssey argued it had

not turned over the *res* located in Gibraltar because the Court's February 17 Order did not

include the Gibraltar specie and artifacts and, in any event, the Court did not have

authority over that portion of the *res* (Doc. 309, p. 33).  Odyssey further stated it had not

been able to access the *res* in Gibraltar as those items were the focus of MLA [Mutual

Legal Assistance] requests by Spain and litigation in Gibraltar.[11] (*Id.* at p. 23).  Notably

absent from Odyssey's presentation, however, was a discrete order from a Gibraltarian

authority prohibiting Odyssey from releasing the *res* to Spain as the Orders of December

---

[10]  This motion is one of the subjects of the district judge's referral treated in this
report.

[11] Odyssey's counsel, Melinda MacConnel, additionally claimed confusion
because at the February 17, 2012, hearing, Spain's counsel mentioned February 29, 2012,
as the date for Odyssey to release to Spain the *res* located in Gibraltar (Doc. 309, p. 24).
Regardless of the comments by Spain's counsel, the Court's Order of February 17, 2012,
clearly directed Odyssey to provide Spain with a verified inventory of the "the specie and
artifacts within its possession or the possession of its agents or assigns wherever located
that make up the *res*" and to transfer that *res* to Spain by February 24, 2012 (Doc. 295).

8

22, 2009, and February 17, 2012, required.[12]

As a result, the Court on March 20, 2012, ordered: "Odyssey is directed to immediately release to Spain the *res* located in Gibraltar unless an order of a court of the Government of Gibraltar presently prohibits release…Odyssey's failure or refusal to release the *res* as required by this order will result in my prompt recommendation that the district judge find Odyssey, including one or more of Odyssey's directors and officers, in civil contempt."[13]  (Doc. 311 at ¶¶ 2-3)

On March 21, 2012, prior to Odyssey's compliance, a Gibraltarian court ordered the arrest of the *res* specie located in Gibraltar (Doc. 312-3).  Finally, on June 7, 2012, Odyssey transferred to Spain's possession those artifacts not subject to arrest by the Gibraltarian court (Doc. 333 at 1).

B. *Discussion*

As remarked at the outset of this report, both of Spain's motions (Docs. 298 and

---

[12]  Spain's counsel stated at the hearing that Spain's Ministry of Justice presented only one MLA request to the Gibraltarian government (*see* the tracking number of the MLA matter at Doc. 299-1, ex. A) and that the Gibraltarian authorities never acted on that request, which concerned Spain's investigation of Odyssey's activities in its territorial waters and potential violations of Spanish law (Doc. 309, p. 9).  Odyssey's response included a February 6, 2009, letter to Odyssey's director of international business development (Mr. Nesser) from John R. Reyes, Private Secretary, Office of the Chief Minister, Government of Gibraltar, acknowledging "that a single container of artifacts from the 'Black Swan" has been held up in Gibraltar as a result of the seven requests" received from Spain.  *See* Doc. 299, ex. A to Nesser aff.

[13]  The Court deferred ruling on that part of Spain's motion for sanctions and directed Odyssey provide a copy of the Order to each director and officer of Odyssey (Doc. 311 at ¶¶ 3-4).

321) are somewhat related.  But the first narrowly limits the sanctionable period to the post-mandate frame; the second broadly looks to the entire litigation period, even post-mandate, and demands compensation for all attorney's fees and costs Spain incurred. Thus, as a practical matter, the broad motion subsumes the narrow one.  To support its broad claims for an award of fees and costs, Spain initially points to Local Rule 7.03(g), asserting the rule acts as a "prevailing party" provision.  Alternatively, Spain argues Odyssey has acted in bad faith and urges the Court to award fees and costs via its inherent power or under 28 U.S.C. § 1927.  Lastly, Spain contends Odyssey violated the Court's orders pertaining to the surrender of the *res* and should be found in contempt.

### 1. Local Rule 7.03(g)

Spain, as the prevailing party, maintains Local Rule 7.03(g) shifts its entire litigation costs onto Odyssey (Doc. 321 at 7-9).  Local Rule 7.03(g) provides in relevant part:

> (g) **Post-arrest Proceedings:** Coincident with the filing of a claim pursuant to Supplemental Rule (E)(4)(f), and Local Admiralty Rule 7.03(f)(1), the claimant may also file a motion and proposed order directing plaintiff to show cause why the arrest should not be vacated.  If the court grants the order, the court shall set a date and time for a show cause hearing.  Thereafter, if the court orders the arrest to be vacated, the court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest.

Admittedly, a "district court enjoys wide discretion in applying and enforcing its own local rules"  *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1308 (S.D. Fla. 2010) (citations and quotations omitted); nonetheless, the plain language of the rule contemplates a somewhat summary procedure, unlike what occurred in our case.  The

advisory notes to the Local Rules support this view:

> Under this rule, the claimant or intervenor may petition the Court to order the plaintiff to establish probable cause for the arrest of the property.  Therefore *at an early stage of the litigation*, plaintiff can be required to establish a *prima facie* case that he is asserting a claim which is entitled to the dignity and status of a maritime lien against the arrested property.  This rule contemplates the entry of an order with conclusory findings following the post-arrest proceedings.  More detailed findings may be requested by any party.

(Emphasis added).[14]

Irrespective of the rule's plain meaning, a more obvious reason exists for rejecting Spain's argument – the American Rule, which requires each party to pay its own attorney's fees.  The Eleventh Circuit considers that rule a characteristic feature of substantive maritime law.  *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 840-841 (11th Cir. 2010); *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. Unit A, Oct. 1980).[15]  Accordingly, the prevailing party in an admiralty action is not entitled to recover its fees as a matter of course unless the award is statutorily authorized, the non-prevailing party acted in bad faith, or the parties contractually agreed to indemnification.  *Id.* at 838.  Local Rule 7.03(g) obviously does not fall within those acceptable gaps; moreover, reading the rule as Spain proposes runs

---

[14] The advisory notes to Local Rule 7.03(g) refer the reader to the comments for Rule 7.03(b), which are quoted above.

[15] The Eleventh Circuit in an *en banc* decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

afoul of the Rules Enabling Act.[16]  *See also* Fed. R. Civ. P. 83.

   *2.  inherent authority and § 1927*

  Spain also urges the Court to exercise its inherent authority, or its authority under

28 U.S.C. § 1927, and to sanction Odyssey for several reasons.[17]  In sum, Spain says

Odyssey withheld critical identity evidence; unreasonably delayed the production of such

evidence; was less than candid in its representations as to the vessel's identity (*i.e.,*

discrepancies in various artifact summaries); made frivolous arguments (*i.e.,* denying the

existence of a shipwrecked vessel); and acted recalcitrantly and cavalierly to the Court's

orders and specifically violated the Court's Order of February 17, 2012, requiring

---

[16]  The Rules Enabling Act (28 U.S.C. § 2071) provides:

 The Supreme Court and all courts established by Act of Congress may from time
 to time prescribe rules for the conduct of their business.  Such rules shall be
 consistent with Acts of Congress and rules of practice and procedure prescribed
 under section 2072 [rules of procedure and evidence] of this title.

[17]  Spain seemingly argues 28 U.S.C. § 1927 authorizes the imposition of
sanctions on an offending party as opposed to its offending counsel.  The statute's plain
wording says otherwise:

 Any attorney or other person admitted to conduct cases in any court of the
 United States or any Territory thereof who so multiplies the proceedings in
 any case unreasonably and vexatiously may be required by the court to
 satisfy personally the excess costs, expenses, and attorneys' fees
 reasonably incurred because of such conduct.

*See also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 756-762 (1980) (noting § 1927 does
not distinguish between winners and losers; emphasizing that lawyers who multiply court
proceedings vexatiously may be assessed the excess costs they create; and limiting the
recoverable "costs" to those outlined in 28 U.S.C. § 1920).

Odyssey turn over the *res* by February 24, 2012.  Spain's complaints about Odyssey are more clearly viewed from two separate temporal perspectives – Odyssey's conduct leading up to the Court's Order of December 22, 2009 (dismissing Odyssey's complaint and vacating the arrest warrant) and Odyssey's behavior after the Eleventh Circuit issued the mandate.

*a.  standards*

"Courts of justice are universally acknowledged to be vested, by their creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted).  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious dispositions of cases.'"  *Id.*  (citations omitted).  Thus, and despite the usual prohibitions of the American Rule, a court may assess attorney's fees against a party as a sanction for willfully disobeying a court order or for acting in bad faith and vexatiously.  *Id.* at 45-46; *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument…argues a meritorious claim for the purpose of harassing an opponent…[or] disrupt[s] the litigation or hamper[s] enforcement of a court order." (Citation and quotations omitted)).  In considering such matters, a court should exercise this inherent power with restraint and discretion.  *Chambers*, 501 U.S. at 44; *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.* 561 F.3d 1298, 1306 (11th Cir. 2009).

13

Likewise, a court under 28 U.S.C. § 1927 can sanction an attorney who multiplies proceedings "unreasonably and vexatiously."  Section 1927's threshold mimics the "bad faith" showing needed for imposing sanctions under a court's inherent authority.  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  And the inquiry turns on the attorney's objective conduct.  *Id.* at 1239.  Negligent conduct is insufficient; however, "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently."  *Id.* at 1241-42.  Sanctions under § 1927 are appropriate where an attorney "*knowingly* or *recklessly* pursue[s] a frivolous claim or needlessly obstruct[s] the litigation of a non-frivolous claim."  *Id.* at 1242 (emphasis in original).

### b.  sanctionable behavior

I cannot say based on the record before me that Odyssey, prior to the Court's Order of December 22, 2009, acted in bad faith, although I consider Odyssey's inconsistent representations troubling and its denial of a vessel's existence frivolous.[18] But Odyssey and its general counsel's post-mandate behavior is a different matter. Applying an objective standard, I find Odyssey and its general counsel acted in bad faith by hampering the enforcement of court orders, recklessly pursuing frivolous arguments, and engaging in behavior that needlessly obstructed the litigation.  More specifically, I conclude Odyssey failed to abide by this Court's Orders of April 13, 2007, December 22,

---

[18]  Odyssey's denial of a vessel's existence was not it sole argument.

2009, and February 17, 2012, by failing to surrender the *res* to Spain as required (Docs. 8; 270; 295).

The Court on Odyssey's motion authorized a warrant that directed the marshal to seize the "Defendant Unidentified Shipwrecked Vessel, its apparel, tackle, appurtenances, and cargo located with center point coordinates provided the Court under seal … and any artifacts recovered therefrom," and "to take into your possession" an artifact ("a small bronze block") that Odyssey had brought within the Court's jurisdiction (Docs. 3, 5, 6). This artifact served as a symbol of the Court's *in custodia legis* possession of the *res* (Doc. 286 at 16-17).  On April 13, 2007, when the Court at Odyssey's request appointed Odyssey as substitute custodian for the *res* in lieu of the marshal, the Court accepted Odyssey's representation that Odyssey would assume the costs associated with its custodianship and that Odyssey would act as substitute custodian until further order of the Court (Docs. 8, 7-2, MacConnel Aff. at ¶¶ 6, 7 ).  That Order affirmed the scope of the Court's *in custodia legis* possession to include "*any artifacts* recovered" from the site (Doc. 8 at ¶ 3) (emphasis added).

Eventually, the Court's Order of December 22, 2009, dismissed Odyssey's *in rem* complaint and vacated the arrest warrant.[19]  But nothing in that Order terminated *instanter*

_____

[19]   The district judge's closing admonition bears repeating here:

> The ineffable truth in this case is the *Mercedes* is a naval of Spain and that the wreck of this naval vessel, the vessel's cargo, and any human remains are the natural and legal patrimony of Spain and are entitled in good conscience and in law to lay undisturbed absent the consent of Spain

Odyssey's role as substitute custodian.  On the contrary, the Order directed Odyssey to continue to act as substitute custodian pending any appeal.  With Odyssey's filing of its notice of appeal, its obligations under the Court's April 13, 2007, Order appointing Odyssey as substitute custodian continued.

A prudent substitute custodian would have contemplated its obligations under these Orders.  And when the Eleventh Circuit affirmed this Court's Order of December 22, 2009, a prudent substitute custodian, knowing that the appellate court's mandate would soon issue, would have revisited that Order's directives. Odyssey, however, took no evident action.  With the clerk's receipt of the Eleventh Circuit's mandate on February 13, 2012, Odyssey should have realized that the Court's December 22, 2009, Order now applied with all force and that Odyssey would need to "return the *res* to Spain within ten days under the circumstances and in a manner subject to the approval by the Magistrate Judge."  *See* Doc. 270 at 5.  Odyssey took no evident action to abide by that Order. Instead, Odyssey ignored the December 22, 2009, Order and unreasonably and vexatiously hampered the release of the *res* to Spain by informing Spain's counsel that

_____

> and despite any man's aspiration to the contrary.  That the *Mercedes* is now irreparably disturbed and her cargo brought to the United States, without the consent of Spain and athwart venerable principles of law, neither bestows jurisdiction on the United States to litigate conflicting claims of ownership (to all or part of the cargo) nor empowers the United States to compel the sovereign nation of Spain to appear and defend in a court of the United States.

(Doc. 270 at 4)

Spain owed Numismatic Guaranty Corporation conservation and storage fees, that the Eleventh Circuit held that the district court was without jurisdiction over the coins, and that the district court had no jurisdiction over the *res* located in Gibraltar  (Doc. 285, exs. 1, 4, 6).

Odyssey reiterated those meritless contentions at the February 17, 2012, hearing. Despite the Court's rebuke, and the February 17 Order's plain statement directing Odyssey to surrender to Spain the specie and artifacts "wherever located" on or before February 24, 2012, Odyssey took no steps to return the *res* in Gibraltar.  Odyssey justified its defiance with the same arguments the Court rejected at the February 17 hearing.  And Odyssey added two new ones.  First, Odyssey claimed that the term, "wherever," does not include Gibraltar because the limit of the Court's authority (as Odyssey opines) is fixed to the territorial jurisdiction of the Court.  Such a reading defies common sense, the basic admiralty principles (*in custodia legis*) Odyssey invoked with the filing of its complaint, and the Court's power to enforce its orders and control the parties.  *Chambers,* 501 U.S. at 43.   Odyssey's post-mandate position also disregards the Eleventh Circuit's Opinion affirming this Court's Order of December 22, 2009.[20]  Next, Odyssey says events or

---

[20]  As noted previously, at the February 17 hearing Odyssey's general counsel insisted that the Eleventh Circuit had "actually modified this Court's ruling [the December 22, 2009, Order]."  The Eleventh Circuit did nothing of the sort.  Indeed, the court rejected Odyssey's argument that the district court, absent subject matter jurisdiction, was without authority to order the release of the of the *res* to Spain (*see* Doc. 286, pp. 56-60).  Despite the Eleventh Circuit's clear holding, Ms. MacConnel ascribed a semantic difference between the meaning of *release* and *return* in same context: as in "ordering Odyssey, as substitute custodian, to *release* the *res* into Spain's custody,"

17

difficulties in Gibraltar prevented it from releasing the Gibraltar *res* due to Spain.  But the record does not support that either.  Odyssey made no effort to access the Gibraltar *res* until February 28, 2012 (Doc. 309 at 35), well after the February 24, 2012, deadline.  In sum, Odyssey's excuses are either frivolous or unsupported by the record.

### c.  sanctions

Spain has presented clear and convincing evidence that Odyssey failed to comply in a timely fashion with the Court's Orders to turn over the *res* and that Odyssey and its general counsel acted in bad faith during the post-mandate period until the Court's March 20, 2012 Order (Doc. 311).[21]  As for what sanctions are warranted, I conclude coercive sanctions, as Spain urges, are inappropriate.  At this stage of the proceedings Odyssey has turned over to Spain all of the artifacts not subject to the Gibraltarian court's order of arrest.

Compensatory sanctions, however, are appropriate in this case.  Odyssey's

---

which is the Eleventh Circuit's wording, as compared to Odyssey being ordered  "to *return* the *res* to Spain," which is the Court's language in the December 22, 2012, Order. *Compare* Doc. 286 at p. 59 to Doc. 270 at p. 5.  Frankly, Ms. MacConnel's distinction between *release* and *return*, like her claim that the Eleventh Circuit modified the Court's Order, is nonsense.

[21]  This date corresponds to the hearing before me and the Order issued on that date granting in part Spain's motion to compel (Doc. 298) (deferring on the issue of sanctions).  In sum, the Order directed Odyssey to immediately release the *res* in Gibraltar unless a Gibraltarian court order prohibits release.  That Order also stated that Odyssey's failure to release the *res* as required would result in a prompt recommendation to the district judge that he find one or more of its directors and officers in civil contempt.  The Order required Odyssey to provide copies of the Order to each director and officer (Doc. 311).

conduct required Spain to incur additional litigation costs.  Accordingly, I recommend the district court require Odyssey and its general counsel to pay Spain's attorney fees, expenses, and costs associated with Spain's post-mandate efforts to obtain Odyssey's compliance with the Court's December 22, 2009, Order through and including March 20, 2012.  Because a compensatory civil contempt fine "must be based on proof of the complainant's actual loss," *In re Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989), I recommend that the district judge require Spain to provide billing records to establish the specific amount of attorney's fees, expenses, and costs so incurred.

    *C.  Conclusion*

       For the reasons stated, I recommend the district judge grant in part and deny in part Spain's motions (Docs. 298 and 321) as follows:

       1.  That Odyssey's director or officer and its general counsel, Melinda J. MacConnel, be ordered to appear before the district judge upon a day certain to show cause why they should not be sanctioned for their post-mandate conduct and for Odyssey's violation of the Court's Orders of April 13, 2007, December 22, 2009, and February 17, 2012 (Docs. 8, 270, 295) and ordered to pay Spain's attorney fees, expenses, and costs associated with Spain's post-mandate efforts through and including March 20, 2012, aimed at compelling Odyssey's compliance with the Court's Orders of April 13, 2007, December 22, 2009, and February 17, 2012.

2.  In all other respects, Spain's motions should be denied.

IT IS SO REPORTED at Tampa, Florida on November 15, 2012.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE



## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


Copy to:       The Honorable Steven D. Merryday
               Counsel of Record